IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-773 T
(Chief Judge Damich)

---

DAVID SUNSHINE and KELLY T. HICKEL,

Plaintiffs

v.

THE UNITED STATES,

Defendant

---

JOINT PRELIMINARY STATUS REPORT

---

Pursuant to the Court's order of August 5, 2005, and Appendix A, Part III, ¶ 4, RCFC, the parties hereby provide this Joint Preliminary Status Report.

(a) Jurisdiction: The jurisdiction of this Court over plaintiffs' suit, to the extent it exists, is conferred by 28 U.S.C. § 1491(a)(1). Because plaintiff David Sunshine did not allow six months to expire after filing his refund claim for his tax year 2000 prior to filing the complaint in this action, and the IRS has not rendered a decision with respect to his refund claim prior to filing the complaint in this action, this Court lacks subject matter jurisdiction over his refund claim for tax year 2000 pursuant to Section 6532(a) of the Internal Revenue Code of 1986. The parties have agreed to file a stipulation of dismissal with respect to Mr. Sunshine's refund claim for tax year 2000 pursuant to Rule 41(a)(1) of the Rules of the United States Court of Federal Claims.

However, because six months have now expired since Mr. Sunshine filed his refund claim for tax year 2000, Mr. Sunshine intends to file, within the next few weeks, a refund suit for tax year 2000.

(b) Consolidation: The parties are currently unaware of any case with which this case should be consolidated. However, the parties have agreed to file a joint motion to consolidate Mr. Sunshine's refund suit for tax year 2000 with this case after he has filed his refund suit for tax year 2000.

(c) Bifurcation of trial: This is a tax refund suit and there are no "damages" per se at issue. In the event the Court enters judgment for the plaintiffs, the parties would endeavor to stipulate to the amount of any refund due.

(d) Deferral of proceedings: The parties are not aware of any basis for transferring or remanding this case to another tribunal, nor are the parties aware of any related cases in this or any other tribunal.

(e) Remand or suspension: The parties are not aware of any basis for remand or suspension of this case.

(f) Additional parties: The parties are not aware of any additional parties to be joined.

(g) Dispositive motions:

**Plaintiffs' Statement**: Although not yet determined, plaintiffs may file a motion for summary judgment. Even if the plaintiffs were to concede all disputed facts with respect to the responsible person issue, the plaintiffs believe that, due to the IRS's agreement to the Fifth Amended Joint Plan of Reorganization (the "Amended Plan"), they would be found, as a matter

of law, not to be willful and therefore not liable under Section 6672. The Amended Plan clearly provides for payment of the taxes at issue, the nonpayment of which occurred under the jurisdiction of the bankruptcy court. Plaintiffs wish to complete discovery before filing a motion for summary judgment. Accordingly, if the plaintiffs file a motion for summary judgment, they will do so no later than July 15, 2006.

**Defendant's Statement**: The United States does not at this time anticipate filing a motion for summary judgment with respect to the remaining claims. The issue presented by the remaining claims is whether the plaintiffs are subject to a penalty pursuant to Section 6672 of the Internal Revenue Code for the willful failure to collect, truthfully account for, and pay over employment taxes for Interstate Sweeping, Ltd. ("Interstate") for the last three quarters of tax year 1999. Because the resolution of this case will require a determination of the plaintiffs' intent (i.e. "willfulness"), a factual issue likely to hinge upon the credibility of witness testimony, a summary judgment motion is not likely to be appropriate.

(h) Factual and Legal Issues:

**Plaintiffs' Statement**: The primary issue in this case is whether the plaintiffs are liable for the trust fund recovery penalty assessment made by the IRS pursuant to Section 6672 of the Internal Revenue Code. In November, 2003, the IRS assessed the penalty against each plaintiff for unpaid federal employment taxes due from Interstate for the quarters ended June 30, 1999, September 30, 1999, and December 31, 1999. The total penalty assessed against each plaintiff was $169,022.

