# MANAGEMENT SERVICES ENGAGEMENT LETTER

This letter sets forth the agreement between Enhanced Information Services ("EIS"), having offices at 2010 Hancock Street, Suite A San Diego, CA 92110 and Kelly T. Hickel, having an office at 1002 Willow Court., Longmont, Colorado, 80501 with respect to the execution of the Scope of Work (described below), on a best efforts basis.

## 1. SCOPE OF WORK

A. Kelly T. Hickel will provide Management Services in the areas of:

(a) Financial and business operational matters related to the Company and its vendors, lenders/creditors, current shareholders/investors and the potential restructuring of its Capital Structure thereof;

(b) Provide Financial Services in matters pertaining to the active pursuit of financing whether debt or equity, as well as the utilization of any financial instruments controlled by EIS that may be used in procuring financing from external sources to include preparation for funding efforts;

(c) Assist in creating a commercially acceptable company business plan for the purpose of raising that external capital, private and/or public; and

(d) EIS hereby nominates and authorizes Kelly T. Hickel to serve as the company's non-exclusive agent to seek and obtain external capital to serve the company's short and long-term capital needs on terms and conditions acceptable to EIS. Compensation for said services are contained in Section 2. (a) and (b) and referred to as the "Success Fee".

(e) EIS hereby nominates and agrees to elects Mr. Hickel to its Board of Directors and as CHAIRMAN, an Officer of the Corporation.

B. Statement of Work:

1. Conduct an in-depth analysis of the company at its current state, assessing risks and opportunities as well as strengths and weaknesses;
2. Based on that analysis and discussions with yourself, prepare a Strategic Plan to take EIS to the next level;
3. Develop a plan to position the Company with the financial community in order raise the capital necessary to execute the Strategic Plan;
4. Assist the company in enhancing its balance sheet and raising additional private debt and/or equity, and, possibly, public equity, if desired;
5. If necessary, prepare a commercially acceptable business plan;
6. Further responsibilities as agreed with you.

EXHIBIT
tabbies
B

The immediate and initial effort will focus simultaneously on:

a.) raising debt and/or equity capital;
b.) assisting in negotiating existing agreements now underway;
c.) reviewing the financials for presentation to lenders and/or investors;
d.) preparing a draft Business Plan.

**2. RETAINER and FEES**

The fees to be paid to Kelly T. Hickel for such services as put forth in item (a), (b), (c) and (d) in Section 1. of this Engagement Letter shall be a non-refundable Retainer of $2,500 (Two Thousand, Five Hundred Dollars) paid at the time of signing. Fees for said work shall be at a minimum rate of $2,500 (Two Thousand Five Hundred Dollars) per month paid in advance, plus expenses (see Section 3). In months where the Net Revenues as defined by Generally Accepted Accounting Principals (GAAP) exceed $250,000 the Monthly Fee shall increase to $5,000. In months where the Net Revenues by GAAP exceed $500,000 the Monthly Fee shall increase to $7,500. In months where the Net Revenues by GAAP exceed $1,000,000 the Monthly Fee shall increase to $10,000. Said services will be rendered, for Mr. Hickel, at the rate of $150 per hour and for all other professionals at the rate of $75 per hour and billed against the minimum fee on a monthly basis. No additional services beyond the specified Monthly Fee will be billed without EIS' approval in advance. Each month will be considered a separate billing cycle. Kelly T. Hickel may employ or retain outside consultants upon approval of EIS, in advance, whose compensation shall be in addition to and billed and paid separately from this agreement. In all events, no fee above $2,500 per month will be paid unless and until the cash is on hand to make the payment. Any payments not made because of this provision will accrue until the cash is on hand to make the payment.

The first installment of said fees shall be paid upon the execution of this Engagement Letter and shall continue thereafter for the duration of this agreement (see Section 7.).

In addition to the non-refundable retainer and the Monthly Fee, BeastMasters™ will receive a Success Fee of:

(a) An amount equal to a Lehman Formula, described below, of the aggregate proceeds received by EIS from any and all Transactions, Investments or Borrowings under these arrangements, whether those proceeds shall be in the form of debt, equity or other financing means:

Lehman Formula is: 5% of the first million dollars of funding; 4% of the second million dollars of funding; 3% of the third million dollars of funding; 2% of the fourth million dollars of funding and 1% of any subsequent funding. The calculation is based on the aggregation of all funding from the date of this engagement letter.

(b) An option for the common stock of EIS for a total purchase price of one-tenth of the Net Worth of EIS as of December 31, 1999 and in an amount equal to ten percent (10%) of the total number of outstanding issued shares at the time of the closing of the

transaction(s) {see 2 (a)} with full anti-dilution provisions. Such option is to be exercisable for a period of five (5) years; and

(c) Said Success Fee shall be due and payable within ten days of the closing date of any transaction(s) initiated while this Agreement is in force or should a funding result, from actions directly related to efforts undertaken under the terms of this Agreement, within 24 (twenty-four) months of the termination date of this Agreement.

## 3. EXPENSES

Where the word "expenses" is used anywhere in this document, it shall be defined by this paragraph. EIS shall reimburse Kelly T. Hickel for all actual, reasonable and accountable expenses incurred in the performance of such services as outlined in item (a), (b) and (c) in Section 1.above.

