IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DAVID SUNSHINE and
KELLY T. HICKEL,

Plaintiffs

v.

UNITED STATES OF AMERICA,

Defendant

No. 05-773 T (Chief Judge Damich)

# PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Theodore Z. Gelt
GELT & GRASSGREEN P.C.
303 East 17th Avenue, Suite 910
Denver, Colorado 80203
Telephone: (303) 830-1200
Facsimile: (303) 830-9400

ATTORNEY FOR PLAINTIFFS

# TABLE OF CONTENTS


Page

PRELIMINARY STATEMENT . . . . . . . . . . 1

QUESTIONS PRESENTED . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . 5

I. Plaintiffs cannot be held liable under Section 6672 because Plaintiffs did not act willfully since they undertook all reasonable efforts to see that the Payroll Taxes would be paid, in circumstances where the employer had the means of payment and could reasonably be expected to make the payment . . . . . . . . . 6

II. The Plaintiffs are released from liability because the IRS Approved the Plan of Reorganization and had the means to Collect the Payroll Taxes but failed to take even minimal action to protect its interest and collect the taxes. . . . . . . . . . 9

CONCLUSION . . . . . . . . . . 13

APPENDIX

# TABLE OF AUTHORITIES

Page

## STATUTES

Internal Revenue Code, 26 U.S.C

Section 6672 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## CASES

Cook v. United States, 52 Fed. Cl. 62 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Feist v. United States, 607 F.2d 954 (Ct. Cl. 1979) . . . . . . . . . . . . . . . . . . . . . . . . 6

Godfrey v. United States, 748 F.2d at 1577. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

McCarty v. United States, 437 F2d 961 (Ct.Cl. 1971) . . . . . . . . . . . . . . . . . . . . . . 9

Mangieri v. United States, 657 F.Supp 726 (D. Md. 1986 . . . . . . . . . . . . . . . . . . . 10

Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986) . . . . . . . . . 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DAVID SUNSHINE and
KELLY T. HICKEL,

Plaintiffs

v.

No. 05-773 T (Chief Judge Damich)

UNITED STATES OF AMERICA,

Defendant

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## PRELIMINARY STATEMENT

This brief is submitted in support of plaintiffs' motion for summary judgment regarding plaintiff's claim for refund and defendant's counterclaim. This case involves unpaid federal employment taxes ("Payroll Taxes") due from Interstate Sweeping, Ltd. (Interstate) for the second, third and fourth quarters of the 1999 calendar year. Defendant seeks to hold plaintiffs liable for the tax under the provisions of section 6672 of the Internal Revenue Code of 1986, as amended ("IRC").

## QUESTIONS PRESENTED

1. Assuming only for purposes of this Motion for Summary Judgment that the plaintiffs were "responsible persons" for purposes of IRC Section 6672, whether plaintiffs acted willfully.

2. Where the Internal Revenue Service approved of the Plan of Reorganization and had the means to collect the Payroll Taxes but failed to take minimal action to protect its interests,

whether the plaintiffs were released, as a matter of law, from liability for the penalties assessed pursuant to Section 6672.

STATEMENT OF FACTS

Plaintiff David Sunshine resides at 5728 S. Galena Street, Greenwood Village, Colorado 80110. (PF 1.)[1] Plaintiff Kelly T. Hickel resides at 1002 Creek Court, Longmont, Colorado 80503. (PF 2.)

