IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DAVID SUNSHINE and
KELLY T. HICKEL,

Plaintiffs

v.

No. 05-773 T (Chief Judge Damich)

UNITED STATES OF AMERICA,

Defendant

APPENDIX TO

PLAINTIFFS' BRIEF IN SUPPORT OF CORRECTED MOTION FOR SUMMARY JUDGMENT

Theodore Z. Gelt
GELT & GRASSGREEN P.C.
303 East 17th Avenue, Suite 910
Denver, Colorado 80203
Telephone: (303) 830-1200
Facsimile: (303) 830-9400

ATTORNEY FOR PLAINTIFFS

# EXHIBIT LIST

Page

A. Fifth Amended Joint Plan of Reorganization, effective March 2, 2000 . . . . 1

B. Letter dated February 17, 2000, whereby Sweepco, LLC ("Sweepco") states to the Internal Revenue Service ("IRS") that the Reorganized Interstate would "pay the trust fund portion of the taxes dues post-petition" . . . . 23

C. Letter delivered to the IRS on February 22, 2000 whereby Sweepco set forth its proposal in full settlement of the Payroll Taxes . . . . 24

D. Facsimile dated February 23, 2000 whereby IRS provided language to be included in the Plan of Reorganization . . . . 26

E. Letter dated February 23, 2000 whereby the IRS stated that it did not object to the provision for its priority claim in the Plan of Reorganization . . . . 29

F. Letter dated February 24, 2000 where Sweepco stated that the "Reorganized Interstate has the obligation to file returns and pay taxes and its default triggers the default provisions" of the Plan of Reorganization . . . . 30

G. Notice of default dated May 26, 2000 issued to Interstate Sweeping Ltd . . . . . 34

H. The Chapter 11 Final Report filed by the Reorganized Interstate on May 9, 2001 . . . . 35

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| INTERSTATE SWEEPING, LTD.<br>EIN: 84-145-8582 | ) | Case No. 99-11500-MSK |
| | ) | |
| | ) | |
| IG SERVICES GROUP, LLC<br>EIN: 84-141-2960 | ) | Case No. 99-11501-MSK |
| | ) | |
| | ) | Jointly Administered Under<br>Case No. 99-11500-MSK |

## FIFTH AMENDED JOINT PLAN OF REORGANIZATION OF INTERSTATE SWEEPING, LTD., IG SERVICES GROUP, LLC AND SWEEPCO, LLC

Interstate Sweeping, Ltd., the Debtor and Debtor-in-Possession in Case No. 99-11500-MSK ("Interstate"), IG Services Group, LLC, the Debtor and Debtor-in-Possession in Case No. 99-11501-MSK ("IG Services Group"), and Sweepco, LLC ("Sweepco") hereby jointly propose the following Joint Plan of Reorganization pursuant to 11 U.S.C. § 1121:

### ARTICLE 1
### DEFINITIONS

As used in this plan of reorganization, the following terms shall have the respective meanings specified as follows:

1.1 Administrative Claim shall mean a claim for a cost or expense of administration of the Bankruptcy Case allowable under § 503(b) of the Bankruptcy Code, including the costs of making distributions and providing notices and ballots regarding the Plan. Administrative Claim shall also mean all quarterly fees payable and assessed against the Debtors under 28 U.S.C. § 1930.

1.2 Allowed, with reference to a Claim, shall mean any Claim against the Debtors, or either of them, proof of which was filed on or before the Bar Date or, if no proof of claim was filed, a Claim that was scheduled by the Debtor pursuant to § 521(1) of the Bankruptcy Code, other than a Claim scheduled as disputed, contingent, or unliquidated; and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period

of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court; or as to which any objection has been interposed, if such Claim has been allowed in whole or in part by a Final Order of the Bankruptcy Court, but only to the extent of such allowance; or as to which a settlement has been reached with or without an objection having been interposed, which settlement has been approved by Final Order. With reference to an Administrative Claim, Allowed shall mean an Administrative Claim that has been approved by Final Order, after notice and hearing, pursuant to § 503(b) of the Bankruptcy Code, of a request for payment of an Administrative Claim filed and approved as contemplated by Section 3.1 hereof; provided, however, that the foregoing shall not apply to an Administrative Claim that has been paid previously or to an Administrative Claim representing a liability incurred in the ordinary course of business, which Administrative Claim shall be deemed to be Allowed unless a dispute exists as to any such liability or unless the provisions of the Bankruptcy Code require approval or allowance by the Bankruptcy Court as a precondition to payment being made on any such liability.

1.3 AMG shall mean Automotive Management Group, Ltd., 425 Broadhollow Rd., Suite 210, Melville, NY 11747.

1.4 Autonet Leasing shall mean Autonet Leasing, 368 Veterans Highway, Commack, NY 11725.

1.5 The Bain Parties shall mean Roy Bain, 10160 Cribari Drive, Yucaipa, CA 92399, and Air Sweep, Inc. f/k/a Interstate Sweeping, Inc.

1.6 Bank of Denver shall mean Bank of Denver, 1534 California Street, Denver, CO 80202.

1.7 Bankruptcy Case shall mean the cases commenced under Chapter 11 of the Bankruptcy Code by the Debtors on the Petition Date.

1.8 Bankruptcy Code shall mean the Bankruptcy Reform Act of 1978, as amended and codified at Title 11 of the United States Code.

1.9 Bankruptcy Court shall mean the United States Bankruptcy Court for the District of Colorado, or such other court having jurisdiction of the Bankruptcy Case or any proceeding relating thereto.

1.10 Bankruptcy Rules shall mean the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Colorado.

1.11 Bar Date shall mean October 18, 1999.

1.12 Cerand Parties shall mean Judith B. Cerand, 1493 Marigold Drive, Lafayette, CO 80025, a shareholder of the Debtor and Sierra Leasing CO. LLC in which Ms. Cerand is a Controlling Member.

1.13 Claim shall have the meaning provided in the Bankruptcy Code, and shall include, without limitation, any right to payment from the Debtors (or either of them), whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, contested, uncontested, legal, equitable, secured or unsecured; and an injunction, specific performance, remediation, or other equitable or non-monetary form of remedy if the circumstances giving rise to such remedy also might give rise to a concurrent or alternative monetary remedy, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, contested, uncontested, secured, or unsecured.

1.14 Community First shall mean Community First National Bank, 501 W. Hampden Ave., Englewood, CO 80110.

1.15 Confirmation Date shall mean the date the Confirmation Order is entered.

1.16 Confirmation Order shall mean the order of the Bankruptcy Court or any other court of competent jurisdiction confirming the Plan under § 1129 of the Bankruptcy Code.

1.17 Contingent Claim shall mean a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payments on which is dependent upon a future event that may or may not occur.

1.18 Creditor shall mean any Person that has a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Debtors (or either of them) of any kind specified in §§ 502(g), (h) or (i) of the Bankruptcy Code.

1.19 Creditor's Committee shall mean the committee of Unsecured Creditors duly appointed under 11 U.S.C. § 1102.

1.20 Debtors shall mean Interstate Sweeping, Ltd. and IG Services Group, LLC in the Bankruptcy Case.

1.21 Debtors' Claims shall mean all claims, causes of action and rights that the Debtor may have pursuant to 11 U.S.C. §§ 544, 545, 547, 548, 549, 550 and 553.

1.22 Deere Credit shall mean John Deere Credit Department 77039, Detroit, MI 48277.

1.23 Disbursing Agent shall mean the individual selected under paragraph 8.3 of this Plan to disburse funds to creditors in Class 15.

1.24 Disputed Claim shall mean a Claim against the Debtors (or either of them) that was scheduled by the Debtor pursuant to § 521(1) of the Bankruptcy Code as disputed, contingent, or unliquidated, and/or a Claim against the Debtors as to which an objection has not been determined by a Final Order.

1.25 Distribution Date shall mean 30 days after the Effective Date.

1.26 Effective Date shall mean the date on which this Plan shall take effect, which date shall be 11 days after the Confirmation Date unless the Order of Confirmation has been timely appealed and a stay of the Confirmation Order has been previously entered by a court of competent jurisdiction.

1.27 Equity Interest shall mean an ownership interest in the Debtors (or either of them).

1.28 Equity Security Holder shall mean the holder of an equity security or interest of the Debtors (or either of them) as such term is defined in 11 U.S.C. § 101(16).

1.29 Estate shall mean the legal entity administering the property of the Debtors immediately prior to the Effective Date.

1.30 Final Order shall mean an order, judgment, ruling or other decree issued and entered by the Bankruptcy Court (as entered on the docket in the Bankruptcy Case), or any state or federal court or other tribunal located in one of the states, territories, or possessions of the United States of America or the District of Columbia, which judgment, order or other decree has not been reversed, stayed, modified or amended, and as to which (i) the time to appeal or seek review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending or has been timely filed, or (ii) any appeal that has been or may be taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

1.31 Finova shall mean Finova Capital Corporation, 115 West Century Road, Paramus, NJ.

1.32 GMAC shall mean GMAC Financial Services, 8055 East Tufts Avenue, Denver, CO 80237.

1.33 Mr. Hickel shall mean Kelly T. Hickel, Chief Executive Officer of Interstate.

1.34 Orix shall mean Orix Credit Alliance, P.O. Box 1680, Pittsburgh, PA 15230.

1.35 Person shall mean any individual, corporation, general partnership, limited partnership, professional corporation, limited liability company, firm, association, joint stock company, joint venture, estate, trust or unincorporated organization, governmental or regulatory body, or any other entity.

1.36 Petition Date shall mean February 11, 1999, the date on which the Debtors commenced the Bankruptcy Cases.

1.37 Plan shall mean this Joint Plan of Reorganization For Interstate Sweeping, Ltd. and IG Services Group, LLC, as it may be modified from time to time.