In February, 1999, Interstate filed a bankruptcy petition under Chapter 11 of the

Bankruptcy Code in the United States Bankruptcy Court, District of Colorado. In June, 1999, Interstate and co-proponent, Sweepco, LLC ("Sweepco"), filed a Plan of Reorganization and a Disclosure Statement to the Plan of Reorganization (the "Disclosure Statement") in the Bankruptcy Court. Pursuant to the Disclosure Statement, Sweepco, in exchange for ownership of Interstate as it emerged from bankruptcy, was to contribute capital to Interstate in an amount sufficient to pay, among other things, the administrative claims incurred during the Chapter 11 proceeding and additional working capital to allow the reorganized Interstate to continue its operations. (See Exhibit A, pg. 7-8). As a condition to providing the necessary capital for the reorganized Interstate and in anticipation of obtaining control of the reorganized Interstate upon confirmation of the Plan of Reorganization, Sweepco required and obtained from Interstate control over the financial affairs of Interstate. In July, 1999, plaintiff Kelly T. Hickel entered into an agreement to provide management services to a company located in California, and from that time on, he spent most of his time working for such company, including a significant amount of time working in California. (See Exhibit B)

In December, 1999, the Amended Plan was filed with the Bankruptcy Court. In order to obtain approval of the Amended Plan, Interstate and Sweepco had negotiations with the IRS pertaining to the unpaid trust fund taxes at issue. (See Exhibits C, D, and E). The IRS confirmed that it did not object to the provision for its priority claim in the Amended Plan for the unpaid trust fund taxes. (See Exhibit F).

By letter, it was clarified that the reorganized Interstate then had the obligation to file returns and pay taxes and its default would trigger the default provisions of the Amended Plan, which letter was signed by the IRS to confirm its acceptance of the Amended Plan and filed in

the Bankruptcy Court as an attachment to the Stipulation to Plan Amendments. (See Exhibit G). The Amended Plan, with the negotiated provisions pertaining to the payment of the payroll taxes included, was confirmed on March 7, 2000. (See Exhibits H and I). The reorganized Interstate defaulted on its payments to the IRS shortly after the Amended Plan was confirmed. The IRS failed to file a notice of federal tax lien or take any other actions to protect its interests, as contemplated and provided for in the Amended Plan.

As stated above, the IRS assessed the Section 6672 penalty against each of the plaintiffs in November, 2003. In December, 2003, each plaintiff submitted payment in the amount of $100 for each of the three calendar quarters at issue. The plaintiffs then filed a refund claim for each quarter, seeking a refund of the penalties paid and requesting an abatement of the penalties assessed. By notice of disallowance dated March 23, 2004, the IRS notified the plaintiffs that it had disallowed the plaintiffs' claims for refunds and abatement of penalties. (See Exhibits J and K). On July 22, 2005, the plaintiffs filed their complaint to this action.

The applicability of the trust fund recovery penalty requires a determination of whether each plaintiff was (1) a "person" who is required to collect, truthfully account for and pay over taxes, but who (2) "willfully" fails to do so. See § 6672; see also Godfrey v. United States, 748 F.2d 1568, 1573-1574 (Fed. Cir. 1984).

The first disputed issue in this case is whether the plaintiffs were "responsible persons". "The inquiry required by the statute is a search for a person with ultimate authority over expenditure of funds since such a person can fairly be said to be responsible for the corporation's failure to pay over its taxes." Salzillo v. United States, 66 Fed. Cl. 23, 33 (2005) (quoting

Godfrey, 748 F.2d at 1575). A line of cases, many of which are in this court, also hold that "'the concept of responsibility connotes more than corporate title' or a 'theoretical authority' to pay over taxes, but rather 'arises out of control actually exercised over the financial operations of the business.'" Id. at 35 (citing Michael I. Saltzman, IRS Practice and Procedure P17.07 (2005)). In these cases, "[t]he root principle that emerges is that an individual is not a responsible person if a third party exercises so much control over the corporate fisc as affirmatively to prevent that individual from effectuating payments to the IRS." Id. The plaintiffs do not believe they were "responsible persons" for purposes of Section 6672 because, during the three periods at issue, the co-proponent of the Plan of Reorganization, Sweepco, had actual control of the financial operations of Interstate.

The second issue in dispute is whether the plaintiffs acted willfully. "[T]he standard of willfulness adopted by the Federal Circuit in *Godfrey* clearly incorporated subjective elements, indicating that to be willful, one must act 'voluntarily' and 'consciously,' emphasizing further that 'relevant evidence bearing on the element of personal fault may not be ignored.'" Cook v United States, 52 Fed. Cl. 62, 71 (2002) (citing Godfrey, 748 F.2d at 1577). It has also been stated that "the absence of willfulness can be proved by an affirmative showing that the responsible person did not disregard his duties, and that he undertook all reasonable efforts to see that such taxes would in fact be paid, in circumstances where the employer had the means of payment and could reasonably be expected to make the payment." Cook, 52 Fed. Cl. at 71 (quoting Feist v. United States, 221 Ct. Cl. 531, 542; 607 F.2d 954, 961 (Ct. Cl. 1979); see also Mangieri v. United States, 657 F. Supp. 726 (D. Md. 1986). The plaintiffs did not act willfully because they undertook actions to arrange for the payment of the taxes by providing for the

payment of the taxes in the Amended Plan, which was agreed to by the IRS. All delinquent taxes arose after the filing of the bankruptcy petition, while Interstate was under the jurisdiction of the bankruptcy court and after Sweepco personnel had taken control of Interstate operations.