All expenses include, but are not limited to: telephone, travel, meals, lodging and support costs associated with the effort. Any travel and entertainment expenses shall be approved by EIS in advance. Expenses shall be billed monthly and are due upon receipt.

## 4. PAYMENT TERMS

All invoices are due upon receipt. Kelly T. Hickel will provide a monthly invoice for all services and expenses for that period and EIS agrees to pay the total such invoices in accordance with Sections 2 and 3 above. All portions of invoices pertaining to expenses more than thirty (30) days past due carry a finance charge of one and one half percent (1.5%) per month on the outstanding balance. EIS agrees to pay all costs associated with any collection action that Kelly T. Hickel may bring, including but not limited to, reasonable attorney's fees, if EIS fails to meet its obligations under this agreement.

## 5. CONFIDENTIALITY

Kelly T. Hickel will exercise reasonable care to keep confidential for a period of two (2) years from disclosure and material, non-public information regarding EIS obtained by Kelly T. Hickel from EIS and identified by it as "confidential information" in connection with this engagement and shall use such information solely for the purpose contemplated by this engagement unless otherwise expressly agreed to by EIS or as required by law. There is no obligation of confidentiality with respect to confidential information that becomes generally known or available without the fault of Kelly T. Hickel, or known to Kelly T. Hickel at the time of disclosure or is furnished to other without restriction on disclosure. Kelly T. Hickel will execute such other and further non-disclosure and non-circumvention agreements upon request of EIS pertaining to protection of confidential financial and/or proprietary trade-secret information such information and to disclose same to employees and/or consultants of Kelly T. Hickel as is necessary to carry out its duties under this agreement.

## 6. INDEMNIFICATION

Each of EIS and Kelly T. Hickel (the "Indemnifying Party or Parties") hereby agree to indemnify and hold the other party harmless including its Managers, Associates, officers, agents and each person, if any, who controls them (collectively, the "Indemnified Party or Parties") against all losses which they or any of them may suffer and all claims, damages or liabilities, jointly or severally, to which they or any of them may become subject under federal and state securities laws or otherwise, and to reimburse the Indemnified Parties, and each of them, for all costs and expenses (including reasonable fees and disbursement of counsel) incurred by them, and each of them, in connection therewith, insofar as such losses, claims, damages or liabilities arise out of or are based upon (i) any untrue statement of material fact contained in the documentation (the "Documentation") prepared by, or approved by such Indemnifying Party to be distributed in connection with the Offering or Sale (or any amendment or supplement thereto), or at any time made by such Indemnifying Party or any of its directors, officers or agents: (ii) the omission or alleged omission to state in such Documentation or otherwise any material fact required to be so stated or necessary to make the statements contained in the Documentation or otherwise made by such Indemnifying Party or any of its directors, officers or agent, not misleading in connection with the sale or the consummation of the transactions contemplated in the Documentation.

## 7. NON-CIRCUMVENTION

The Parties agree that they will not perform any act, or make any attempt to circumvent or otherwise avoid its obligation to hold the Information for its own internal use provided for by this agreement, whether by negotiating an independent agreement with a Financing, Product or Market Source, structuring a agreement with one of BeastMasters technology, product or financial sources, discussing or negotiating any agreements or information with any other than Kelly T. Hickel or persons authorized by the Kelly T. Hickel, challenging the provisions of this Agreement or otherwise.

## 8. DUE DILIGENCE/INVESTMENT BANKING

Notwithstanding anything to the contrary contained in this agreement, Kelly T. Hickel has not been retained to conduct any due diligence or other review of the bonafides of EISE, including without limitation its financial condition, the technical and engineering integrity of its products, the viability of markets for its products and/or the extent of competition or the regulatory environment of the market for its products. The Parties agree that Kelly T. Hickel has not been retained as an investment banker, broker or dealer in connection with a specific distribution or placement of securities and contemplate that investment bankers or brokers/dealers may be retained in the future. To the extent that Kelly T. Hickel is required to conduct due diligence for such purposes in the future, an appropriate written memorandum expanding the scope of this agreement shall be executed.

## 8. TERMINATION

The engagement contemplated herein shall commence upon the date set forth below and shall continue for a period of twelve (12) months, (unless terminated sooner by a party due to a material breach by the other party). Should the company without material breach terminate this agreement by Kelly T. Hickel within said twelve-month period, two

months' minimum fees will be required to be rendered as severance. After the twelve month period, either party shall have the right to terminate this engagement at the end of any monthly period without liability or obligation whatsoever in which case EIS shall pay Kelly T. Hickel all outstanding fees and expenses incurred through termination.

If Kelly T. Hickel's engagement is terminated, the provisions of this agreement relating to indemnification and confidentiality and the option to acquire EIS shares of common stock shall survive any such termination. This agreement replaces any and all agreements between EIS and Hickel or the partnership formerly known as BeastMasters, LTd.

Approved as of this 7th. Day of July, 1999

Kelly T. Hickel

Kelly T. Hickel

Enhanced Information Systems

Jeffrey Flannery, President and CEO