This case involves the assessment of penalties under IRC Section 6672 for unpaid federal employment taxes ("Payroll Taxes") due from Interstate Sweeping, Ltd. (Interstate) for the second, third and fourth quarters of the 1999 calendar year. (PF 4.) On or about November 14, 2003, the defendant assessed against each of the plaintiffs penalties under IRC Section 6672 for the unpaid federal employment Payroll Taxes due from Interstate for the following calendar quarters and amounts (PF 5.):

| Quarter Ended | Amount |
|---|---|
| June 30, 1999 | $3.94 |
| September 30, 1999 | $13,401.75 |
| December 31, 1999 | $155,616.32 |
| Total | $169,022.01 |

On or about January 13, 2004, each plaintiff submitted payment in the amount of $100 for each calendar quarter referenced above, for a total of $300 for each plaintiff. (PF 6.) Sometime in December 2003 or January 2004, each plaintiff filed a Form 843, Claim for Refund and Request for Abatement, with the Internal Revenue Service for the second, third and fourth

[1] References to "PF" are to Plaintiff's Proposed Findings of Uncontroverted Facts filed herewith.

quarters of the 1999 calendar year, claiming a refund of the penalties paid and requesting an abatement of the penalties assessed. (PF 7.)

By notice of disallowance dated March 23, 2004, the Internal Revenue Service notified the plaintiffs that it had disallowed the plaintiffs' claims for refunds and abatement of penalties assessed pursuant to Section 6672. (PF 8.) On July 21, 2005, plaintiffs filed the instant refund suit in the United States Court of Federal Claims. (PF 9.) On October 19, 2005, defendant filed its Answer and Counterclaim. The Counterclaim seeks recovery against the plaintiff David Sunshine in the amount of the 6672 penalty ($169,022.01) less plaintiff's $300 payment. The Counterclaim seeks recovery against the plaintiff Kelly Hickel in the amount of the 6672 penalty ($169,022.01) less plaintiff's $300 payment. (PF 10.)

On or about April 15, 2001, the Internal Revenue Service applied $13,103.79 of plaintiff David Sunshine's overpayment from the year 2000 to satisfy a portion of the penalties assessed for the period ending September 30, 1999 and applied $16,530.94 of plaintiff David Sunshine's overpayment from the year 2000 to satisfy a portion of the penalties assessed for the period ending December 31, 1999. (PF 11.) On or about July 21, 2005, plaintiff David Sunshine filed a claim for refund with the Internal Revenue Service at Austin, Texas, for $31,696.00. (PF 12.)

Because six months had not elapsed from the time plaintiff David Sunshine filed his claim for refund in the amount of $31,696 and filing the complaint on July 21, 2005 (Case No. 05-773 T), as required by Section 6532(a), plaintiff David Sunshine filed a separate complaint on March 13, 2006 in Case No. 06-169 T. (PF 13.) An Order consolidating Case No. 05-773 T and Case No. 06-169 T was issued by this Court on March 14, 2006. (PF 14.)

On February 11, 1999, Interstate filed a bankruptcy petition in the United States Bankruptcy Court, District of Colorado, under Chapter 11 of the Bankruptcy Code. (PF 15.)

During the bankruptcy proceeding, Interstate was identified as the debtor-in-possession. (PF 16). The unpaid federal employment taxes for which the plaintiffs have been assessed penalties under Section 6672 were incurred during the second, third and fourth quarters of 1999, during which time Interstate was under the jurisdiction of the Bankruptcy Court. (PF 17.)

On December 29, 1999, the Fifth Amended Joint Plan of Reorganization of Interstate Sweeping, Ltd., IG Services Group, LLC and Sweepco, LLC ("Sweepco") was filed with the Bankruptcy Court, of which Sweepco was a co-proponent. (PF 18.) Such plan, as re-submitted on March 2, 2000, was confirmed by the Bankruptcy Court, effective March 2, 2000 (the "Plan of Reorganization.") (PF 19.)