1.38 Priority Tax Claim shall mean any Allowed Claims filed against the Debtors (or either of them) and described under 11 U.S.C. § 507(a)(8).

1.39 Pro-Rata shall mean proportionately so that the ratio of the amount of a particular claim to the total amount of Allowed Claims of the class in which a particular claim is included is the same as the ratio of the amount of consideration distributed on account of such particular claim to the consideration distributed on account of all Allowed Claims of the class in which the particular claim is included.

1.40 Reorganized Interstate shall mean Interstate Sweeping, Ltd. as reorganized under the Plan.

1.41 RSR shall mean RSR Capital Corporation, 425 Broadhollow Road, Melville, NY 11747.

1.42 Schwarze shall mean Schwarze Industries, 1055 Jordan Road, N.E., Huntsville, AL 35811.

1.43 Secured Claim shall mean an Allowed Claim secured by a duly perfected and otherwise non-avoidable lien, security interest, or other change against property in which a Debtor has an interest, or which is subject to setoff under 11 U.S.C. § 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with 11 U.S.C. § 506(a)) of the interest of the holder of such Secured Claim in the Debtor's interest in such property or to the extent of the amount subject to any setoff, as the case may be.

1.44 Mr. Sunshine shall mean David Sunshine, President of Interstate.

1.45 Sweepco shall mean Sweepco, LLC, a coproponent of the Plan and owner of all of the issued and outstanding capital stock of Reorganized Interstate after the Effective Date.

1.46 Mr. Tharp shall mean Vern Tharp, 12083 W. 84th Pl., Arvada, CO 80005, a shareholder of the Debtor.

1.47 Unsecured Claim shall mean any and all Claims other than Administrative Claims, Deposit Claims, Priority Tax Claims, Subordinated Claims, Secured Claims or Equity Interests.

1.48 Unsecured Creditor shall mean any Creditor that holds an Unsecured Claim.

1.49 Mr. Venable shall mean Michael Venable, 41255 Gebbel Rd., Hemet, CA 92344, former president of Pacific States Corporation.

Unless otherwise specified, all section, article and exhibit references in this Plan are to the respective section in, article of, or exhibit to this Plan, as the same may be amended, waived, or modified from time to time. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, shall have the meaning ascribed to them in the Bankruptcy Code.

## ARTICLE 2
## CLASSIFICATION OF CLAIMS AND INTERESTS

At the time of the formation of Interstate, all of the debts of IG Services Group were assumed and Interstate agreed to pay those debts. All claims, whether asserted against IG Services Group or against Interstate are claims to be included in this Plan. All Allowed Claims and Equity Interests are placed in the following classes pursuant to 11 U.S.C. § 1122.

2.1 Class 1 - Priority Claims. Class 1 shall consist of all Allowed Claims against the Debtors entitled to priority pursuant to Section 507(a)(3), (4) or (6) of the Bankruptcy Code.

2.2 Class 2 - Secured Claims of Automotive Management Group, Ltd.

Class 2 shall consist of the Allowed Secured Claim of AMG secured by the following:

a 1996 Ford Sweeper, VIN No. 1FDXH70C9TVA19756
a 1995 International Sweeper, VIN No. 1HTSCABN35H695631
a 1998 Mack Sweeper, VIN No. VG6M117BWB202503
a 1998 Sterling Sweeper VIN No. 49H6WFAA4VH52215
a 1998 International Sweeper VIN No. 1HTSCABN5WH538255
a 1998 International Sweeper VIN No. IHJSGAAN4WH575988
a 1998 International Sweeper VIN No. 1HTSCABN5W4538253
a 1996 International Sweeper VIN No. 1HTSCABN55H695632
a 1996 International Sweeper VIN No. 1HTSCABN7TH356369
a 1997 Ford Sweeper VIN No. 1FDXH81C7VVA44128
a 1997 Ford Sweeper VIN No. 1FDXH81C8VVA36250
a 1997 Ford Sweeper VIN No. 1FDXH81C9VVA36077
a 1997 Ford Sweeper VIN No. 1FDXH81C2VVA36079
a 1997 GMC Sweeper VIN No. J8DC4B1K9V7008012
a 1998 GMC Sweeper VIN No. J8DC4B1K7W7005773
a 1994 TYMCO Sweeper VIN No. JALB4B1KXR7005718

a 1995 International Sweeper VIN No. 1HTSCABP7SH621775
a 1984 International Tractor VIN No. 1HTLCHXK1EHA22744
a 1996 TYMCO VIN No. 1GBJC34F6TE143350
a 1991 International Sweeper VIN No. 1HTSAZRN8M11348518
a 1990 GMC Service Truck VIN No. 1GDHR34K3KJ508994
a 1993 GMC Sweeper VIN No. J80M7A1UOP3200050
a 1985 Mobil Sweeper VIN No. 1A9C23DR5FR059006
a 1997 GMC Sweeper VIN No. J8DC4B1K5W7006498

2.3 Class 3 shall consist of the Allowed Secured Claim of Finova secured by property of Debtors' Estate.

2.4 Class 4 shall consist of the Allowed Secured Claim of Community First secured by property of Debtors' Estate.

2.5 Class 5 shall consist of the Allowed Secured Claim of GMAC secured by property of Debtors' Estate.

2.6 Class 6 shall consist of the Allowed Secured Claim of Orix secured by property of Debtors' Estate.

2.7 Class 7 shall consist of the Allowed Secured Claim of the Bank of Denver secured by property of Debtors' Estate.

2.8 Class 8 shall consist of the Allowed Secured Claim of Autonet secured by property of Debtors' Estate.

2.9 Class 9 shall consist of the Allowed Secured Claim of Deere Credit secured by property of Debtors' Estate.

2.10 Class 10 shall consist of the Allowed Secured Claim of Michael Miller secured by a 1998 GMC/Schwarze 348 Sweeper.

2.11 Class 11 There is no Class 11 Claim under this Plan.

2.12 Class 12 shall consist of the Allowed Secured Claim of The Colorado Department of Revenue secured by the assets of the Debtor.

2.13 Class 13 shall consist of the Allowed Settlement Claim of the Cerand Parties.

2.14 Class 14 shall consist of the Allowed Secured Claim of Schwarze Industries, Inc., secured by property of the Debtors' estate.

2.15 Class 15 - Unsecured Claims. Class 15 shall consist of all Allowed Claims against the Debtor, however arising, not otherwise included in any other Class hereof, including, without limitation, Allowed Claims based upon the rejection of executory contracts or unexpired leases.

2.16 Class 15a. Class 15a shall consist of the Allowed Settlement Claim of First Financial Services, Ltd.

2.17 Class 15b. Class 15b shall consist of the Allowed Settlement Claim of Vern Tharp.

2.18 Class 16 - Interests. Class 16 shall consist of all Allowed Interests of the Equity Security Holders.

## ARTICLE 3
## TREATMENT OF UNCLASSIFIED CLAIMS

3.1 Administrative Claims. The holders of Allowed Administrative Claims described in 11 U.S.C. § 507(a)(1) will receive on account of such Allowed Claim, cash in an amount equal to such Allowed Claim as soon as practicable following the later of (a) the Effective Date or (b) the date on which an Order of the Bankruptcy Court allowing such claims becomes a Final Order, or cash or deferred cash payments paid in such amounts and on such other terms as may be agreed to by each holder of such an Allowed Claim and the Debtors. Notwithstanding the foregoing, professionals employed at the expense of the Estate or the Debtors and entities who may be entitled to reimbursement or the allowance of fees and expenses from the Estate or the Debtors pursuant to subparagraphs (2) through (6) of 11 U.S.C. § 503(b), shall receive cash in the amount awarded at such times and only in accordance with a Final Order entered pursuant to 11 U.S.C. §§ 330, 331 or 503(b)(2)-(6).

3.2 Priority Tax Claims. Except as provided in Paragraph 3.3, Holders of Allowed Priority Tax Claims against the Debtors (or either of them) described by 11 U.S.C. § 507(a)(8), will receive on account of such Allowed Claims, six deferred equal annual payments from Reorganized Interstate commencing on the annual anniversary of the Effective Date together with interest at the rate of 9% per annum; provided that such Allowed Priority Tax Claim may be prepaid in whole or part at any time without notice, penalty or premium. Notwithstanding this paragraph, the City and County of Denver will be paid $25,000 on the Effective Date in full satisfaction of all of its pre-petition priority or secured tax claims. In addition, the City will be paid $520 in satisfaction of parking tickets outstanding.