The third issue in dispute is whether the plaintiffs are absolved from liability because the IRS failed to take any action to protect its interests. This court has previously absolved taxpayers from Section 6672 liability when the IRS has failed to take action, such as foreclosing tax liens, upon the default of tax payments. See McCarty v. United States, 194 Ct. Cl. 42; 437 F.2d 961 (Ct. Cl. 1971). The plaintiffs believe they should be absolved from liability because they ensured that the IRS's claim was provided for in the Amended Plan, they ensured that the IRS had remedies if the reorganized Interstate, then under the control of Sweepco, defaulted on the payment of the taxes, and the IRS did not exercise its remedies or do anything to protect its interests.

The fourth issue in dispute is which party has the burden of proof. In Salzillo, this court contemplated and discussed Section 7491(a)(1) of the Internal Revenue Code, the application of which would shift the burden of proof to the defendant. See Salzillo, 66 Fed. Cl. at 32 n.11.

**Defendant's Statement**:[1] The central issue in this case is whether the plaintiffs are liable for the trust fund recovery penalty assessment made by the IRS pursuant to Code § 6672 of the Internal Revenue Code. In November, 2003, the IRS assessed the penalty against

---

[1]Factual statements made by the United States in subsection (h) are based on initial investigation and are not meant to waive subsequent assertions, informed by full discovery and opportunity for full review of this case, that the facts set forth in such statements are not true or did not occur.

each plaintiff for unpaid federal employment taxes due from Interstate for the quarters ended June 30, 1999, September 30, 1999, and December 31, 1999. The total penalty assessed against each plaintiff was $169,022.

Each plaintiff submitted payment to the IRS in the amount of $100 for each of the three quarters at issue. The plaintiffs then filed a refund claim for each quarter, seeking a refund of the penalties paid and requesting an abatement of the penalties assessed. On March 23, 2004, the IRS sent a denial of claim letter to the plaintiffs with respect to the penalties assessed pursuant to § 6672. The plaintiffs filed their complaint in this action on July 22, 2005, seeking a refund of their payments, plus interest and costs, and abatement of the remainder of the assessed penalties.

In addition, plaintiff Sunshine contends that on or about April 15, 2001, the IRS applied an overpayment from his tax year 2000 in the amount of $31,696 to the assessed § 6672 penalty. He filed a refund claim on July 21, 2005, seeking a refund of the $31,696 overpayment. Plaintiff Sunshine asserts that he had not received any correspondence from the IRS with respect to his refund claim as of the date the complaint was filed in this matter. Plaintiff Sunshine is seeking a refund of the overpayment from his tax year 2000 that he contends was applied to the assessed § 6672 penalty.

On October 19, 2005, the United States asserted a counterclaim seeking a judgment against each plaintiff in the amount of the total § 6672 penalty assessed, $169,022, in addition to any assessed interest, less plaintiff's payments and any credits that may have been applied by the IRS.

The applicability of the trust fund recovery penalty requires a determination of whether

each plaintiff was (1) a "person" who is required to collect, truthfully account for and pay over taxes, but who (2) "willfully" fails to do so. See § 6672; see also Godfrey v. United States, 748 F.2d 1568, 1573-74 (Fed. Cir. 1984); Farkas v. United States, 57 Fed. Cl. 134, 138-140 (2003). The first issue involves a "'search for a person with ultimate authority over the expenditure of funds since such a person can fairly be said to be responsible for the corporation's failure to pay over its taxes.'" Godfrey, 748 F.2d at 1576 (quoting White v. United States, 372 F.2d 513, 517 (1967)). The issue of "willfulness" focuses "'on the deliberate nature of the individual's election not to pay over the money and the circumstances of that refusal.'" Godfrey, 748 F.2d at 1577 (quoting Scott v. United States, 354 F.2d 292, 295 (1965)).

Both plaintiffs were shareholders and officers of Interstate in 1999. The United States believes that the plaintiffs were "responsible persons" for the purposes of § 6672 because they were responsible for the overall financial management of Interstate in 1999, including, but not limited to, writing checks, preparing tax returns, and entering contracts. In addition, the United States believes that the plaintiffs willfully failed to collect, truthfully account for, and pay over taxes during the last three quarters of 1999 because they wrote numerous checks to creditors other than the IRS during those quarters. These are fact-intensive issues, and the United States anticipates that many material facts will be disputed as this case proceeds.