By a letter dated February 17, 2000. Sweepco stated to the Internal Revenue Service that the reorganized Interstate (the "Reorganized Interstate") would "pay the trust fund portion of the taxes due post-petition." (PF 20.) In a letter delivered to the Internal Revenue Service on February 22, 2000, Sweepco set forth its proposal in full settlement of the Payroll Taxes. (PF 21.) As evidenced by the facsimile dated February 23, 2000, the Internal Revenue Service provided language to be included in the Plan of Reorganization. (PF 22). By letter dated February 23, 2000, the Internal Revenue Service confirmed that it did not object to the provision for its priority claim in the Plan of Reorganization. (PF 23.) By letter dated February 24, 2000, Sweepco stated that the "[R]eorganized Interstate has the obligation to file returns and pay taxes and its default triggers the default provisions" of the Plan of Reorganization. This letter was signed by Mara Eckhardt of the Internal Revenue Service, indicating the Internal Revenue Service did not object to the modifications of the Plan of Reorganization. (PF 24.)

Section 3.3 of the Plan of Reorganization set forth the remedies available to the Internal Revenue Service in the case of default, which included filing federal tax liens. (PF 25.) The Internal Revenue Service failed to file a notice of federal tax lien. (PF 26.)

Pursuant to Section 8.1 of the Plan of Reorganization, Sweepco obtained all of the outstanding stock of Interstate upon confirmation of the Plan of Reorganization. (PF 27.) According to the notice of default dated May 26, 2000, the Reorganized Interstate, then under the control of Sweepco, defaulted on the payments of the Payroll Taxes required by Section 3.3 of the Plan of Reorganization. (PF 28.) The Chapter 11 Final Report filed by the Reorganized Interstate on May 9, 2001, indicated that the Reorganized Interstate had cash in the amount of $171,993.29 which was in excess of the amount assessed against each of the plaintiffs ($169,022.01). (PF 29.)

## ARGUMENT

Summary judgment is appropriate where the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c). In determining whether a genuine issue of material fact exists, the court must view all facts and reasonable inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., v. Zenith Radio, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed 2nd 538, (1986.)

The pleadings, depositions, answers to interrogatories, and admission on file in this case show that there are no genuine issues of material fact regarding whether or not plaintiffs undertook all reasonable efforts to ensure the Payroll Taxes would be paid, under circumstances where the employer had the means of payment and could reasonably be expected to make the

payment, thereby negating the element of willfulness. Further, the pleadings, depositions, answers to interrogatories, and admission on file in this case show that there are no genuine issues of material fact regarding Internal Revenue Service ("IRS") acceptance of the Plan of Reorganization or the fact that the IRS had the means to collect the Payroll Taxes but failed to take minimal action to protect its interests, thereby releasing the plaintiffs from liability. Because there is no genuine issue of material fact with respect to these issues, the plaintiffs are entitled to summary judgment as a matter of law.

## I. The Plaintiffs cannot be held liable under Section 6672 because the Plaintiffs did not act willfully since they undertook all reasonable efforts to see that the Payroll Taxes would be paid, in circumstances where the employer had the means of payment and could reasonably be expected to make the payment.

Internal Revenue Code Section 6672 provides, in relevant part, that "any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, shall . . . be liable to a penalty equal to the total amount of the tax . . . not collected, or not accounted for and paid over." Persons who are required to collect, account for and pay over taxes are commonly referred to as "responsible persons." To be liable under Code Section 6672, a responsible person must "willfully" fail to collect, account for and pay over such tax.

The willfulness requirement of section 6672 was examined by this Court in Cook v. United States, 52 Fed. Cl. 62 (2002). In its discussion of the willfulness requirement, the Court quoted the Court of Claims in Feist v. United States, 221 Ct. Cl. 531, 607 F.2d 954 (Ct. Cl. 1979), which described willfulness in the following terms:

> Willfulness can be proved by showing that the responsible person recklessly disregarded his duty to collect, account for, and pay over the trust fund taxes or by showing that the responsible person ignored an obvious and known risk that the trust funds might not be remitted. The concomitant of this rule must be that absence of

> willfulness can be proved by an affirmative showing that the responsible person did *not* disregard his duties, and that he undertook all reasonable efforts to see that such taxes would in fact be paid, in circumstances where the employer had the means of payment and could reasonably be expected to make the payment.