3.3 Priority Tax Claim of Internal Revenue Service. The Priority Tax Claim of the Internal Revenue Service (IRS) will be paid $156,032.40 in cash upon the Effective Date in full payment of the pre-petition Priority Tax Claim under Section 507(a)(8) of the Bankruptcy Code. In addition, the IRS will be paid post-petition payroll taxes for the period February 11, 1999 through December 31, 1999 by payment in cash of $159,657 and a balance of $250,000 in equal monthly installments of principal and interest over a six (6) year period with such principal balance

bearing interest at the rate of seven percent (7%) per annum. These payments, when made, will constitute payment in full for payroll tax liability for the period in question. In addition, the Reorganized Debtor will deposit $120,000 upon the effective date with the IRS as a deposit on the payroll taxes for the first quarter of the year 2000. If the foregoing payment is in excess of the amount required for such period, such excess payment shall be applied to the current monthly payment due as described above. If there is an outstanding balance owing for such first quarter of year 2000, the balance shall be paid at the time of filing the appropriate returns for the quarter. The Reorganized Debtor retains the right to verify any missing deposits and apply any such missing deposits to the current monthly payments required to be paid as above. The Reorganized Debtor shall be required to make all returns and payments post confirmation on time as require under appropriate statute or regulation. Should the Reorganized Debtor fail to make any payment hereunder on time or perform as provided herein, they shall be in default under the terms of the Plan. The occurrence of any one of the following shall constitute an event of default under this Plan: (a) The Reorganized Debtor's default in the performance of any term or covenant of this plan and such default shall continue for a period of 30 days after written notice of such default is mailed to the Reorganized Debtor; or (b) The dismissal or conversion of the captioned case to a proceeding under Chapter 7 of the Bankruptcy Code; or if any representation by the Debtors in this plan shall prove to be false or misleading in any material respect; or (d) The Reorganized Debtor's failure to timely file any federal tax returns on their due date, including extensions; or (e) The Reorganized Debtor's failure to timely pay any federal tax on its due date; or (f) the Reorganized Debtor's failure to timely make any and all required federal tax deposits of federal income tax withholding, FICA (Federal Insurance Contributions Act) tax, and FUTA (Federal Unemployment Tax Act) tax; or (g) the Reorganized Debtor's failure to timely make estimated income tax payments in the full amount which may be required of the Reorganized Debtors, if any. Upon the occurrence of an event of default and provided notice has been given and the procedures followed as provided below, the IRS shall have the following rights: (a) The IRS shall have the right to declare due and payable and assess any interest or penalties which would have accrued on the pre-petition federal tax liabilities of the Debtors but for the filing of the bankruptcy petition; (b) the IRS shall have the right to proceed against the Reorganized Debtor or its assets to collect any of the pre-petition or pre-confirmation tax liabilities and related interest and penalties, including interest and penalties through use of the administrative or judicial collection procedures available to the IRS under the Internal Revenue Code as if no bankruptcy petition had been filed. Such procedures shall include but are not limited to the following: (i) the filing of notices of federal tax liens. (c) In its sole discretion, the IRS shall also have the right to seek an order, after notice and a hearing, providing for the immediate conversion of the case to one under Chapter 7 subject to the procedures described above in this Plan. (d) The IRS's failure to act on any default shall not constitute a waive by the IRS of the right to act on such default.

## ARTICLE 4
## DESIGNATION AND TREATMENT OF UNIMPAIRED CLASSES UNDER THE PLAN

4.1 Class 1. All Allowed Class 1 Claims shall be paid in full, in cash, as soon as practical on or after the Effective Date.

4.2 Class 7. The Class 7 Claimant shall retain its lien and be paid in accordance with the terms of its contract.

## ARTICLE 5
## DESIGNATION AND TREATMENT OF IMPAIRED CLASSES UNDER THE PLAN

5.1 Class 2. Class 2 is impaired under the plan. The Holder of the Class 2 claim shall be paid, settled and satisfied by 66 monthly payments. The number of payments hereunder shall be reduced by the number of monthly adequate protection made during the pendency of the Chapter 11 case and before the distribution date. No credit shall be given for the half month adequate protection payment in August 1999. Payments in the amount of $18,000 shall commence on the fifth day of the month immediately following the Distribution Date and continue to be paid monthly until complete. Such payment shall include an imputed annual interest rate of 9.75%. The payments shall not be deemed to include use or sales taxes, if any, due and the Reorganized Interstate shall have the responsibility to pay any such use or sales taxes in addition to the monthly payments to be made hereunder. Reorganized Interstate shall have the privilege of pre-paying the payments herein, without penalty or premium, at any time by discounting the remaining payments to present value using a 9.75% discount rate. The Reorganized Debtor and AMG shall enter into new leases for each piece of equipment reflecting the terms of the Plan. Each lease shall be considered a separate transaction; there shall be no cross-collateralization and no cross-default. Title to each vehicle shall remain in the name of AMG. AMG's respective lender will be the lienholder on the title to each vehicle. The Holder of the Class 2 Claim waives any unsecured claim under this Plan. The Holder of the Class 2 claim shall forbear from proceeding against any co-debtor or guarantor so long as the Reorganized Debtor timely performs its obligations to the Holder of the Class 2 claim. Upon Confirmation of this Plan, AMG shall dismiss, without prejudice, any and all litigation brought by it to enforce obligations of co-obligors or guarantors on any of the equipment hereinafter set forth and shall vacate any judgments entered therein without prejudice. All of the payments hereunder when made shall constitute full satisfaction of the Class 2 claim. If a vehicle is damaged, destroyed or stolen and is covered by insurance, once the insurance proceeds are received, and the balance owing on the lease is paid, the portion of the $18,000 per month payment allocated to that vehicle will cease. The parties will execute new documentation to be drawn with resect to the transactions, said documentation being agreeable to both parties. In the event that the Debtors intentionally and/or maliciously destroy or ruin any of the vehicles, AMG can pursue all of its rights and remedies under the law.

| DESCRIPTION | BACK END DESCRIPTION | VIN NO. | PROPOSED PLAN $18,000.00 |
|---|---|---|---|
| 98 INTL | A6000 S/N 98-A6000-0010 | 1HTSCABN9WH538255 | $828.60 |
| 98 INTERNATIONAL 4700 | A6000 S/N 98-A6000-0006 | 1HTSCABN5WM538253 | $828.60 |
| 95 INTERNATIONAL 4700 | Murphy HDR 4052 S/N 406 | 1HTSCABP7SH621775 | $377.24 |
| 90 GMC 3500 | Tymco 210 | 1GDHR34K3KJ508994 | $146.60 |
| 96 INTERNATIONAL 4700 | A7000 S/N 97-A7000-0004 | 1HTSCABN7TH356369 | $1,183.86 |
| 97 FORD CF8000 | M5000 S/N 98-M5000-003 | 1FDXH81C7VVA44128 | $1,183.86 |
| 91 INTERNATIONAL 4600 | Tymco 600 S/N 84055SNF6 | 1HTSAZRN8MH348518 | $494.20 |
| 85 MOBILE AHL-2 | | 1A9C23DR5FR059006 | $221.11 |
| 96 GMC | Tymco 210 | 1GBJC34F6TE143350 | $360.93 |
| 84 INTERNATIONAL | Murphy | 1HTLCHXK1EHA22744 | $133.47 |
| 98 INTERNATIONAL 4700 | M5000 S/N 98-M5000-0068 | 1HTSCAAN4WH575988 | $1,443.74 |
| 93 GMC W-7 | 93 Aplex 7000 S/N92-E7000 | J8DM7A1UOP3200050 | $271.00 |
| 97 GMC W-4 | A3000 S/N 97-A3000-0079 | J8DC4B1K5W7006498 | $510.96 |
| 97 FORD CF8000 | M5000 S/N 97-M5000-0041 | 1FDXH81C2VVA36077 | $1,183.86 |
| 97 FORD CF8000 | M5000 S/N 97-M5000-0039 | 1FDXH81C9VVA36079 | $1,183.86 |
| 97 FORD CF8000 | M5000 S/N 97-M5000-0044 | 1FDXH81C8VVA36250 | $1,183.86 |
| 98 GMC W4 | A3000 S/N 98-A3000-0018 | J8DC4B1KW7005773 | $604.80 |
| 97 GMC W-4 | A3000 S/N 97-A3000-0082 | J8DC4B1K9V7008012 | $510.96 |
| 96 FORD Sweeper | M5000 | 1FDXH70C9TVA19756 | $977.30 |
| 95 INTERNATIONAL | A6000 S/N 96-A6000-0037 | 1HTSCABN3SH695631 | $666.34 |

| | | | |
|---|---|---|---|
| 98 MACK Midliner | M5000 S/N 98-M5000-00601 | VG6M117B9WB202503 | $1,224.08 |
| 99 STERLING SC8000 | M5000 S/N 98-M5000-126 | 49H6WFAA4XHA52215 | $1,432.63 |
| 95 INTERNATIONAL | A6000 S/N 96-A6000-0057 | 1HTSCABN5SH695632 | $839.59 |
| 1994 ISUZU | Tymco 210 S/N 9011SNE29 | JALB4B1KXR7005718 | $208.55 |
| | | | ---------------- |
| | | | $18,000.00 |
| | | | |

5.2 Class 3. Class 3 (Finova) is impaired under the Plan. The Class 3 Claim shall be treated as follows:

(a) The Allowed Secured Claim of the Class 3 Holder shall be paid, settled and satisfied by 72 monthly payments, the first six in the amount of $10,675.00, the second six in the amount of $12,675.00; fifty-nine in the amount of $11,675.00 and the 72nd in the amount of $101,675.00. The payments shall include an imputed interest rate of 9.5% per annum. The first monthly payment shall be due on the first day of the month beginning not less than 30 days after the Effective Date. The Reorganized Debtor shall have the right without penalty to prepay the obligation of this Claim by paying the present value of the remaining payments discounted by the imputed interest rate. The Class 3 Claimant shall retain its security interest in the collateral as it exists on the Effective Date. The Holder of the Class 3 Claim has agreed to forbear from proceeding against any Claim it may have against Messrs. Sunshine, Hickel, Cerand, Tharp or Sierra Leasing Corp. as co-obligors with respect to the Class 3 Claim so long as the Reorganized Debtor timely performs its obligations to the Holder of the Class 3 Claim. Additionally, the Holder of the Class 3 Claim has agreed to release and waive any right it might have to assert a deficiency Claim (pursuant to 11 U.S.C. § 506(a)) under Class 15 of the Plan.