In addition to the applicability of the trust fund recovery penalty, there is an issue in this case with respect to the Court's subject matter jurisdiction over plaintiff Sunshine's refund claim for tax year 2000. Plaintiff alleges that he filed a refund claim with the IRS on July 21, 2005. He also alleges that he had not received a notice of disallowance from the IRS prior to filing the complaint in this action on July 22, 2005. Because plaintiff Sunshine neither allowed six months

to expire after filing his refund claim nor alleged that he received a notice of disallowance from the IRS prior to filing the complaint, this Court lacks subject matter jurisdiction over his refund claim for tax year 2000 pursuant to Section 6532(a) of the Internal Revenue Code of 1986. Accordingly, the parties have agreed to a stipulated dismissal of this claim pursuant to RCFC 41(a)(1).

(i) Settlement:

**Plaintiffs' Statement:** Plaintiffs are not opposed to using ADR, but do not believe any of the means of ADR described in the Court's August 5, 2005 order are viable means of resolving this case. Resolution of this case will require a detailed and technical understanding and analysis of case law, bankruptcy law, bankruptcy documents and the IRS's process of reviewing and approving a plan of reorganization. Plaintiffs believe the court is best suited to analyze and resolve the issues in this case.

**Defendant's Statement:** Defendant does not believe that the Court of Federal Claims' ADR Program or any of the other means of ADR described in the Court's August 5, 2005 order are viable means for resolving this case. As the United States had no knowledge of the financial management and decisions being made at Interstate in 1999, during the time when Interstate failed to pay federal employment taxes, extensive discovery of this case is necessary. It is necessary to develop a full understanding of the role played by each plaintiff in the financial management of Interstate in 1999, in addition to the plaintiffs' intentions in failing to ensure payment of federal employment taxes. ADR techniques would not be helpful in reaching a just result here – certainly not at this early date, when the attorneys for the United States have not yet

developed the facts of the case.

The United States has no categorical opposition to using ADR, and in fact ADR has been successfully employed in a small number of tax cases in this court. However, as the Court is aware, the Tax Division has an excellent record of settling cases that should be settled without resort to ADR techniques. If there is an opportunity to settle this case before commencing trial, the Tax Division will pursue that opportunity as it always does.

(j) Trial scheduling matters; discovery plan:

(i). **Date for joinder of additional parties:** None anticipated.

(ii). **Discovery plan:**

(1) *Dispositive motions*:

**Plaintiff**: Although not yet determined, plaintiffs may file a motion for summary judgment. Even if the plaintiffs were to concede all disputed facts with respect to the responsible person issue, the plaintiffs believe that, due to the IRS's agreement to the Amended Plan, they would be found, as a matter of law, not to be willful and therefore not liable under Section 6672. The Amended Plan clearly provides for payment of the taxes at issue, the nonpayment of which occurred under the jurisdiction of the bankruptcy court. Plaintiffs wish to complete discovery before filing a motion for summary judgment. Accordingly, if the plaintiffs file a motion for summary judgment, they will do so no later than July 15, 2006. There is no connection between a motion for summary judgment filed by the plaintiffs and any expert discovery.

**Defendant**: The United States does not, at this time, anticipate filing a dispositive motion.

(2) *Phased or Limited discovery*:

Discovery should proceed on all issues simultaneously.

(3) *Completion date for fact discovery*: July 1, 2006

(4) *Proposed dates for status conference at close of discovery*:

(a) July 14, 2006, 2:00 p.m. EST;

(b) July 21, 2006, 2:00 p.m. EST; or

(c) July 28, 2006, 2:00 p.m. EST

(5) *Expert discovery*:

(a) *Identification of plaintiffs' experts' identities and reports*:

On or before June 1, 2006

(b) *Depositions of plaintiffs' experts*:

On or before July 1, 2006

(c) *Identification of defendant's experts' identities and reports*:

On or before August 1, 2006

(d) *Depositions of defendant's experts*:

On or before September 1, 2006

(e) *Disclosure of rebuttal experts or reports*:

On or before October 1, 2006

(6) *Completion date for expert discovery*: October 1, 2006

(7) *Limits on interrogatories and depositions*:

**Plaintiff**: The plaintiffs believe the presumptive limit of five (5) depositions and twenty-five (25) interrogatories is sufficient for their case.