Feist, 607 F.2d at 961 (citations omitted). This Court in Cook went on to state that "[m]ore recently, the standard for willfulness adopted by the Federal Circuit in Godfrey clearly incorporated subjective elements, indicating that to be willful, one must act "voluntarily" and "consciously," emphasizing further that 'relevant evidence bearing on the element of personal fault may not be ignored.'" Cook, 52 Fed. Cl. at 71 (citing Godfrey, 748 F.2d at 1577).

In this case, the plaintiffs did not act willfully because they undertook all reasonable efforts to see that the Payroll Taxes would in fact be paid, in circumstances where the Reorganized Interstate had the means to pay the taxes and could reasonably be expected to make the payment. First, the plaintiffs collaborated with the IRS to ensure that the IRS approved of the language contained in the Plan of Reorganization which provided for the payment of the Payroll Taxes. This collaboration is evidenced by the facsimile from the IRS to Interstate's attorney, dated February 23, 2000, which provides language suggested by the IRS for inclusion in the Plan of Reorganization. (PF 23.)

As a result of the plaintiffs' efforts and the IRS's involvement, Section 3.3 of the Plan of Reorganization provided, in relevant part, for the payment of the Payroll Taxes and for remedies upon default as follows:

> In addition, the IRS will be paid post-petition taxes for the period February 11, 1999 through December 31, 1999 by payment in cash of $159,657 and a balance of $250,000 in equal monthly installments of principal and interest over a six (6) year period with such principal balance bearing interest at the rate of seven percent (7%) per annum. These payments, when made, will constitute payment in full for payroll tax liability for the period in question.

* * *

> Upon the occurrence of an event of default and provided notice has been given and the procedures followed as provided below, the IRS shall have the following rights: (a) The IRS shall have the right to declare due and payable and assess any interest or penalties which would have accrued on the pre-petition federal tax liabilities of the Debtors but for the filing of the bankruptcy petition; (b) the IRS shall have the right to proceed against the Reorganized Debtor or its assets to collect any of the pre-petition or pre-confirmation tax liabilities and related interest and penalties, including interest and penalties through use of the administrative or judicial collection procedures available to the IRS under the Internal Revenue Code as if no bankruptcy petition had been filed. Such procedures shall include but are not limited to the following: (i) the filing of notices of federal tax liens. (c) In its sole discretion, the IRS shall also have the right to seek an order, after notice and a hearing, providing for the immediate conversion of the case to one under Chapter 7 subject to the procedures described above in this Plan.

Second, Interstate had the ability to pay the Payroll Taxes at the time the Plan of Reorganization was confirmed. The Chapter 11 Final Report filed with the Bankruptcy Court on May 9, 2001 indicated that Interstate had cash available in the amount of $171,993.29, which amount was in excess of the tax liability of $169,022.01 assessed against each of the plaintiffs. (PF 29.) Third, the plaintiffs were reasonable in expecting the payments to be made as the Reorganized Interstate was obligated to make the payments pursuant to the Plan of Reorganization and the Reorganized Interstate has sufficient funds to make the payments.. In its letter dated February 17, 2000, Sweepco stated to the Internal Revenue Service that the Reorganized Interstate would "pay the trust fund portion of the taxes due post-petition." (PF 20.) The plaintiffs had no reason to believe that the payments would not be made. In sum, the plaintiffs were not willful because they undertook all reasonable efforts to ensure that the unpaid Payroll Taxes, which were incurred after Interstate filed for bankruptcy, would be paid by providing for the payment of the Payroll Taxes in the Plan of Reorganization.

**II. The plaintiffs are released from liability because the IRS approved the Plan of Reorganization and had the means to collect the Payroll Taxes but failed to take even minimal action to protect its interests and collect the taxes.**

This Court's predecessor, the United States Court of Claims, previously released taxpayers from Section 6672 liability when the IRS agrees to a payment plan and fails to take even minimal action to protect its interests when it had the means to do so. See McCarty v. United States, 194 Ct. Cl. 42; 437 F.2d 961 (Ct. Cl. 1971).