5.3 Class 4. Class 4 (Community First) is impaired under the Plan. The Class 4 Claim shall be treated as follows:

(a) The Allowed Secured Claim of the Class 4 Holder shall be paid, settled and satisfied taking into account paragraph 5.18 herein by an initial payment of $60,000 upon the Effective Date plus 60 monthly payments in the amount of $8,000.00 per month, with the first payment due on the first day of the month beginning not less than 30 days after the Effective Date. The Reorganized Debtor shall have the right to prepay the obligations of this Claim by paying the present value of the remaining payments discounted by the imputed interest rate of 9.5% per annum. The Class 4 Holder shall retain its security interest in its collateral as it exists on the Effective Date. The Holder of the Class 4 Claim has agreed to forbear from proceeding against any claim it may have against Sunshine (for amounts to be paid under the Plan), Hickel

(for amounts to be paid under the Plan), the Cerand Parties and Tharp as co-obligors with respect to the Class 4 Claim so long as the Reorganized Debtor timely performs its obligations under the Plan. The Holder of the Class 4 Claim has further agreed that when it receives the initial payment of $60,000.00 on the Effective Date under the Plan that it will release Tharp and the Cerand Parties from any and all claims in exchange for acceptable releases from each of those parties. Additionally, the Holder of the Class 4 Claim has agreed to release and waive any right it might have to assert a deficiency Claim (pursuant to 11 U.S.C. § 506(a)) under Class 15 of the Plan.

5.4 Class 5. Class 5 (GMAC) is impaired under the Plan. The Class 5 Claims will be paid as follows:

(a) The Allowed Secured Claim of the Class 5 Holder shall be paid, settled and satisfied by 60 monthly payments in the amount of $942.12 per month with the first payment due on the first day of the month beginning not less than 30 days after the Effective Date. The Promissory Note shall have an imputed interest rate of 9.5% per annum and may be prepaid at any time without penalty and shall be secured by a 1998 Model 1500 EXT GMC Truck/4x4/Plow SB and a 1998 Model 1500 GMC Truck/4x4/Plow CS. Additionally, the Holder of the Class 5 Claim has agreed to release and waive any right it might have to assert a deficiency Claim (pursuant to 11 U.S.C. § 506(a)) under Class 15 of the Plan.

5.5 Class 6. Class 6 (Orix) is impaired under the Plan. The Class 6 Claim will be paid as follows:

(a) The Allowed Secured Claim of the Class 6 Holder shall be paid, settled and satisfied by 42 monthly payments in the amount of $1,250.00 per month with the first payment due on the first day of the month beginning not less than 30 days after the Effective Date. The Promissory Note shall have an imputed interest rate of 9.5% per annum and may be prepaid at any time without penalty and shall be secured by a first lien on a 1993 Model 4052 GMC 4052/ Murphy Sweeper. Additionally, the Holder of the Class 6 Claim has agreed to release and waive any right it might have to assert a deficiency Claim (pursuant to 11 U.S.C. § 506(a)) under Class 15 of the Plan.

5.6 Class 7. Class 7 (Bank of Denver) is not impaired under the Plan. The Class 7 claimant will be paid according to its contract and will retain its lien in a Chevrolet Tahoe which secures its Claim.

5.7 Class 8. Class 8 (Autonet) is impaired under the Plan. The Class 8 Claim will be paid as follows:

(a) The Allowed Secured Claim of the Class 8 Holder shall be paid, settled and satisfied by 42 monthly payments of $459.64 per month with the first payment due on the first day of the month beginning not less than 30 days after the Effective Date. The Promissory Note shall have an imputed interest rate of 9.5% per annum and may be prepaid at any time without penalty and shall be secured by a first lien on a 1998 Model S-348-1 GMC/W-4/VAC/Schwarze.

Additionally, the Holder of the Class 8 Claim has agreed to release and waive any right it might have to assert a deficiency Claim (pursuant to 11 U.S.C. § 506(a)) under Class 15 of the Plan.

5.8 Class 9. Class 9 (Deere Credit) is impaired under the Plan. The Class 9 Claim will be paid as follows:

(a) The Allowed Secured Claim of the Class 9 Holder shall be paid, settled and satisfied by 42 monthly payments of $346.50 per month with the first payment due on the first day of the month beginning not less than 30 days after the Effective Date. The Promissory Note shall be secured by a first lien on a 1995 Utility Tractor-Trailer, may be prepaid at any time without penalty and shall have an imputed interest rate of 9.5% per annum. Additionally, the Holder of the Class 9 Claim has agreed to release and waive any right it might have to assert a deficiency Claim (pursuant to 11 U.S.C. § 506(a)) under Class 15 of the Plan.

5.9 Class 10. Class 10 (Michael Miller) is impaired under the Plan. The Class 10 Claim will be paid as follows:

(a) The Allowed Secured Claim of the holder of the Class 10 Claim shall be paid $15,000 upon the Effective Date and 12 equal monthly installments of $1,000.00 which includes interest at the rate of 9% per annum and which fully amortizes the $27,000 Claim. The holder shall retain his lien upon the 1998 GMC/Schwarze Sweeper until payment in full under this paragraph at which time the holder of the Class 10 Claim shall deliver title free of liens to Reorganized Interstate.

5.10 Class 11. There is no Class 11 Claim to be paid under the Plan.

5.11 Class 12. Class 12 (The Colorado Department of Revenue) is impaired under the Plan. The Class 12 Claim shall be paid as follows:

(a) The Allowed Secured Claim of the holder of the Class 12 Claim shall be paid, settled and discharged by six equal annual installments commencing on the first annual anniversary of the Effective Date including interest at 9% per annum; provided that such Allowed Secured Claim may be prepaid in whole or part at any time without notice, penalty or premium. The Holder of the Class 12 Claim shall retain its lien until the claim is paid.

5.12 Class 13. (the Cerand Parties) is impaired under the Plan. The Class 13 Claim shall be paid as follows:

(a) The Allowed Settlement Claims of the holder of the Claim 13 Claim shall be paid $25,000 upon the Effective Date in full satisfaction of all monetary Claims and by performance of other obligations set forth in the Settlement Agreement among the Debtor, Cerand, Sierra Leasing LLC, Sunshine and Hickel.

5.13 Class 14. (Schwarze Industries) is not impaired under the Plan. The Class 14 Claim consists of equipment parts on consignment and shall be paid in accordance with the

agreement of the parties. Payment for any parts which have been used during the pendency of the Chapter 11 proceeding shall be treated under Article 3.1 of this Plan.

5.14 Class 15. Class 15 (Unsecured Creditors) is impaired under the Plan. Holders of Class 15 Allowed Unsecured Claims shall receive from the Disbursing Agent established pursuant to Section 8.3 hereof their pro-rata share of $175,000.00 as soon as practical on or after the Effective Date. With respect to any Class 15 Unsecured Claim that is not an Allowed Unsecured Claim as of the Effective Date, payment thereof shall be made no later than 20 days after such Claim is Allowed by Final Order in an amount determined pursuant to Article 8.4.

5.15 Class 15a. Class 15a (First Financial Settlement Class) is impaired under the Plan. The Class 15a Claim shall be paid as follows:

(a) The Allowed Unsecured Claim of the Class 15a Claim shall be paid $40,000 cash upon the Effective Date and $2,083.33 monthly payments commencing one month after the Effective Date and continuing for a total of twenty-four (24) months.

5.16 Class 15b. Class 15b (Vern Tharp Settlement Class) is impaired under the Plan. The Class 15b Claim shall be paid as follows:

(a) The Allowed Unsecured Claim of the Class 15b Claim in the amount of $13,573.33 and his $4,300 priority claim shall be paid pursuant to Class 15. Additionally, Mr. Tharp shall be paid adequate protection payments of $349.45 per month for 12 consecutive months commencing the first day of the month following the Effective Date.

5.17 Class 16. Class 16 (Equity Interests) is impaired under the Plan. Equity Security Holders shall not receive or retain anything through or under the Plan. The Equity Interests of the Equity Security Holders shall be canceled upon the Effective Date of the Plan.

5.18 Effect of Adequate Protection Payments. With respect to any adequate protection payments made to Holders of Secured Claims since the Petition Date and prior to the Effective Date, all such payments shall be deemed to have been made pursuant to the treatment under the Plan or any promissory note held by or issued to the Holder of such Secured Claims and shall be credited against the amount due under the Plan, with several exceptions. The first exception is with respect to the Class 2 claims where the amount of the adequate protection paid equals six months payments during the bankruptcy proceedings together with such payments made between confirmation and the distribution date which shall reduce the 66 payments to be made to Class 2. The second exception applies to the Holder of the Class 3 Claim to which this paragraph does not apply. The third exception applies to the Holder of the Class 4 Claim: $30,000.00 paid as adequate protection to that Holder will be credited against the initial $60,000.00 payment on that Claim when the remaining $30,000.00 is paid in cash to that Holder on the Effective Date. Any additional adequate protection which has been paid to that Holder prior to the Effective Date shall reduce the first monthly payments to be paid to that Holder under the Plan.

## ARTICLE 6
## ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS

6.1 Classes Entitled to Vote. Each impaired Class of Claims shall be entitled to vote separately to accept or reject this Plan. Any unimpaired Class of Claims shall not be entitled to vote to accept or reject this Plan.

6.2 Class Acceptance Requirement. A Class of Claims shall have accepted this Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (½) in number of the Allowed Claims of such Class that have voted on this Plan.

6.3 Deemed Acceptance and Rejection. Classes 1, 7 and 13 are deemed to have accepted this Plan pursuant to 11 U.S.C. § 1126(f). Class 16 is deemed to have rejected the Plan pursuant to 11 U.S.C. § 1126(g).

6.4 Cramdown. Notwithstanding the rejection of this Plan by any Class of Claims, the Proponents shall request that the Bankruptcy Court confirm this Plan in accordance with 11 U.S.C. § 1129(b). In the event that the Bankruptcy Court declines to impose a "cram-down" on a non-accepting Class unless certain modifications are made to the terms and conditions of such Class's treatment under the Plan, the Proponents reserve the right, without re-solicitation to the extent permitted by the Bankruptcy Code, to propose any such modifications and to confirm the Plan as modified by the required modifications.