**Defendant**: The presumptive limit of five (5) depositions and 25 interrogatories is too few for this fact-intensive case. For example, more than five (5) individuals are discussed in the complaint, and the United States believes each of these individuals is likely to have discoverable knowledge about the financial management of Interstate in 1999. The United States requests a limit of 10 depositions and 50 interrogatories.

(8) *Physical or mental examinations*: None anticipated

(9) *Completion date for all discovery*: October 1, 2006

(iii) *Earliest trial date*: December 1, 2006

(iv) *Anticipated trial duration*: 3 days (entire case)

(v) *Requested trial location*:

**Plaintiff**: Denver, Colorado

**Defendant**: No request

(k) <u>Electronic Case Management</u>: This case was designated as an ECF case on October 13, 2005.

(l) <u>Other information</u>:

(a) *Early meeting of counsel*: December 21, 2005.

(b) *Initial disclosures*:

**Plaintiffs**: December 20, 2005 and January 12, 2006

**Defendant**: January 9, 2006

(c) *Anticipated litigation costs*:

**Plaintiffs**: Through the end of discovery: $35,000; By the end of trial: $50,000; Through appeal: $60,000. The plaintiffs have been provided these estimates.

**Defendant**: Not more than $25,000

(d) *Proposed dates for status conference*:

(1) February 1, 2006, 2:00 p.m. EST;

(2) February 2, 2006, 2:00 p.m. EST; or

(3) February 3, 2006, 2:00 p.m. EST

(e) *Potential conflict of interest*:

**Plaintiffs**: The plaintiffs have each signed a waiver of conflict. Because the IRS agreed to the Amended Plan, the plaintiffs do not believe that their actions were "willful" and therefore, their interests are aligned.

**Defendant**: The United States believes that there is a potential conflict of interest in the joint representation of plaintiffs Sunshine and Hickel. The Section 6672 penalty has been assessed against both plaintiffs in the full amount, and is the functional equivalent of joint and several liability. As a result, the plaintiffs have adverse interests in this litigation.

Respectfully submitted,

s/Theodore Z. Gelt
THEODORE Z. GELT
JEFF C. TAUSCHER
Gelt & Grassgreen P.C.
303 East 17th Avenue, Suite 910
Denver, CO 80203
(303) 830-1200
Fax (303) 830-9400

*Attorneys for Plaintiffs*

s/Jennifer P. Wilson
JENNIFER P. WILSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6495
Fax (202) 514-9440

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Acting Chief, Court of Federal Claims Section
ROBERT J. HIGGINS
Reviewer

s/Robert J. Higgins
Of Counsel

January 26, 2006

APPENDIX

**Plaintiffs' Documents:**

A. Disclosure Statement to Joint Plan of Reorganization, filed June 23, 1999

B. Management Services Agreement with Enhanced Information Services

C. Letter to IRS from Theodore W. Graham, dated February 17, 2000

D. Letter to IRS from Neil M. Goff, dated February 22, 2000

E. Letter to IRS from Glen E. Keller, Jr., dated February 24, 2000 (with attachments)

F. Letter to Glen E. Keller, Jr., from IRS, dated February 23, 2000

G. Stipulation to Plan Amendments

H. Order confirming Plan of Reorganization

I. Fifth Amended Plan of Reorganization, as confirmed, filed

J. Notice of Disallowance - David Sunshine

K. Notice of Disallowance - Kelly T. Hickel

**Defendant's Documents:**

1. Form 4340, Certificate of Assessments, Payments, and Other Specified Matters for Kelly T. Hickel, for Civil Penalty, for tax period June 30, 1999
2. Form 4340, Certificate of Assessments, Payments, and Other Specified Matters for Kelly T. Hickel, for Civil Penalty, for tax period September 30, 1999
3. Form 4340, Certificate of Assessments, Payments, and Other Specified Matters for Kelly T. Hickel, for Civil Penalty, for tax period December 31, 1999
4. Form 4340, Certificate of Assessments, Payments, and Other Specified Matters for David Sunshine, for Civil Penalty, for tax period June 30, 1999
5. Form 4340, Certificate of Assessments, Payments, and Other Specified Matters for David Sunshine, for Civil Penalty, for tax period September 30, 1999
6. Form 4340, Certificate of Assessments, Payments, and Other Specified Matters for David Sunshine, for Civil Penalty, for tax period December 31, 1999
7. Form 4340, Certificate of Assessments, Payments, and Other Specified Matters for David Sunshine, for U.S. Individual Income Tax Return, for tax period 2000[2]

---

[2]This document has been requested from the IRS, but not yet received. It will be submitted separately as soon as it is available.