In McCarty v. United States, 194 Ct. Cl. 42; 437 F.2d 961 (Ct. Cl. 1971), the taxpayer incorporated Marine Aircraft Corporation ("Marine"), which obtained a number of Navy and Air Force contracts. Initially, Marine's workload was financed by a loan agreement arranged with a bank. After August 1952, Marine was allowed to borrow up to 100 percent of its unreimbursed inventory cost. The Navy guaranteed the loan by a V-loan Guarantee Agreement with the bank. By the end of July 1952, Marine owed $130,000 in withholding taxes. Steps were then taken to negotiate a deferred payment arrangement with the IRS. An agreement with the IRS, dated October 1, 1952, provided that tax liens would not be enforced if Marine would pay up the tax arrears at the rate of $8,000 monthly and meet its current taxes when due. In November of 1952, the bank called upon the Navy for its guarantee, which the Navy paid. On November 10, 1952, the Navy took over the financial management of Marine. Shortly thereafter, the Navy caused Marine to default on its payment to the IRS.

The taxpayer did not deny that prior to November 10, 1952 he was a responsible person. Instead, the taxpayer merely sought to avoid the penalty assessed him by pleading the agreement with the revenue authorities as providing a reasonable cause for nonpayment of the delinquent taxes. In its discussion, the court stated as follows:

> [T]he unusual and exceptional facts of this case as evidenced by the agreement, the lack of its enforcement, the waiver of the tax

> liens by the IRS, the policy of the IRS not to collect the tax from the responsible officers of a company if the taxes can be collected from the company and the prejudicial treatment of the plaintiff by arms of the government, in our opinion permits the plaintiff to avoid the statutory penalty for the period to November 10, 1952.

In its analysis, the court also stated as follows:

> Furthermore, the Navy wrote the IRS on August 14, 1953, and advised it that the tax indebtedness due the IRS would be paid out of any excess funds left over after all claims of the Air Force and Navy, including the latter's loan, had been paid in full. The IRS agreed to this plan as shown by its complete inaction and its failure to foreclose its tax liens on Marine's unencumbered property. This amounted to a waiver by the IRS of its tax lien and this had the effect of absolving the plaintiff of liability for the delinquent taxes to this extent. This is true for the obvious reason that the taxes equal to the value of Marine's property could have been collected by the IRS had it foreclosed its tax liens upon default of the payments of the tax arrears as provided in the agreement with Marine. The record shows that the IRS never foreclosed its tax liens on Marine's property even in Marine's bankruptcy proceedings, and by such failure completely waived such liens, all to the detriment of the interests of the plaintiff, as well as the IRS.

Courts in at least one other jurisdiction have also found a taxpayer not liable under Section 6672 when the IRS fails to take action to protect its interest when it has the means to do so. See Mangieri v. United States, 657 F.Supp. 726 (D. Md. 1986).

In Mangieri v. United States, 657 F.Supp. 726 (D. Md. 1986), the plaintiff conceded that he was a responsible person but disputed that he "willfully" failed to pay the taxes. During the period of 1973 to 1975, Maryland Bionics often faced financial difficulties and did not pay the full amount of employee withholding taxes. In an attempt to resolve the problem, the taxpayer met with an IRS agent and assigned to the IRS the rights to collect on a contract Maryland Bionics had with the United States Army. In its discussion of the case, the court stated that:

> The important fact is that the IRS failed to take the necessary steps to secure the assignment, and when Maryland Bionics "went under," the United States Army contract proceeds went to other

> creditors and not the IRS. Because of the IRS' failure to secure the assignment, Maryland Bionics' taxes were not paid, and Mr. Mangieri, who thought he had taken care of the problem, was faced with a claim by the IRS that he was liable for the 100% penalty assessment.
>
> * * *
>
> The plaintiff's position was that the taxes were not paid as a result of the errors and omissions of the IRS, and therefore, he did not "willfully" fail to pay them; that to the contrary, he took reasonable steps to ensure that the taxes would be paid. The government, on the other hand, argued that the IRS was under no obligation to seek funds from other sources, and that all that mattered here was that Mr. Mangieri knew the taxes were supposed to be paid and did not pay them. The government seemed to make the incredible assertion that it did not matter that it was an IRS agent who agreed to accept the assignment of the Army contract and then failed to follow through.