## ARTICLE 7
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1 Assumed if Not Rejected. All contracts and leases of the Debtor that constituted executory contracts or unexpired leases as of the Petition Date that have not otherwise been assumed pursuant to 11 U.S.C. § 365, shall be assumed as of the Effective Date except the following are rejected:

(a) any unexpired leases with Sierra Leasing Co. LLC which, pursuant to the Settlement between the parties, are canceled and the goods transferred to the Reorganized Interstate.

(b) all agreements, convertible or exchangeable securities, options, warrants, calls or other rights, if any, by which the Debtors (or either of them) would be bound to issue, sell, exchange or otherwise dispose of, or to purchase, redeem or otherwise acquire, shares or securities convertible into or exchangeable for the common stock of the Debtor, and

(c) all agreements, if any, related to employee compensation, fringe benefits, bonuses, deferred compensation, severance pay, stock options, hospitalization, insurance, salary continuation, or the like.

7.2 Executory Agreements with the Bain Parties. The Consulting Agreement with the Bain Parties is terminated and the Covenant Not to Compete with the Bain Parties is modified and, as modified, assumed. The Covenant will be extended for 48 months after the Effective Date. The Bain Parties will be paid $1,000.00 per month for 46 months and $2,000.00 per month for months 47 and 48 of the total 48-month Covenant.

7.3 Disputes as to Executory/Unexpired Status. Notwithstanding Section 7.1 of this Plan, if on the Effective Date there is a pending dispute as to whether a contract is executory or a lease is unexpired, the Debtor's right to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired.

7.4 Expired Contracts or Leases. Any contract or lease that expired pursuant to its terms prior to the Effective Date, and that was not assumed or rejected by Final Order prior to its expiration, is hereby specifically rejected.

7.5 Bar to Rejection Damages. If the rejection of an executory contract or unexpired lease results in damages to the other party or parties to such contracts or leases, a claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtor and the Unsecured Creditors' Committee as follows: (i) if the Claim arises from the rejection of an executory contract or unexpired lease by operation of any provision of this Plan, twenty (20) days after the Confirmation Date; (ii) if the Claim arises out of the rejection of an executory contract or unexpired lease pursuant to a Final Order of the Bankruptcy Court (other than the Confirmation Order) authorizing rejection of such contract or lease, thirty (30) days after service of notice of the entry of such Final Order. The foregoing applies only to Claims arising from the rejection of an executory contract or unexpired lease; any other Claims held by a party to a rejected contract or lease shall be barred and unenforceable unless evidenced by a proof filed by earlier applicable bar dates.

7.6 Claims Arising From Assumption or Rejection.

(a) All Allowed Claims arising from the assumption of an executory contract or unexpired lease (including an executory contract or unexpired lease deemed to be assumed by any other provision hereof) shall be treated as Administrative Claims pursuant to Section 3.1 except the claim of the Cerand Parties which is subsumed in the payment made under paragraph 5.30 hereof. All Allowed Claims arising from the rejection of an executory contract or unexpired lease shall be treated as Unsecured Claims pursuant to Section 5.10 unless otherwise ordered by Final Order of the Bankruptcy Court.

(b) Any creditor whose executory contract or unexpired lease is assumed under this Plan shall serve written demand upon counsel for the Debtors, the Creditors' Committee and Sweepco for any amounts necessary to cure any defaults under the contract or lease within fifteen (15) days after the Confirmation Date. If the Debtors object in writing within thirty (30) days thereafter, the Bankruptcy Court, by issuance of a Final Order, shall determine any amount due and owing or shall approve settlement.

(c) Reorganized Interstate shall pay all amounts necessary to cure any defaults under any executory contract or unexpired lease to the extent determined by a Final Order.

## ARTICLE 8
## MEANS FOR IMPLEMENTATION OF THE PLAN

8.1 Transfer to Sweepco.

(a) As of the Effective Date, Sweepco shall pay to the Reorganized Debtor a sum of money sufficient to pay all Effective Date distributions provided under the Plan and the Order of Confirmation together with $300,000 for additional working capital for the Reorganized Debtor. On or before the hearing upon Confirmation of this Plan, Sweepco shall deliver such sums in cash to the Sweepco's Counsel, which shall be deposited into an interest-bearing account. Such cash shall not be removed or otherwise disbursed unless the Order of Confirmation does not become final and the Plan does not become effective. In the event that the Court fails to confirm the Plan issuing its Order of Confirmation, such cash may be returned to Sweepco. Such cash shall not become an asset of the bankruptcy estate unless and until the Plan becomes effective. Any and all interest earned on such funds shall remain the property of Sweepco.

(b) Upon the Effective Date of the Plan, all issued and outstanding Equity Interests in the Debtors shall be canceled and the Reorganized Interstate shall be authorized to issue 120,000 shares of new common stock to Sweepco. The new common stock shall be entitled to vote, have a par value of $0.01 and shall constitute the only authorized, issued and outstanding Equity Interest in the Reorganized Interstate.

(c) Distributions made under the Plan by the Disbursing Agent or otherwise hereunder shall be in exchange for and in complete satisfaction and release of all Claims of any nature whatsoever against the Debtor, its assets or the Reorganized Interstate or its assets.

8.2 Dissolution of IG Services Group, LLC. On the Effective Date of the Plan, IG Services Group shall be dissolved and a copy of the Order of Confirmation shall be conclusive evidence of the dissolution.

8.3 Disbursements to the Holders of Allowed Unsecured Claims.

(a) As of the Effective Date, Sweepco shall pay to the Disbursing Agent the amount specified in Section 5.31 hereof, which amount (less a $5,000 reserve for payment to the Disbursing Agent) shall be disbursed on the Distribution Date or as soon as practicable but no later than ten days from the Distribution Date. The Disbursing Agent shall be an individual with a financial and accounting background and shall be selected by the Unsecured Creditors Committee and the Reorganized Interstate. The costs and fees of the Disbursing Agent as well as the costs of resolving any Class 15 Claims shall be born by the fund.

(b) The Disbursing Agent will make distributions to Holders of Allowed Claims in Class 15 at the addresses set forth on the proofs of claim filed by such Holders or to the last known addresses of such Holders. If any Holder's distribution is returned as undeliverable, no further distribution to such Holder will be made unless and until the Disbursing Agent is notified of such Holder's then-current address, at which time all missed distributions will be made to such Holder without interest. All claims for undeliverable distributions must be made on or before the second anniversary date of the Distribution Date. After such date, all unclaimed distributions will be distributed to Holders of Allowed Claims in Class 15. Ninety days after the final distribution made by the Disbursing Agent, the Disbursing Agent shall stop payment on any check remaining unpaid, and thereafter any remaining property of the estate shall be paid into the Court and disposed of under chapter 129 of title 28, U.S.C. Requests for reissuance of any check must be made to the Disbursing Agent by the Holder of the Allowed Claim with respect to which the check was originally issued. Any such Holder may contact the Disbursing Agent through counsel for the Debtor if the identity or address of the Disbursing Agent is not otherwise known to such Holder.

8.4 Payments to Holders of Contingent and Disputed Claims.

(a) The Debtors (or any other interested party) may object to any Claim by filing an objection with the Bankruptcy Court and serving the objection upon the Debtors and the Holders of each of the Claims to which objections are made. Debtors filed all of its objections before November 12, 1999. Any other party in interest shall file any objections not later than 10 days prior to the date fixed for confirmation of the Plan. If no objection is filed by the applicable deadline to any Claim that is otherwise allowable, the Claim will be treated as an Allowed Claim. If an objection is filed to a Claim, no distribution will be made with respect to the Claim unless and until all objections to the Claim have been determined by Final Order. A Contingent Claim will be treated in the same manner; no payment or distribution will be made on a Contingent Claim until the contingency occurs and the Claim becomes fixed and absolute. The Debtors may litigate to judgment, settle or withdraw objections to Claims.

(b) To the extent a Disputed Claim is unliquidated at the time of distribution, Reorganized Interstate, the Unsecured Creditors Committee or the Creditor may request that the Court estimate the claim pursuant to 11 U.S.C. § 502(c).

(c) Contingent and Disputed Claims shall be paid by Sweepco in an amount equal to each such Claim multiplied by a fraction with the numerator equal to $175,000 and the denominator equal to the total Allowed Unsecured Claims as of November 12, 1999, to the extent each such Claim is allowed by a Final Order determining such Claim. Payment shall be made by the later of the Distribution Date or twenty days after the Final Order allowing such Claim.

8.5 Payment to United States Trustee. The reorganized debtor shall comply with 28 U.S.C. § 1930(a)(6) and the United States Trustee's Operating Guidelines and Reporting Requirements making the required quarterly payment of fees to the Office of the United States Trustee and filing the appropriate reports.

## ARTICLE 9
## MISCELLANEOUS

9.1 Documents and Agreements. All parties bound by this Plan shall execute all documents, releases, assignments or other agreements necessary to implement the Plan. If any necessary party refuses or fails to execute, deliver or to join in the execution or delivery of any instrument required to effect a transfer or property dealt with by the Plan or perform any other act, including the satisfaction of a lien, necessary for consummation of the Plan, the Court may order the same or order the Clerk of the Court to so execute the document, release or other agreement.

9.2 Charter Amendments. To the extent necessary, the Articles of Incorporation of the Reorganized Interstate shall be amended in compliance with 11 U.S.C. § 1123(a)(6).

9.3 Discharge and Continuation of Automatic Stay.

(a) Upon confirmation of the Plan, Interstate (which for purposes of this section shall include both the Debtor and the Reorganized Interstate) shall receive a discharge pursuant to Section 1141 of the Bankruptcy Code. IG Services Group shall be dissolved upon confirmation of the Plan and, pursuant to 11 U.S.C. § 1141(d)(3) does not receive a discharge, although all of the claims against IG Services Group are treated by the Plan as claims against Interstate and except as provided for under this Plan, are discharged as claims against Interstate. The discharge shall be effective whether or not a Proof of Claim is filed under § 501 of the Bankruptcy Code, such claim is allowed under § 502 of the Bankruptcy Code, or whether such debt is listed on the Debtor's Schedules and Lists filed herein. Provided that the Debtors have given formal notice, the Discharge shall also be effective against all claimants regardless of whether or not they received notice of this reorganization proceeding.