On these facts, the jury in the case found for the plaintiff. Further, the court found that the position of the United States in the lawsuit was unreasonable and that plaintiff was entitled to reasonable litigation costs. In its analysis, the court stated as follows:

> [T]he only issue in this case was whether or not the plaintiff's failure to pay over the employment tax liability was willful. The government proceeded in this action, in spite of the fact that it knew the circumstances surrounding the plaintiff's attempt to assign the Army contract and to arrange the payment of the taxes.

Like the taxpayers in McCarty and Mangieri, the plaintiffs are released from liability under the facts of this case.

First, like the taxpayer in McCarty, the plaintiffs reached an agreement with the IRS for the payment of delinquent taxes. In this case, such agreement was reflected in Section 3.3 of the Plan of Reorganization. In fact, the IRS assisted in drafting the provision to be included in Section 3.3 as evidenced by the facsimile from the IRS to Interstate's attorney, dated February 23, 2000. (PF 23.)

Second, as in McCarty and Mangieri, there were sufficient assets available to satisfy the tax liability. The Chapter 11 Final Report filed with the Bankruptcy Court on May 9, 2001 indicated that Interstate had cash available in the amount of $171,993.29, which amount was in excess of the tax liability. (PF 29.)

Third, as in McCarty and Mangieri, the IRS had the means to protect its interests and collect the taxes owed. Section 3.3 of the Plan of Reorganization provided several remedies available to the IRS, including the right to file tax liens, in the event the Reorganized Interstate defaulted on the payments required by Section 3.3.

Fourth, like the taxpayer in McCarty, there was a default in payment pursuant to the agreed upon terms. In this case, the Reorganized Interstate defaulted on making the required payments shortly after the Plan of Reorganization was confirmed, as evidenced by the notice of default from the IRS, dated May 26, 2000. (PF 27.)

Finally, like McCarty, where the IRS failed to foreclose on tax liens, and like Mangieri, where the IRS failed to secure the assignments, the IRS in this case failed to pursue any of the remedies provided in the Plan of Reorganization to protect its interests. Under Section 3.3 of the Plan of Reorganization, the IRS could have filed a tax lien on the assets of the Reorganized Interstate but it did not. (PF 26.) Like the taxpayer in Mangieri, the plaintiffs thought they had taken care of the tax liability only to later be assessed a penalty under Section 6672 after the IRS failed to exercise remedies available to it.

In sum, the plaintiffs are released from liability because (i) they collaborated with the IRS to ensure that payment of the Payroll Taxes was provided for in the Plan of Reorganization, (ii) the Reorganized Interstate had sufficient assets available to satisfy the tax liability; (iii) the IRS had remedies available to it if the Reorganized Interstate, then under the control of Sweepco,

defaulted on the payment of taxes; and (iv) upon default by the Reorganized Interstate and to the detriment of the plaintiffs, the IRS failed to pursue any action that would have protected its interests and allowed it to collect the tax from the Reorganized Interstate.

## CONCLUSION

For the reasons set forth above, plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Summary Judgment.

Date: May 26, 2006

Respectfully submitted,

Theodore Z. Gelt

GELT & GRASSGREEN P.C.
303 East 17th Avenue, Suite 910
Denver, Colorado 80203
Telephone: (303) 830-1200
Facsimile: (303) 830-9400

ATTORNEY FOR PLAINTIFFS