9.4 Revestment of Property. Upon confirmation of the Plan, the Reorganized Interstate shall be revested with all property not otherwise disposed of pursuant to the Plan. Thereafter, the Reorganized Interstate shall be entitled to conduct its business and dispose of its assets outside the jurisdiction of the Court and without further Order of the Court.

9.5 Headings. The headings used in the Plan are solely for the convenience of the reader and do not in any way limit, expand or modify the provisions of the Plan to which they refer.

## ARTICLE 10
## CONSUMMATION OF THE PLAN

10.1 Retention of Jurisdiction. After the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over the Bankruptcy Case for the following purposes:

(a) To determine any and all objections to the allowance of Claims;

(b) To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or this Plan;

(c) To determine any applications for the rejection or assumption of executory contracts or unexpired leases or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtor is a party, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

(d) To determine any and all applications, adversary proceedings, and contested or litigated matters that may be pending on the Effective Date;

(e) To consider any modifications of this Plan, and remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code;

(f) To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, or consummation of this Plan or any Person's obligations thereunder;

(g) To hear and determine any claim or cause of action against the Debtor, and to consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor;

(h) To issue such orders in aid of execution of this Plan to the extent authorized by 11 U.S.C. § 1142;

(i) To hear and determine all disputes regarding title to the assets of the Estate, including title to the Transferred Assets;

(j) To enforce and interpret the terms and conditions of this Plan; and

(k) To enter an order concluding and terminating the Bankruptcy Case.

10.2 Modification of the Plan. Modifications of this Plan may be proposed in writing at any time before confirmation, provided that this Plan, as modified, meets the requirements of 11 U.S.C. §§ 1122 and 1123, and that the Debtor has complied with 11 U.S.C. § 1125. This Plan may be modified at anytime after confirmation and before its substantial consummation, provided that the Plan, as modified, meets the requirements of 11 U.S.C. §§ 1122 and 1123 and the Bankruptcy Court, after notice and a hearing, confirms this Plan, as modified, pursuant to 11 U.S.C. § 1129, and the circumstances warrant such modification.

10.3 Severability. Wherever possible, each provision of this Plan shall be interpreted in such a matter as to be effective and valid under applicable law, but if any provision of this Plan

shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this plan. Furthermore, if the Bankruptcy Court will not confirm this Plan because one or more provisions hereof are determined to be prohibited or invalid under applicable law, the Debtor and Sweepco may seek permission of the Bankruptcy Court to amend this Plan by deleting the offending provision.

10.4 Revocation of the Plan. Debtors and Sweepco reserve the right to revoke and/or withdraw this Plan prior to entry of the Confirmation Order. If the Debtors and Sweepco revokes and/or withdraws this Plan, or if confirmation of this Plan does not occur, then this Plan shall be deemed null and void.

10.5 Plan Proposed in Good Faith. Confirmation of this Plan shall constitute a finding that this Plan was proposed and that votes therefor were solicited in good faith. Neither the Debtor nor Sweepco, nor any officer, director, partner, member or shareholder thereof, shall have any liability to any person in connection with preparing, disseminating, soliciting votes for, or confirming this Plan.

Respectfully submitted this 2nd day of ~~February~~ March, 2000.

DAVIS, GRAHAM & STUBBS LLP

Glen E. Keller, Jr., No. 3113
Christopher L. Richardson, No. 13437
P.O. Box 185
370 - 17th Street, #4700
Denver, CO 80201-0185
Tel: 303-892-9400
Fax: 303- 893-1379

ATTORNEYS FOR
INTERSTATE SWEEPING, LTD. and
IG SERVICES GROUP LLC

CHRON

BROBECK PHLEGER & HARRISON LLP
ATTORNEYS AT LAW

550 WEST C STREET
SUITE 1300
SAN DIEGO
CA 92101-3532
www.brobeck.com

TELEPHONE: (619) 234-1966
FACSIMILE: (619) 234-3848 (12TH FLOOR)
WRITER'S DIRECT DIAL: (619) 699-0215
EMAIL: tgraham@brobeck.com

February 17, 2000

**Via Facsimile**

Ms. Patricia Taylor
Acting Chief in Solvency II
Internal Revenue Service
600 17th Street
Denver, CO 80202
Mail Stop 5012 DEN

Dear Ms. Taylor:

This firm represents Sweepco LLC who is a co-proponent of the Plan of Reorganization for Interstate Sweeping, Ltd. I am writing this letter at the request of Jim Hill, the principal of Sweepco LLC.

I am authorized to advise you that the Reorganized Debtor pursuant to the Plan of Reorganization will pay the trust fund portion of the taxes due post-petition which are approximately $400,000, payment to be over 4 years with interest at 7%.

It is extremely important that we have confirmation from the Internal Revenue Service to this arrangement. Without such confirmation being received before February 23, 2000, we do not believe the Plan of Reorganization will be confirmed and the proceeding may be converted to Chapter 7. Given that the estate of Interstate Sweeping, Ltd. is administratively insolvent, there will be no funds available to pay the Internal Revenue Service if the case is converted.

Your attention to this is most appreciated.

Very truly yours,

Theodore W. Graham

TWG:jbo

OTTEN, JOHNSON, ROBINSON, NEFF & RAGONETTI, P.C.
ATTORNEYS AND COUNSELORS AT LAW

950 SEVENTEENTH STREET
SUITE 1600
DENVER, COLORADO 80202

TELEPHONE 303-825-8400
FAX 303-825-6525

NEIL M. GOFF
DIRECT DIAL (303) 575-7515
NMGOFF@OJRNR.COM

February 22, 2000

**BY MESSENGER**

Ms. Patricia Taylor
Acting Chief - Insolvency II
Internal Revenue Service
600 - 17th Street, 3rd Floor
Mail Stop 5012 DEN
Denver, Colorado 80202

Re: In re Interstate Sweeping, Ltd.; EID No. 84-145-8542 and IG Services Group, LLC; EID No. 84-141-2960; In the United States Bankruptcy Court for the District of Colorado; Case No. 99-11500-MSK; Case No. 99-11501-MSK, respectively; jointly administered under Case No. 99-11500-MSK

Dear Ms. Taylor:

Thank you for meeting with us on February 22, 2000 regarding the outstanding payroll taxes associated with the above bankruptcy and our attempt to confirm a joint plan of reorganization with respect thereto. This letter is being submitted on behalf of Sweepco, LLC, the co-proponent of the plan who will become the reorganized debtor after confirmation. With respect to the outstanding pre- and post-petition payroll taxes, we propose the following in full settlement of all outstanding claims by the Internal Revenue Service for such payroll tax periods as follows:

1. Payment in full will be made to the Internal Revenue Service in the amount of a cash payment of $156,032.40 in full payment of all pre-petition priority payroll taxes under Section 507(a)(8) of the Bankruptcy Code.

2. At our meeting on February 22, 2000, you calculated trust fund taxes for the quarterly periods ended June 30, 1999, September 30, 1999 and December 31, 1999 equal to $409,657. Upon confirmation of the plan, we propose to pay you in cash, the sum of $159,657 with the remaining balance of $250,000 being payable in monthly installments of principal and interest over a six (6) year period with such principal balance bearing interest at the rate of seven percent (7%) per annum. In addition, the taxpayers will be required to maintain current filings of all applicable payroll tax returns.

Ms. Patricia Taylor
February 22, 2000
Page 2

3. With respect to the first payroll tax quarter for the year 2000, we will agree to deposit $120,000 in cash as an estimated payment of all trust fund payroll taxes for such quarter. If the foregoing payment is in excess of the amount required for such period, such excess payment shall be applied to the current monthly payment due as described in paragraph 2 hereof. If there is an outstanding balance owing for such first quarter of year 2000, the balance shall be added to the amount payable over six (6) years as described in paragraph 2 hereof.

4. The taxpayer retains the right to verify any missing deposits and apply any such missing deposits to the current monthly payments required to be paid under paragraph 2 hereof.

5. The foregoing settlement is a complete settlement of all claims for payroll taxes payable to the Internal Revenue Service for such periods including, but not limited to, a release of all liability for the 100% penalty assessable against any responsible officer or person of the taxpayers'.

Based upon the proposed settlement, the co-proponent will be making an up-front cash payment (in addition to investments made to date) of $435,689. As you know, we are attempting to defer the confirmation hearing until the afternoon of February 23, 2000. Anything you can do to expedite consideration of this proposal would be greatly appreciated.

We look forward to settling this matter favorably for the benefit of the Government and for the taxpayer, so that the remaining taxes are paid to the Government in accordance with the installment agreement and the taxpayers remain viable and continuing employers of their employees.

Very truly yours,

Neil M. Goff
for
OTTEN, JOHNSON, ROBINSON,
NEFF & RAGONETTI, P.C.

NMG/djb
cc: Glen Keller, Esq.
Mr. James Hill

455255.1

2000 FEB 22 P 3: 24

ROCKY MOUNTAIN DISTRICT
RMD
INTERNAL REVENUE SERVICE

# FAX COVER SHEET

Rocky Mountain District Headquarters Office, 600 17th Street, Denver, CO 80202-2490

Special Procedures Phone: (303) 446-1420 Fax: (303) 446-1422

**Date:** 2/23/00 **No. Of Pages** 3

**To:** Glen Keller

**Division:** Davis, Graham & Stubbs LLP
**City:**
**Fax #:** (303) 893-1379
**Telephone:**

**From:** Pat Taylor

**Division:** Coll - SPB
**City:** Denver
**Telephone:** 303-446-1453

**Comments:**

sample default language

The information contained in this telecopy message is confidential information intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone, and return the original message to us at the above address via the U.S.

Internal Revenue Service

In the event the Debtors fails to make payments to the ~~Class 8 creditor~~ or perform as provided herein, they shall be in default under the terms of this Plan. The occurrence of any one of the following shall constitute an event of default under this Plan:

(a) The Debtors' default in the performance of any term or covenant of this Plan and such default shall continue for a period of 30 days after written notice of such default is mailed to the Debtors; the Debtors' attorney; ~~Mountain States Bank, P.O. Box 18248, 1635 East Colfax Avenue, Denver, CO 80218, Attn: Mr. Glen Pray; and counsel for Mountain States Bank, Moye Giles O'Keefe Vermeire & Gorrell, 1225 17th Street, 29th Floor, Denver, CO 80202-5529; by the IRS; or~~

change as appropriate

(b) The dismissal or conversion of the captioned case to a proceeding under Chapter 7 of the Bankruptcy Code; or

(c) If any representation by the Debtors in this Plan shall prove to be false or misleading in any material respect; or

(d) The Debtors' failure to timely file any federal tax returns on their due date, including extensions; or

(e) The Debtors' failure to timely pay any federal tax on its due date; or

(f) The Debtors' failure to timely make any and all required federal tax deposits of federal income tax withholding, FICA (Federal Insurance Contributions Act) tax, and FUTA (Federal Unemployment Tax Act) tax; or

(g) The Debtors' failure to timely make estimated income tax payments in the full amount which may be required of the Debtors, if any.

Upon the occurrence of an event of default and provided notice has been given and the procedures followed as provided below, the IRS shall have the following rights:

(a) The IRS shall have the right to declare due and payable and assess any interest or penalties which would have accrued on the pre-petition federal tax liabilities of the Debtors but for the filing of the bankruptcy petition;

(b) The IRS shall have the right to proceed against the Debtors or their assets to collect any of the pre-petition or pre-confirmation tax liabilities and related interest and penalties, including interest and penalties through use of the administrative or judicial collection procedures available to the IRS under the Internal Revenue Code as if no bankruptcy petition had been filed. Such procedures shall include, but are not limited to the following:

(i) the filing of notices of federal tax liens.

(c) At its sole option, the IRS shall also have the right to an order providing for the immediate conversion of the case to one under Chapter 7 subject to the procedures described above in this Plan.

(d) The IRS's failure to act on any default shall not constitute a waiver by the IRS of the right to act on such default.

Internal Revenue Service

Department of the Treasury
600 17th Street,
Denver, Colorado 80202-2490

February 23, 2000

Mr. Glen E. Keller, Jr.
Davis, Graham & Stubbs LLP
Attorneys at Law
Suite 4700
370 17th Street
Denver, CO 80202

Re: In re Interstate Sweeping, Ltd.; EIN No. 84-1458542 and IG Services, Group LLC; EIN No. 84-1412960; In the United States Bankruptcy Court for the District of Colorado; Case No. 99-11500-MSK; Case No. 99-11501-MSK, respectively; jointly administered under Case No. 99-11500-MSK

---

Dear Mr. Keller,

This will confirm that the Internal Revenue Service does not object to the provision for its priority tax claim in the FIFTH AMENDED JOINT PLAN OF REORGANIZATION OF INTERSTATE SWEEPING, LTD., IG SERVICES GROUP, LLC AND SWEEPCO, LLC, as provided to this office by facsimile transmission this date.

Sincerely,

Mara Eckhardt

Mara Eckhardt
Chief, Special Procedures Branch

GLEN E. KELLER, JR.
(303) 303-892-7424
glen.keller@dgslaw.com

DAVIS, GRAHAM & STUBBS LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW

SUITE 4700
370 SEVENTEENTH STREET
DENVER, COLORADO 80202
MAILING ADDRESS
POST OFFICE BOX 185
DENVER, COLORADO 80201-0185
TELEPHONE 303-892-9400
FACSIMILE 303-893-1379
TELEX 413726 DGS DVR UD
CABLE DAVGRAM, DENVER

BOULDER, CO OFFICE
VIEW POINT ON THE PARKWAY
4410 ARAPAHOE AVENUE
SUITE 200
BOULDER, COLORADO 80303
TELEPHONE 303-544-5900
FACSIMILE 303-544-5997

February 24, 2000

Ms. Mara Eckhardt
Chief, Special Procedures Branch
Internal Revenue Service
600 17th Street
Denver, CO 80202-2490

HAND DELIVERED

Re: Interstate Sweeping, Ltd, EIN No. 84-1458542 and IG Services Group LLC, EIN No. 84-1412960; In the United States Bankruptcy Court for the District of Colorado; Case No. 99-11500 MSK; Case No. 99-11501 MSK, respectively; Jointly Administered as Case No. 99-11500 MSK

Dear Ms. Eckhardt:

Thank you for your confirming letter dated February 23, 2000 regarding the provisions for the priority tax claim of the Internal Revenue Service in the Fifth Amended Joint Plan of Reorganization of Interstate Sweeping, Ltd, IG Services Group, LLC and Sweepco, LLC.

We have amended the language of the paragraph in two particulars. First, we have clarified that the Reorganized Debtor has the obligation to file returns and pay taxes and its default triggers the default provisions. Second, we have amended part (c) of the last sentence of paragraph 3.3 of the Plan which read:

> At its sole option, the IRS shall also have the right to an order providing for the immediate conversion of the case to one under Chapter 7 subject to the procedures described above in the Plan.

It now reads:

> In its sole discretion, the IRS shall also have the right to seek an order, after notice and a hearing, providing for the immediate conversion of the case to one under Chapter 7 subject to the procedures described above in this Plan.

We have attached a copy of paragraph 3.3 as amended for your file.

iManage:287597.1
Feb 24, 2000 - 10:40 am

Please confirm, by signature upon the copy of this letter enclosed, the acceptance of the Internal Revenue Service to the amendments. We are required to file with the court evidence of your acceptance on or before February 29, 2000.

Thank you for your cooperation.

Sincerely,

Glen E. Keller, Jr.

Enclosures
GEK/sas

The Internal Revenue Service does not object to the modifications.
February 25, 2000

Mara Eckhardt
Chief, Special Procedures Branch

2.15 Class 15 - Unsecured Claims. Class 15 shall consist of all Allowed Claims against the Debtor, however arising, not otherwise included in any other Class hereof, including, without limitation, Allowed Claims based upon the rejection of executory contracts or unexpired leases.

2.16 Class 15a. Class 15a shall consist of the Allowed Settlement Claim of First Financial Services, Ltd.

2.17 Class 15b. Class 15b shall consist of the Allowed Settlement Claim of Vern Tharp.

2.18 Class 16 - Interests. Class 16 shall consist of all Allowed Interests of the Equity Security Holders.

## ARTICLE 3
## TREATMENT OF UNCLASSIFIED CLAIMS

3.1 Administrative Claims. The holders of Allowed Administrative Claims described in 11 U.S.C. § 507(a)(1) will receive on account of such Allowed Claim, cash in an amount equal to such Allowed Claim as soon as practicable following the later of (a) the Effective Date or (b) the date on which an Order of the Bankruptcy Court allowing such claims becomes a Final Order, or cash or deferred cash payments paid in such amounts and on such other terms as may be agreed to by each holder of such an Allowed Claim and the Debtors. Notwithstanding the foregoing, professionals employed at the expense of the Estate or the Debtors and entities who may be entitled to reimbursement or the allowance of fees and expenses from the Estate or the Debtors pursuant to subparagraphs (2) through (6) of 11 U.S.C. § 503(b), shall receive cash in the amount awarded at such times and only in accordance with a Final Order entered pursuant to 11 U.S.C. §§ 330, 331 or 503(b)(2)-(6).

3.2 Priority Tax Claims. Except as provided in Paragraph 3.3, Holders of Allowed Priority Tax Claims against the Debtors (or either of them) described by 11 U.S.C. § 507(a)(8), will receive on account of such Allowed Claims, six deferred equal annual payments from Reorganized Interstate commencing on the annual anniversary of the Effective Date together with interest at the rate of 9% per annum; provided that such Allowed Priority Tax Claim may be prepaid in whole or part at any time without notice, penalty or premium. Notwithstanding this paragraph, the City and County of Denver will be paid $25,000 on the Effective Date in full satisfaction of all of its pre-petition priority or secured tax claims. In addition, the City will be paid $520 in satisfaction of parking tickets outstanding.

3.3 Priority Tax Claim of Internal Revenue Service. The Priority Tax Claim of the Internal Revenue Service (IRS) will be paid $156,032.40 in cash upon the Effective Date in full payment of the pre-petition Priority Tax Claim under Section 507(a)(8) of the Bankruptcy Code. In addition, the IRS will be paid post-petition payroll taxes for the period February 11, 1999 through December 31, 1999 by payment in cash of $159,657 and a balance of $250,000 in equal monthly installments of principal and interest over a six (6) year period with such principal balance

bearing interest at the rate of seven percent (7%) per annum. These payments, when made, will constitute payment in full for payroll tax liability for the period in question. In addition, the Reorganized Debtor will deposit $120,000 upon the effective date with the IRS as a deposit on the payroll taxes for the first quarter of the year 2000. If the foregoing payment is in excess of the amount required for such period, such excess payment shall be applied to the current monthly payment due as described above. If there is an outstanding balance owing for such first quarter of year 2000, the balance shall be paid at the time of filing the appropriate returns for the quarter. The Reorganized Debtor retains the right to verify any missing deposits and apply any such missing deposits to the current monthly payments required to be paid as above. The Reorganized Debtor shall be required to make all returns and payments post confirmation on time as require under appropriate statute or regulation. Should the Reorganized Debtor fail to make any payment hereunder on time or perform as provided herein, they shall be in default under the terms of the Plan. The occurrence of any one of the following shall constitute an event of default under this Plan: (a) The Reorganized Debtor's default in the performance of any term or covenant of this plan and such default shall continue for a period of 30 days after written notice of such default is mailed to the Reorganized Debtor; or (b) The dismissal or conversion of the captioned case to a proceeding under Chapter 7 of the Bankruptcy Code; or if any representation by the Debtors in this plan shall prove to be false or misleading in any material respect; or (d) The Reorganized Debtor's failure to timely file any federal tax returns on their due date, including extensions; or (e) The Reorganized Debtor's failure to timely pay any federal tax on its due date; or (f) the Reorganized Debtor's failure to timely make any and all required federal tax deposits of federal income tax withholding, FICA (Federal Insurance Contributions Act) tax, and FUTA (Federal Unemployment Tax Act) tax; or (g) the Reorganized Debtor's failure to timely make estimated income tax payments in the full amount which may be required of the Reorganized Debtors, if any. Upon the occurrence of an event of default and provided notice has been given and the procedures followed as provided below, the IRS shall have the following rights: (a) The IRS shall have the right to declare due and payable and assess any interest or penalties which would have accrued on the pre-petition federal tax liabilities of the Debtors but for the filing of the bankruptcy petition; (b) the IRS shall have the right to proceed against the Reorganized Debtor or its assets to collect any of the pre-petition or pre-confirmation tax liabilities and related interest and penalties, including interest and penalties through use of the administrative or judicial collection procedures available to the IRS under the Internal Revenue Code as if no bankruptcy petition had been filed. Such procedures shall include but are not limited to the following: (i) the filing of notices of federal tax liens. (c) In its sole discretion, the IRS shall also have the right to seek an order, after notice and a hearing, providing for the immediate conversion of the case to one under Chapter 7 subject to the procedures described above in this Plan. (d) The IRS's failure to act on any default shall not constitute a waive by the IRS of the right to act on such default.

## <u>ARTICLE 4</u>
## DESIGNATION AND TREATMENT OF UNIMPAIRED CLASSES UNDER THE PLAN

4.1 <u>Class 1</u>. All Allowed Class 1 Claims shall be paid in full, in cash, as soon as practical on or after the Effective Date.

**Internal Revenue Service** **Department of the Treasury**

District Director

600 17th Street
Denver, CO 80202

James A. Mogen
Chief Financial Officer
Interstate Sweeping
350 Vallejo Street
Denver, CO 80223

Person to Contact:
Pat Taylor #84-01005
Telephone Number:
(303) 446-1453
Refer Reply to:
5012 DEN
Date:
May 26, 2000

Re: Chapter 11 Bankruptcy #99-11500 MSK
Interstate Sweeping Ltd.

Dear Mr. Mogen:

Your plan of reorganization, which was confirmed on March 2, 2000, called for monthly installment payments of $4,262.22 to be paid on the 2nd of each month. We have no record of receiving the payment due May 2, 2000.

This is notice of default of your confirmed plan. If you do not cure this default by June 9, 2000, your account will be sent out for collection without further notice. At that time, the amount of your entire liability, not just the delinquent plan payment, will be due. Additionally, another monthly payment will be due June 2, 2000.

Please make your check payable to the United States Treasury, and remit it to:

Internal Revenue Service
Attn: 5012 DEN - Taylor
600 17th Street
Denver, CO 80202

If you have any questions, please contact the person named above.

Sincerely,

Carol Wingard
Chief, Insolvency II
Special Procedures Branch

cc: Glen E. Keller, Jr.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re:<br><br>INTERSTATE SWEEPING, LTD.<br>EIN: 84-1458582<br>IG SERVICES GROUP, LLC<br>EIN: 84-1412960<br><br>Debtors. | Case No. 99-11500 MSK<br>Chapter 11<br>Case No. 99-11501 MSK<br>Chapter 11<br><br>Jointly Administered under<br>Case No. 99-11500 MSK |

## CHAPTER 11 FINAL REPORT OF REORGANIZED DEBTOR AND MOTION FOR FINAL DECREE AND ORDER CLOSING CASES

Interstate Sweeping, Ltd., the reorganized debtor herein ("Reorganized Interstate"), through its undersigned counsel and pursuant to 11 U.S.C. §1106(a)(7), Fed. R. Bankr. P. 3022 and Local Bankruptcy Rule 215(b), submits its Chapter 11 Final Report and Motion for Final Decree and Order Closing Cases. Reorganized Interstate submits that the above-captioned estates are fully administered and that the confirmed plan of reorganization herein (the Fifth Amended Joint Plan of Reorganization of Interstate Sweeping, Ltd., IG Services Group, LLC and Sweepco, LLC, hereinafter the "Plan") has been substantially consummated, as follows:

1. The Order Confirming Plan, entered herein on March 7, 2000, has become final.

2. The deposits required by the Plan have been distributed in accordance with the provisions of the Plan.

3. Substantially all of the property of the debtors has been transferred according to the provisions of the Plan.

4. The successor to the debtors has assumed the debtors' business as contemplated by the Plan.

5. Distribution has been commenced under the Plan, and payments to creditors and other interested parties has commenced.

6. All motions, contested matters, and adversary proceedings in the above-captioned cases have been finally resolved.

7. Reorganized Interstate's final Post-Confirmation Quarterly Report, for the calendar quarter ending March 31, 2001, is attached hereto as **Exhibit A.** All quarterly fees payable to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6) have been paid through March 31, 2001.

8. A report to the United States Trustee for the partial quarter beginning April 1, 2001, and ending on the date of entry of a final decree herein, will be filed promptly after entry of the final decree, and the fees payable to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6) for that partial quarter will be paid at that time.

WHEREFORE, Reorganized Interstate respectfully requests that this Court enter a Final Decree pursuant to Fed. R. Bankr. P. 3022, finding that the estates have been fully administered and, therefore, ordering the closing of the cases.

Dated this 9th day of May, 2001.

Respectfully submitted,

OTTEN, JOHNSON, ROBINSON,
NEFF & RAGONETTI, P.C.

By: ______________________
David T. Brennan, #15915
950 17th Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 825-8400

**ATTORNEYS FOR REORGANIZED INTERSTATE**

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing by placing a true and correct copy of the same in the United States mail, first-class postage prepaid, on this 9th day of May, 2001, to:

Glen E. Keller, Jr.
1550 – 17th Street, Suite 500
Denver, Colorado 80202

Theodore W. Graham
550 W.C. St., Suite 1300
San Diego, California 92101

Joanne C. Speirs, Esq.
United States Trustee
721 – 19th Street, Room 408
Denver, Colorado 80202

Unsecured Creditors Committee
c/o Garry R. Appel
1200 – 17th Street, Suite 2400
Denver, Colorado 80202-5824

Sweepco, LLC
350 Vallejo Street
Denver, Colorado 80233

DEBTOR: Interstate Sweeping, Ltd.

POST-CONFIRMATION QUARTERLY REPORT
CHAPTER 11

CASE NUMBER: 99-11500 MSK

For Quarter Ended 3/31, 2001

Date Plan Confirmed: 3/7/2000

**SUMMARY OF DISBURSEMENTS MADE DURING QUARTER:**

| | |
|---|---|
| 1. Cash Balance, Beginning of Quarter | $ 33,759.26 |
| 2. Cash Receipts During Quarter, From All Sources | $ 2,126,871.30 |
| 3. Cash Disbursements During Quarter, Including Plan Payments | $ 1,988,637.27 |
| 4. Cash Balance, End of Quarter (or as of report date, if Final Report) | $ 171,993.29 |

**SUMMARY OF AMOUNTS DISBURSED UNDER PLAN:**

| | Payments During Current Quarter | Total Paid to Date | Total Payments Projected under Plan |
|---|---|---|---|
| 1. ADMINISTRATIVE EXPENSES | | | |
| Trustee Compensation | $ 9000.00 | $ 23,500.00 | $ |
| Trustee Expense | $ | $ | $ |
| Attorney Fees-Trustee | $ | $ | $ |
| Attorney Fees-Debtor | $ | $ | $ |
| Other Professionals | $ | $ | $ |
| Other Administrative Expenses | $ | $ | $ |
| 2. SECURED CREDITORS | $ 130,456.87 | $ 458,316.86 | $ 2,650,548.64 |
| 3. PRIORITY CREDITORS | $ 12,786.66 | $ 499,569.14 | $ 768,089.24 |
| 4. UNSECURED CREDITORS | $ 7,298.34 | $ 267,145.03 | $ 294,193.32 |
| 5. EQUITY SECURITY HOLDERS | $ | $ | $ |
| 6. OTHER: | $ | $ | $ |
| TOTAL PLAN PAYMENTS | $ 159,541.87 | $ 1,248,531.30 | $ 3,712,831.20 |

**QUARTERLY FEE PAID:**

| Amount | Date | Check No. |
|---|---|---|
| $ 250.00 | 2/15/01 | 51489 |
| $ 8750.00 | 2/15/01 + 3/5/01 | 51488 + 51684 |

**PLAN STATUS:**

| | YES | NO |
|---|---|---|
| 1. Have all payments been made as set forth in the confirmed plan? (if no, please explain) | [X] | [ ] |
| 2. Are all post-confirmation obligations current? (if no, please explain) | [X] | [ ] |

3. Projected date of application for final decree: N/A

**I declare under penalty of perjury that the foregoing Post-Confirmation Quarterly Report is true and correct to the best of my knowledge and belief.**

Executed on: 5-8-01

Reorganized Debtor: [signature]

By: JAMES A. MOGEN

Position: TREASURER

EXHIBIT
A
PENGAD-Bayonne N.J.

Form 3
09/15/97