Nos. 05-773 T and 06-169 T
(Consolidated)
(Chief Judge Damich)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DAVID SUNSHINE and KELLY T. HICKEL,

Plaintiffs

v.

THE UNITED STATES,

Defendant

# UNITED STATES' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
ROBERT J. HIGGINS
JENNIFER P. WILSON
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6494
(202) 514-9440 (facsimile)

# TABLE OF CONTENTS

Page

Statement of Facts. . . . . 3

Argument. . . . . 6

I. Plaintiffs' belated attempts to procure payment of payroll taxes from a third party do not negate willfulness. . . . . 9

II. There are disputed material facts with respect to the issue of plaintiffs' willfulness.. . . . . 12

III. Plaintiffs were not released from liability as a result of any IRS action or inaction. . . . . 15

A. The IRS was not required by law or the bankruptcy Pan of Reorganization to collect from Reorganized Interstate before collecting from plaintiffs.. . . . . 16

B. The *McCarty* decision may no longer be valid, has very limited applicability, and is entirely distinguishable from the facts of this case. . . . . 19

1. The IRS policy that was the central basis for the *McCarty* decision has changed, leaving the decision on shaky ground. . . . . 21

2. The *McCarty* decision should be limited to the unique facts of that case, facts which are not present here. . . . . 22

C. The burden for asserting estoppel against the government is very high, and plaintiffs can not meet that burden in this case. . . . 25

Conclusion. . . . . 28

**Appendix (Separately Bound):**

Exhibit 1: Copy of Affidavit of Kelly T. Hickel, filed in the United States Bankruptcy Court for the District of Colorado in the matter of Interstate Sweeping, Ltd. Case No. 99-11500, dated July 1, 1999.

Exhibit 2: Copy of Affidavit of David Sunshine, President of Interstate Sweeping, Ltd., filed in the United States Bankruptcy Court for the District of Colorado in the matter of Interstate Sweeping, Ltd. Case No. 99-11500, dated February 8, 2000.

Exhibit 3: Transcript excerpts from deposition of Kelly Hickel, taken on May 2, 2006, in this case.

Exhibit 4: Transcript excerpts from deposition of David Sunshine, taken on May 3, 2006, in this case.

Exhibit 5: Copy of First Amended Disclosure Statement to Interstate Sweeping, Ltd., IG Services Group, LLC and Sweepco, LLC Second Amended Joint Plan of Reorganization, filed in the United States Bankruptcy Court for the District of Colorado in the matter of Interstate Sweeping, Ltd. Case No. 99-11500, dated August 18, 1999 (excluding exhibits).

Exhibit 6: Copy of notice of default from IRS to Interstate Sweeping, dated February 27, 2001.

Exhibit 7: Copy of notice of default from IRS to Interstate Sweeping, dated September 21, 2001.

Exhibit 8: Copy of notice of default from IRS to Interstate Sweeping, dated October 29, 2001.

Exhibit 9: Copy of Employer's Quarterly Federal Tax Return, Form 941, for Interstate Sweeping, Ltd., for the quarter ending June 30, 1999, dated February 21, 2000.

Exhibit 10: Copy of Employer's Quarterly Federal Tax Return, Form 941, for Interstate Sweeping, Ltd., for the quarter ending September 30, 1999, dated February 21, 2000.

Exhibit 11: Copy of Employer's Quarterly Federal Tax Return, Form 941, for Interstate Sweeping, Ltd., for the quarter ending December 31, 1999, dated February 21, 2000.

Exhibit 12: Copy of Community First National Bank signature card for Interstate Sweeping, Ltd., debtor-in-possession operating account, dated February 12, 1999.

Exhibit 13: Copy of Community First National Bank signature card for Interstate Sweeping, Ltd., debtor-in-possession operating account, dated December 3, 1999.

Exhibit 14: Copies of selected cancelled operating account checks for Interstate Sweeping, Ltd., from May through December, 1999.

Exhibit 15: Copy of letter from Glenn Keller to IRS, dated February 23, 2000, enclosing copies of each check written by Interstate Sweeping, Ltd. for payroll tax deposits made after February 11, 1999 (enclosures included).

Exhibit 16: Transcript excerpts from deposition of James Hill, taken on May 2, 2006, in this case.

Exhibit 17: Copy of Internal Revenue Manual section 1.2.1.5.14.

**TABLE OF AUTHORITIES** **Page**

**Cases:**

*Anderson v. United States*, 855 F. Supp 236 (N.D. Ill. 1994). . . . . . . . . . . . . . 9,10

*Board of Commissioners of County of Adams v. Isaac*,
18 F.3d 1492 (10 Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Burack v. United States*, 198 Ct. Cl. 855,
461 F.2d 1282 (Fed. Cir. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-24

*Calderone v. United States*, 799 F.2d 254 (6th Cir. 1986). . . . . . . . . . . . . . . . . . . 22

*Cash v. United States*, 961 F.2d 562 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . 16

*Cook v. United States*, 52 Fed. Cl. 62 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . 8,12

*Cooper v. United States,* 539 F. Supp. 117 (E.D. Va. 1982). . . . . . . . . . . . . . 16,22

*Conner Bros. Const. Co., Inc. v. United States*, 65 Fed. Cl. 657 (2005). . . . . . . . 26

*Dallin ex rel. Estate of Young v. United States*, 62 Fed. Cl. 589 (2004). . . . . . . . 16

*Farkas v. United States*, 57 Fed. Cl. 134 (2003). . . . . . . . . . . . . . . . . . . . . . 7,8,13

*Feist v. United States*, 221 Ct. Cl. 531, 607 F.2d 954 (1979).. . . . . . . . . . . . . . . . 12

*Godfrey v. United States*, 748 F.2d 1568 (Fed. Cir. 1984). . . . . . . . . . . . . . . . . 8,12

*Gutherie v. United States,* 359 F. Supp. 2d 693 (E.D. Tenn. 2005). . . . . . . . . 16,22

*Heckler v. Comty. Health Servs. of Crawford County, Inc.*,
467 U.S. 51 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Hanson v. Office of Pers. Mgmt.*, 833 F.2d 1568 (Fed. Cir. 1987).. . . . . . . . . . . . 26

*In re Nece*, 139 B.R. 637 (S.D. Tex. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Mangieri v. United States*, 657 F. Supp. 726 (D. Md. 1986).. . . . . . . . . . . . . 25,27

**Cases (Continued):** **Page**

*Mazo v. United States*, 591 F.2d 1151 (5th Cir. 1979). . . . . . . . . . . . . . . . . . . . 11,12

*McCarty v. United States*, 194 Ct. Cl. 42, 437 F.2d 961 (1971).. . . . . . . . . . . . 19-24

*Melrose Assoc., L.P. v. United States*, 45 Fed. Cl. 56 (1999).. . . . . . . . . . . . . . . . . 26

*Muck v. United States*, 3 F.3d 1378 (10th Cir. 1993). . . . . . . . . . . . . . . . . . 17,22,24

*Newsome v. United States*, 431 F.2d 742 (5th Cir. 1970). . . . . . . . . . . . . . . . . . . . . 13

*Olsen v. United States*, 952 F.2d 236 (8th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . 25

*Richmond v. Office of Pers. Mgmt.*, 862 F.2d 294 (Fed. Cir. 1988).. . . . . . . . . . . 25

*Slodov v. United States*, 436 U.S. 238 (1978).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Teel v. United States*, 529 F.2d 903 (9th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . 9,12

*Teets v. United States*, 29 Fed. Cl. 697 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Thibodeau v. United States*, 828 F.2d 1499 (11th Cir. 1987). . . . . . . . . . . . . . . . . . 13

*Thomsen v. United States*, 887 F.2d 12 (1st Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. National Bank of Commerce*, 472 U.S. 713 (1985). . . . . . . . . . . 18

*United States v. Sage*, 412 F. Supp. 2d 406 (S.D.N.Y. 2006). . . . . . . . . . . . . . 9,10

*Winter v. United States*, 196 F.2d 339 (2d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . 12

*Zacharin v. United States*, 213 F.3d 1366 (Fed. Cir. 2000). . . . . . . . . . . . . . . . . . 26

**Statutes:** **Page**

Internal Revenue Code of 1986 (26 U.S.C.):

§ 3102. . . . . . . . . . 8
§ 3401. . . . . . . . . . 7
§ 3402. . . . . . . . . . 7
§ 3403. . . . . . . . . . 8
§ 6321. . . . . . . . . . 18
§ 6322. . . . . . . . . . 18
§ 6331. . . . . . . . . . 18
§ 6672. . . . . . . . . . *Passim*
§ 7403. . . . . . . . . . 18
§ 7501. . . . . . . . . . 8

**Miscellaneous:**

Internal Revenue Manual (I.R.M.) 1.2.1.5.14.. . . . . . . . . . 21,22

Internal Revenue Service, Publication 15, Circular E, Employer's Tax Guide (2006). . . . . . . . . . 7,8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-773 T and No. 06-169 T
(CONSOLIDATED)
(Chief Judge Damich)

DAVID SUNSHINE and KELLY T. HICKEL,

Plaintiffs

v.

THE UNITED STATES,

Defendant

**UNITED STATES' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs claim that the IRS erroneously assessed the § 6672 trust fund recovery penalty against them. The IRS made the assessment as a result of Interstate Sweeping, Ltd. ("Interstate"), the company plaintiffs founded and managed, failing to remit payroll taxes during the last three quarters in 1999. Accordingly, they seek a refund of the portion of the penalty that they have paid and an abatement of the penalty that remains to be paid. The United States has counterclaimed for the balance of the unpaid payroll tax.

In the instant motion, plaintiffs argue that they are entitled to summary judgment because they attempted to procure payment of Interstate's payroll taxes from a third party, which they contend negates their willfulness in failing to remit the taxes when they were

due. In addition, they argue that they are released from liability due to the IRS's failure to collect from Interstate after it emerged from bankruptcy and defaulted on the payments it was obligated to make to the IRS.

Plaintiffs' first argument is wrong as a matter of law. Belated attempts to procure payment of payroll taxes from a third party can not negate willfulness in failing to make payroll tax deposits at the time they were due. This argument also fails because there are disputed material facts with respect to the issue of willfulness that preclude summary judgment. Plaintiffs' second argument is also incorrect as a matter of law. The Interstate bankruptcy proceeding did not result in a release of liability for the persons responsible for the company's failure to remit payroll taxes. For all of these reasons, plaintiffs' motion for summary judgment should be denied.

The United States has not cross-moved for summary judgment because we believe that there are material disputed facts with respect to the central issues in this case that preclude summary judgment. In addition, we believe that credibility determinations will be crucial to the Court's evaluation of the disputed facts, and those determinations are best made at trial.

## STATEMENT OF FACTS

The United States generally agrees with the procedural history of this case related by plaintiffs in their summary judgment brief.[1] (Plaintiffs' Brief at 2-3.) However, the United States does not agree with plaintiffs' statement of facts with respect to the bankruptcy proceeding involving Interstate. (Plaintiffs' Brief at 4-5.) Accordingly, the United States provides the following statement of facts limited to the bankruptcy proceeding and related issues.

Interstate filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Colorado on February 11, 1999, and thereafter became a debtor-in-possession. (Resp. to Plaintiffs' PF 15, 16.) Plaintiff Kelly Hickel was the Chief Executive Officer of Interstate before 1999, and at least through July, 1999. (Defendant's PF 1.) Plaintiff David Sunshine was the President of Interstate prior to and throughout the bankruptcy proceeding. (Defendant's PF 2.) At some point during the bankruptcy proceeding, Sweepco, LLC ("Sweepco") became a co-proponent of the bankruptcy Plan

---

[1]As noted in our responses to plaintiffs' proposed findings of uncontroverted fact, there are a few inaccuracies in plaintiffs' recitation of the procedural history of this case. The inaccuracies that we noted are as follows:

- Plaintiffs filed their complaint on July 22, 2005, rather than July 21, 2005. (Resp. to Plaintiffs' PF 9.)
- The United States' counterclaims seek a judgment against each plaintiff in the amount of the Section 6672 penalty ($169,022.01) in addition to any assessed interest, less plaintiffs' $300 payments and any credits that may have been applied by the IRS. (Resp. to Plaintiffs' PF 10.)
- Plaintiff David Sunshine's second complaint was filed on March 6, 2006, not March 13, 2006. (Resp. to Plaintiffs' PF 13.)

of Reorganization. (Defendant's PF 3.)

Interstate failed to make its complete payroll tax deposits during the second, third, and fourth quarters of 1999. (Resp. to Plaintiffs' PF 17.) Interstate's failure to make these payroll tax deposits occurred after the bankruptcy petition was filed on February 19, 1999, but before the bankruptcy Plan of Reorganization was confirmed on March 2, 2000. (Resp. to Plaintiffs' PF 17, 19.) On February 21, 2000, Interstate submitted Quarterly Employment Tax Returns for the second, third, and fourth quarters of 1999, indicating that the full amounts required for the payroll tax deposition had not been paid for each quarter. (Defendant's PF 5.) Plaintiff David Sunshine's signature appears on each of these forms. (Defendant's PF 6.)

A signature card for Interstate's debtor-in-possession operating account shows that both plaintiffs had check signing authority as of February 12, 1999. (Defendant's PF 7.) A second signature card for Interstate's debtor-in-possession operating account shows that plaintiff David Sunshine, Larry Nelson, and James Mogen had check signing authority as of December 3, 1997. (Defendant's PF 8.) During the last three quarters of 1999, Interstate made payments from its operating account to creditors other than the IRS. (Defendant's PF 9.) Interstate also made some payroll tax deposits in February, March, April, and September, 1999. (Defendant's PF 10.) Plaintiff David Sunshine's signature appears on all of the operating account checks and payroll tax deposits. (Defendant's PF 11.)

The Fifth Amended Joint Plan of Reorganization ("Plan of Reorganization") included the IRS's "priority tax claim" for Interstate's unpaid payroll taxes. (Resp. to Plaintiffs' PF 19–25.) Specifically, Section 3.3 of the Plan of Reorganization sets forth the priority tax claim of the Internal Revenue Service for Interstate's pre-petition and post-petition payroll taxes. Section 3.3 also identifies the events that shall constitute a default under the Plan, and provides the following explanation of the Internal Revenue Service's rights in the event of default:

> Upon the occurrence of an event of default and provided notice has been given and the procedures followed as provided below, the IRS shall have the following rights: (a) The IRS shall have the right to declare due and payable and assess any interest or penalties which would have accrued on the pre-petition federal tax liabilities of the Debtors but for the filing of the bankruptcy petition; (b) the IRS shall have the right to proceed against the Reorganized Debtor or its assets to collect any of the pre-petition or pre-confirmation tax liabilities and related interest and penalties, including interest and penalties through use of the administrative or judicial collection procedures available to the IRS under the Internal Revenue Code as if no bankruptcy petition had been filed. Such procedures shall include but are not limited to the following: (i) the filing of notices of federal tax liens. (c) In its sole discretion, the IRS shall also have the right to seek an order, after notice and a hearing, providing for the immediate conversion of the case to one under Chapter 7 subject to the procedures described above in this Plan. (d) The IRS's failure to act on any default shall not constitute a waive [sic] by the IRS of the right to act on such default.

(Resp. to Plaintiffs' PF 25, Exhibit A.)

In a letter dated February 22, 2000, counsel for Sweepco set forth a proposal "in full settlement of all outstanding claims by the Internal Revenue Service" for the payroll

taxes owed by Interstate. (Resp. to Plaintiffs' PF 21, Exhibit C, ¶ 5.) Among the terms proposed, Sweepco proposed that the "settlement is a complete settlement of all claims for payroll taxes payable to the Internal Revenue Service for such periods including, but not limited to, a release of all liability for the 100% penalty assessable against any responsible officer or person of the taxpayer." (*Id.*) Section 3.3 of the Plan of Reorganization does not include a release of liability, as requested by counsel for Sweepco. (Resp. to Plaintiffs' PF 25.)

After the Plan of Reorganization was confirmed, Reorganized Interstate received notices of default from the Internal Revenue Service regarding the monthly installment payments required by the Plan of Reorganization on May 26, 2000, February 27, 2001, September 21, 2001, and October 29, 2001. (Resp. to Plaintiffs' PF 28; Defendant's PF 4.) Pursuant to Section 3.3 of the Plan of Reorganization, the IRS had the right to file a notice of federal tax lien as a result of Reorganized Interstate's default. (Resp. to Plaintiffs' PF 26.) However, the IRS did not have an obligation to file a notice of federal tax lien, and, in fact, did not do so. (*Id.*) On November 14, 2003, the IRS assessed the trust fund recovery penalty against plaintiffs pursuant to Internal Revenue Code § 6672. (Resp. to Plaintiffs' PF 5.)

## ARGUMENT

The central issues in this case are (1) whether plaintiffs are "responsible persons" (2) who willfully failed to remit Interstate's payroll taxes during the last three quarters in

1999. These are the elements of the § 6672 trust fund recovery penalty assessed against plaintiffs by the IRS. Plaintiffs have assumed, for the purpose of their motion for summary judgment only, that they were "responsible persons" under § 6672. (Plaintiffs' Brief at 1.) They focus in their motion for summary judgment first on the element of willfulness, and then raise an argument that they should be released from liability because the IRS failed to take collection action against Interstate after it emerged from bankruptcy. (Plaintiffs' Brief at 5-6.) As explained in the succeeding sections of this brief, both of plaintiffs' arguments are incorrect as a matter of law and there are disputed material facts with respect to plaintiffs' willfulness. As a result, plaintiffs' motion for summary judgment should be denied.

Before delving into plaintiffs' arguments in greater depth, a general overview of the payroll tax system will be helpful in placing § 6672 liability in context. Employers are required to withhold Federal Insurance Contributions Act (FICA) tax and income tax from employees' wages when the wages are paid. *See* §§ 3401, 3402(a). The withheld funds are used primarily to pay the employees' individual income taxes and Social Security and Medicare benefits. *Farkas v. United States*, 57 Fed. Cl. 134, 139 (2003), *aff'd*, 95 Fed. Appx. 355 (Fed. Cir. 2004). Rather than remitting the withheld taxes to the federal government directly, employers deposit the funds with an authorized financial institution on a semiweekly or monthly schedule. Internal Revenue Service, Publication

15, Circular E, Employer's Tax Guide (2006).[2] According to § 7501(a), the withheld payroll taxes are "held to be a special fund in trust for the United States." As a result, the withheld payroll taxes are commonly referred to as "trust fund taxes." *See Farkas*, 57 Fed. Cl. at 139.

Employers are required to account for the trust fund tax deposits on a quarterly basis by filing an Employer's Quarterly Federal Tax Return known as "Form 941" with the IRS by the last day of the month that follows the end of the quarter. Internal Revenue Service, Publication 15, Circular E, Employer's Tax Guide (2006). Penalties can be applied on late filings and interest may accrue from the due date of any unpaid trust fund tax. *Id*. Additionally, employers are liable for the payment of the trust fund taxes immediately after paying their employees' net wages. *See* §§ 3102(b), 3403.

In addition to employer liability, the IRS has the option of imposing personal liability upon individuals found to be responsible for unpaid payroll taxes in the form of a penalty equal to 100% of the unpaid payroll taxes pursuant to § 6672. *See Farkas*, 57 Fed. Cl. at 139. "The purpose of the 100% penalty provision 'is to permit the taxing authority to reach those [persons] responsible for the corporation's failure to pay the taxes which are owing'." *Id.* (*quoting Godfrey v. United States*, 748 F.2d 1568, 1574 (Fed. Cir. 1984)). Personal liability is imposed under § 6672 against "the persons responsible for ensuring that trust fund taxes are paid," but who "willfully fail to do so." *Cook v. United*

[2]This publication is available online at: http://www.irs.gov/publications/p15/.

*States*, 52 Fed. Cl. 62, 68 (2002).

**I.**

**PLAINTIFFS' BELATED ATTEMPTS TO PROCURE PAYMENT OF PAYROLL TAXES FROM A THIRD PARTY DO NOT NEGATE WILLFULNESS**

Plaintiffs argue that summary judgment is appropriate because "they undertook all reasonable efforts to ensure that the unpaid Payroll Taxes, which were incurred after Interstate filed for bankruptcy, would be paid by providing for the payment of the Payroll Taxes in the Plan of Reorganization." (Plaintiff's Brief at 8.) Plaintiffs' purported efforts to procure payment of Interstate's payroll taxes all occurred after the trust fund taxes were due to be deposited. Plaintiffs' belated attempts to procure payment from a third party – Reorganized Interstate – do not negate their willfulness, and thus their liability, under § 6672 as a matter of law.

Because liability attaches to "responsible persons" on the date that the payroll tax deposits are due, *see Slodov v. United States*, 436 U.S. 238, 247-48 (1978); *Teel v. United States*, 529 F.2d 903, 906 (9th Cir. 1976), their willfulness in failing to remit the payroll taxes is tested as of that date. *See Anderson v. United States*, 855 F. Supp. 236, 238-89 (N.D. Ill. 1994); *United States v. Sage*, 412 F. Supp. 2d 406, 414-15 (S.D.N.Y. 2006).

It logically follows – and courts have so held – that a responsible person's after-the-fact attempt to procure payment of payroll taxes from a third party will not negate his willfulness in failing to deposit the payroll taxes when they were due. For example, in

*Anderson v. United States*, the court evaluated the plaintiffs' argument that the employer's agreement with a third party to assume responsibility for the employer's unpaid employment payroll taxes, entered into after the date the taxes became due, retroactively negated their original willfulness. *Anderson*, 855 F. Supp. at 237, 238-39. The court concluded that:

> [A]t the very moments that Diamond [the employer] withheld the funds at issue from its payment of wages and then proceeded to apply those funds to pay other creditors, rather than assuring their payment to the government for which it was then acting as trustee, the liability of Diamond's responsible persons for the 100% penalty by reason of their willful conduct was fixed. That penalty would of course be abated to the extent that actual *payments* were later made to the United States, but unsuccessful or aborted efforts to make such payments – however well-intentioned – could not retrospectively reconvert the original willfulness of the responsible persons to something less than that.

*Id*. at 238-39 (emphasis in original). The court held that the third party's agreement to assume the employer's payroll tax liabilities was "wholly irrelevant" to the issue of the plaintiffs' § 6672 liability. *Id*. at 239.

The court in *United States v. Sage* addressed a similar argument. The plaintiff was the CEO of OTI, Inc. during a period of time when OTI failed to make payroll tax deposits. *Sage*, 412 F. Supp. at 408-09. The plaintiff argued that his later agreement with OTI in which OTI pledged to pay any remaining debts owed to the IRS in exchange for his removal from the company negated his willfulness in failing to pay the payroll taxes. *Id*. at 409, 414-15. The court rejected the plaintiff's argument, finding that plaintiff

could not be relieved of liability under § 6672 after "failing to pay down an existing tax liability" and then later attempting to "shift liability to a third party through a voluntary agreement." *Id*. at 414-15. The court found that creating such an exception would "cut against the policy behind § 6672." *Id*. at 415; *see also Mazo v. United States*, 591 F.2d 1151, 1157 (5th Cir. 1979) ("If, after receiving actual notice, corporate officials could once again delegate their responsibility [to remit payroll taxes] to subordinates, then repeated escape from liability would be possible and the government would be required to monitor corporate affairs daily.").

These cases make clear that, as a matter of law, belated action taken by a plaintiff to procure payment of the payroll taxes from a third party can not negate his or her willfulness at the time the payroll tax deposits were not made. Because plaintiffs are seeking to negate their willfulness on the basis of actions taken after they willfully failed to deposit the payroll taxes, and thus after their liability had accrued, summary judgment should be denied as a matter of law.[3]

---

[3]In addition, plaintiffs' argument that "Interstate had the ability to pay the Payroll Taxes at the time the Plan of Reorganization was confirmed" (Plaintiffs' Brief at 8) is misleading. Plaintiffs point to the Chapter 11 Final Report filed by Reorganized Interstate, which shows that the company had sufficient cash assets on May 9, 2001, to pay the entire payroll tax liability. (*Id*.) However, Reorganized Interstate was not obligated to pay the entire tax liability as of that date. According to Section 3.3 of the Plan of Reorganization, the company was obligated to make monthly payments of principal and interest over a six-year period. *See* Exhibit A (submitted with plaintiffs' opening brief). Therefore, the fact that Reorganized Interstate may have had sufficient cash assets to pay the entire liability as of May 9, 2001, is beside the point because the entire liability was not due as of that date. The last default notice received by

## II.

## THERE ARE DISPUTED MATERIAL FACTS WITH RESPECT TO THE ISSUE OF PLAINTIFFS' WILLFULNESS

Ordinarily, determining the existence of willfulness is an inherently factual exercise. *See Cook*, 52 Fed. Cl. at 68 ("Both the responsible person analysis and the assessment of willfulness are fact-based determinations unique to the circumstances of each individual case."); *Teel*, 529 F.2d at 905 ("The question of wilfulness is a factual one and if sufficiently controverted would preclude the granting of a summary judgement on penalty liability."); *Winter v. United States*, 196 F.3d 339, 347 (2d Cir. 1999) (noting that willfulness is ordinarily a fact issue); *Mazo*, 591 F.2d at 1157 (same). The Federal Circuit has determined that willfulness may be shown in at least two ways: (1) "a voluntary, intentional, and conscious decision not to collect and remit taxes thought to be owing"; or (2) a "reckless disregard of an 'obvious and known risk' that taxes might not be remitted." *Godfrey v. United States*, 748 F.2d 1568, 1577 (Fed. Cir. 1984) (*quoting Feist v. United States*, 221 Ct. Cl. 531, 607 F.2d 954, 961 (1979)).

Plaintiffs assert that they are entitled to summary judgment because there is no dispute that they "undertook all reasonable efforts to ensure the Payroll Taxes would be

---

Reorganized Interstate was dated October 29, 2001. There is nothing in the record to indicate whether the company had sufficient assets to make a monthly payment, much less pay the entire liability, as of that date. In any event, the IRS was not obligated to collect from the company before or in lieu of collecting from responsible persons, as is explained in Section III.A., *infra*.

paid, under circumstances where the employer had the means of payment and could reasonably be expected to make the payment". (Plaintiffs' Brief at 5-6.) Plaintiffs' assertion is incorrect. There are material disputed facts with respect to plaintiffs' willfulness in this matter.

Specifically, there is a factual dispute in this case with respect to whether plaintiffs signed or otherwise authorized payments to creditors during the time when Interstate's payroll tax deposits were not being made.[4] This court and others have held that willfulness is established when a company makes payments to creditors other than the IRS when payroll taxes remain unpaid, *i.e.*, when creditors other than the IRS are preferred. *See, e.g., Farkas*, 57 Fed. Cl. at 144; *Teets v. United States*, 29 Fed. Cl. 697, 710, 714 (1993), *aff'd*, 39 F.3d 1196 (Fed. Cir. 1994); *Thomsen v. United States*, 887 F.2d 12, 17-18 (1st Cir. 1989); *Thibodeau v. United States*, 828 F.2d 1499, 1505 (11th Cir. 1987); *Newsome v. United States*, 431 F.2d 742, 745 (5th Cir. 1970).

Both plaintiffs had check signing authority on behalf of Interstate in 1999. *See* Exhibits 12 and 13. Mr. Sunshine appears to have signed Interstate's Quarterly Employment Tax Returns for Interstate's for the last three quarters in 1999. *See* Exhibits 9, 10, and 11. These returns, which were signed on February 21, 2000, and filed well after they were due, indicate that a balance remained for each quarter, meaning that

---

[4]By offering this particular example of a disputed fact relevant to the issue of willfulness, we do not mean to suggest that there are no other disputed facts on this issue. We provide this example merely to illustrate that willfulness is a contested factual issue in this case.

Interstate had not remitted the full amount of payroll tax due. *Id*. However, some payroll tax deposits were made in February, March, April, and September, 1999, and Mr. Sunshine appears to have signed all of those payroll tax deposit checks . *See* Exhibit 15. During the last three quarters of 1999, while Interstate was failing to remit all of the payroll taxes owed by Interstate, the company made payments from its operating account to creditors other than the IRS. *See* Exhibit 14. Mr. Sunshine's signature appears on all of the operating account checks during this time period. *Id*.

However, the appearance of Mr. Sunshine's signature on Interstate's payroll and operating account checks is a contested factual issue. Mr. Sunshine acknowledged in his deposition that between February and May or June of 1999, he signed Interstate's checks and was responsible for Interstate's payroll taxes. *See* Exhibit 4 at 28:20-29:9. But, he testified that after May or June of 1999, two other people were selected by Jim Hill, the CEO of Sweepco, to take control of Interstate and make day-to-day financial decisions. *Id*. at 29:10-30:22. Those two people were Larry Nelson and Jim Mogen. *Id*. Mr. Sunshine testified that he stopped signing checks on behalf of Interstate after Messrs. Nelson and Mogen took control, and that they used his signature stamp on Interstate's checks. *Id*. at 31:24-32:12. He also asserted that he did not personally sign Interstate's Quarterly Employment Tax Returns and that his signature was applied by use of a stamp. *Id*. at 70:23-71:3. Mr. Sunshine's testimony is contradicted by the testimony of Jim Hill, who stated that throughout 1999 and up until the bankruptcy plan was confirmed in March, 2000, neither he nor anyone from Sweepco signed checks on behalf of Interstate

and no one from Sweepco used Mr. Sunshine or Mr. Hickel's signature stamp on Interstate's checks. *See* Exhibit 16, Jim Hill deposition transcript excerpts at 40:20-41:13. The testimony of Mr. Sunshine is contradicted by Mr. Hill's testimony, and will also be contradicted by other government witnesses who will testify at trial but have not been deposed.

In addition, assuming for the sake of argument that plaintiffs' purported attempts to procure payment of Interstate's payroll taxes from Reorganized Interstate can negate their willfulness, plaintiffs' role in procuring IRS approval of the Plan of Reorganization is a disputed fact. In their brief, plaintiffs assert that they "collaborated with the IRS to ensure that the IRS approved of the language contained in the Plan of Reorganization for the payment of the Payroll Taxes." (Plaintiffs' Brief at 7.) Yet, both Mr. Sunshine and Mr. Hickel testified in their depositions that they did not participate in any negotiations with the IRS. *See* Exhibit 4 at 82:19-83:4; Exhibit 3 at 90:20-24; 93:24-94:7. Indeed, it was counsel for Sweepco who made the proposal to the IRS regarding the terms of the bankruptcy plan for the unpaid payroll taxes. *See* Exhibits B and C (submitted with plaintiffs' opening brief).

## III.

## PLAINTIFFS WERE NOT RELEASED FROM LIABILITY AS A RESULT OF ANY IRS ACTION OR INACTION

Plaintiffs argue that they are released from liability because of the IRS's alleged failure to take collection against Interstate after it emerged from Chapter 11 bankruptcy.

(Plaintiffs' Brief at 9-13.) Plaintiffs' argument is wrong. Plaintiffs are not "released from liability" as a result of the IRS not collecting from Reorganized Interstate because their liability is separate and distinct from that of the company and the bankruptcy plan does not shield them from liability, as explained further below. Moreover, the authorities provided by plaintiffs in support of their argument are not persuasive for several reasons, also explained in detail below.

### A. The IRS was not required by law or the bankruptcy Plan of Reorganization to collect from Reorganized Interstate before collecting from plaintiffs.

Plaintiffs contend that they should be "released from liability" because the IRS did not try to collect the assets of the reorganized Interstate after it defaulted on the bankruptcy plan payments. (Plaintiffs' Brief at 9-13.) Plaintiffs are incorrect because a responsible person's liability under § 6672 is "separate and distinct from the underlying liability imposed on the employer for failing to pay the trust fund taxes." *Dallin ex rel. Estate of Young v. United States*, 62 Fed. Cl. 589, 598 (2004) (*citing Cash v. United States*, 961 F.2d 562, 565 (5th Cir. 1992)). Because the personal and employer liabilities are "separate and distinct," the IRS may assess the trust fund recovery penalty against the responsible person without ever attempting to collect from the employer. *See Cooper v. United States*, 539 F. Supp. 117, 121 (E.D. Va. 1982) (refusing to release responsible person from liability where IRS had inquired into forming an installment plan with employer but failed to follow through), *aff'd*, 705 F.2d 442 (4th Cir. 1983); *accord Gutherie v. United States*, 359 F. Supp. 2d 693, 698 (E.D. Tenn. 2005) (finding no

requirement that the IRS pursue assets of the employer prior to seeking recovery from responsible persons); *In re Nece*, 139 B.R. 637, 638-39 (S.D. Tex. 1992) ("The IRS is not required to attempt to collect employment withholding taxes from a corporation before assessing and collecting the 100% penalty against its responsible officers."). Since plaintiffs' liability under § 6672 is "separate and distinct" from that of Interstate or Reorganized Interstate, the fact that the IRS did not pursue collection from Reorganized Interstate does not bar the IRS from assessing the trust fund recovery penalty against plaintiffs.

Plaintiffs also contend that the default provision of Section 3.3 of the bankruptcy plan precludes enforcement against them. However, the presence of an installment agreement or bankruptcy plan does not abrogate liability unless that agreement specifically shields the responsible persons from liability. *See Muck v. United States*, 3 F.3d 1378, 1382 (10th Cir. 1993). The provision of the bankruptcy plan at issue in this case does not shield plaintiffs from liability.

Section 3.3 of the Plan of Reorganization sets forth the priority tax claim of the Internal Revenue Service for Interstate's pre-petition and post-petition payroll taxes, and identifies the events that shall constitute a default under the Plan. The section provides an explanation of the Internal Revenue Service's rights in the event of default, including, <u>but not limited to</u>, filing federal tax liens. (*See* Exhibit A) (emphasis added.) Plaintiffs interpret this language as foreclosing all means of collection ordinarily available to the IRS, except for the filing of tax liens.

Plaintiffs' interpretation of the default provision in the bankruptcy plan is incorrect. First, filing a federal tax lien is not, by itself, a means of collection. The United States may obtain a lien "upon all property and rights to property, whether real or personal," belonging to any person liable to pay any tax pursuant to § 6321. The lien arises when an assessment is made, and continues until the liability is satisfied or becomes unenforceable by reason of lapse of time. *See* § 6322. A federal tax lien, however, is not "self-executing"; "[a]ffirmative action by the IRS is required to enforce collection of the unpaid taxes." *United States v. National Bank of Commerce*, 472 U.S. 713, 720 (1985). There are two "principal tools available for that purpose" – a lien-foreclosure suit pursuant to § 7403 and the collection of the unpaid tax by administrative levy pursuant to § 6331. *Id.* Moreover, as the plain language of the bankruptcy plan indicates, the IRS's rights upon the event of default were not limited to filing a federal tax lien. Accordingly, the IRS retained the right to pursue all means of collection of the unpaid payroll taxes, including imposing the § 6672 trust fund recovery penalty against responsible persons.

Finally, Section 3.3 of the Plan of Reorganization addresses only Reorganized Interstate, and does not address the § 6672 liability of any responsible persons. The plain language of Section 3.3 certainly does not release any responsible persons from liability. The absence of any language to this effect is particularly significant in light of the fact that counsel for Sweepco expressly requested that the plan result in "a complete settlement of all claims for payroll taxes payable to the Internal Revenue Service for such

periods including, but not limited to, a release of all liability for the 100% penalty assessable against any responsible officer or person of the taxpayer." (Exhibit C, ¶ 5.)

Because the bankruptcy plan does not include a release of liability for responsible persons and does not preclude any means of collection, Section 3.3 of the Plan of Reorganization does not prelude the imposition of the trust fund recovery penalty against plaintiffs pursuant to § 6672.

**B. The *McCarty* decision may no longer be valid, has very limited applicability, and is entirely distinguishable from the facts of this case.**

Plaintiffs rely on the decision in *McCarty v. United States*, 194 Ct. Cl. 42, 437 F.2d 961 (1971), to support their "release from liability" argument. Specifically, they assert that *McCarty* stands for the proposition that responsible persons are released from "[§] 6672 liability when the IRS agrees to a payment plan and fails to take even minimal action to protect its interests when it has the means to do so." (Plaintiffs' Brief at 9.) Plaintiffs reliance is misplaced because the *McCarty* decision may no longer be valid, and any remaining validity is limited to situations very similar to the highly unusual facts of *McCarty* – facts not present in this case.

In *McCarty v. United States*, the taxpayer was the president of a government contractor that had failed to pay over the withheld employment taxes. 437 F.2d at 963. After the IRS served a notice of deficiency, the taxpayer's company and the IRS entered into an installment payment plan with an understanding that the IRS would file notices of tax liens which, absent default, would remain unenforced. *Id.* at 964. The company made

several installment payments until the Navy, pursuant to its contractual rights, usurped disbursement authority of the company's line of credit. *Id.* at 965. The Navy authorized two payments to the IRS, but then refused to honor the installment plan. *Id.* at 969. The court found that the Navy's refusal to make continued payments was a breach of the installment agreement. *Id.* The court then concluded that: "The IRS agreed to this [non-payment] plan as shown by its complete inaction and its failure to foreclose its tax liens on [taxpayer's company's] unencumbered property . . . . This amounted to a waiver by the IRS of its tax lien and this had the effect of absolving the plaintiff of liability for the delinquent taxes to this extent." *Id.*

In sum, the *McCarty* court absolved the taxpayer of § 6672 liability for the following reasons:

> [1] the unusual and exceptional facts of the case, [2] the lack of enforcement, [3] the waiver of the tax liens by the IRS, [4] the policy of the IRS not to collect the tax from the responsible officers of a company if the taxes can be collected from the company, and [5] the prejudicial treatment of the plaintiff by two arms of the government.

*Id.* at 968. In a concurring opinion, Judge Davis stated that the IRS's policy was crux of the decision; and in the absence of that policy, the court would have found the taxpayer liable regardless of the unusual and exception facts. *Id.* at 973-74. This policy was reflected in IR-Mem. No. 56-46, which stated that the IRS would assess responsible persons only after the IRS had determined that the withheld taxes could not be collected from the employer. *Id.* at 971-2. The court concluded that the policy statement barred the

IRS from assessing responsible persons unless the IRS had exhausted its attempts to collect the trust fund from the employer. *Id.* at 972.

**1. The IRS policy that was the central basis for the *McCarty* decision has changed, leaving the decision on shaky ground.**

IRS policy has changed since the *McCarty* decision was issued. The IRS no longer requires revenue officers to assess responsible individuals only after attempts to collect from the employer have failed as a result of IRS Policy Statement P-5-60, which was approved on February 2, 1993 (and is found in the Internal Revenue Manual at section 1.2.1.5.14).[5] Specifically, IRS Policy Statement P-5-60 permits revenue officers to assess the trust fund recovery penalty against responsible persons upon failure of the employer to pay over the withheld taxes:

> If a business has failed to collect or pay over income and employment taxes, . . . the trust fund recovery penalty may be asserted against those determined to have been responsible and willful in failing to pay over the tax . . . . The withheld income and employment taxes . . . will be collected only once, whether from the business, or from one or more of its responsible persons.

IRM 1.2.1.5.14 ¶ 1 (August 17, 2000). Indeed, IRS Policy Statement P-5-60 permits assessment against responsible individuals after the default of an installment agreement or bankruptcy plan: "Absent statute considerations, assertion recommendations normally will be withheld in cases of approved and adhered to business installment agreements and bankruptcy payment plans. To the extent necessary, information will be gathered to

---

[5]A copy of IRM 1.2.1.5.14 is included in the Appendix as Exhibit 17.

support a possible assessment in the event the agreement is defaulted." IRM 1.2.1.5.14 ¶ 6 (August 17, 2000).

The crux of *McCarty* is the former IRS policy statement which required collection from the employer before assessment of the trust fund recovery penalty against responsible persons. *See McCarty*, 437 F.2d at 974 (Davis, J., concurring). Given that the IRS policy changed significantly in 1993, more than 20 years after *McCarty* was decided, *McCarty* may no longer be valid, and it is certainly not persuasive.

**2. The *McCarty* decision should be limited to the unique facts of that case, facts which are not present here.**

Even if *McCarty* retains some validity, the decision resulted from the "unusual and exceptional facts" of the case, as the court noted. *Id.* at 968. Commenting on *McCarty*, other courts have limited the decision to its particular facts by asserting that *McCarty* stands for the narrow proposition that a responsible person may be "released from liability" when the Government is responsible for the nonpayment. *See Calderone v. United States*, 799 F.2d 254, 257 (6th Cir. 1986) ("We believe that . . . *McCarty* should be restricted to its facts, *viz*., to situations where the government somehow prevents the responsible persons from paying over the taxes."); *accord Muck*, 3 F.3d at 1382 n.2; *Gutherie*, 359 F. Supp. 2d at 699; *Cooper*, 539 F. Supp. at 122.

This court, too, has refused to apply the *McCarty* decision to other factual circumstances. In *Burack v. United States*, the taxpayer argued, relying on *McCarty*, that he should be released from liability because the IRS "frustrated" the employer's ability to

pay its delinquent taxes by agreeing to apportion between several creditors the value of an account receivable against which the IRS had noticed a lien. 198 Ct. Cl 855, 461 F.2d 1282, 1297 (1972). The court rejected the argument stating that there was no indication that the IRS's actions were "improper, unrealistic, or not made in good faith." *Id.* at 1298. The court rejected the taxpayer's argument that it was improper for the IRS to choose to receive only a portion of the asset when the IRS could have foreclosed on the lien. *Id.* at 1298. Thus, the *Burack* court refused to read *McCarty* broadly. Accordingly, to the extent *McCarty*, remains valid, it stands for a very limited principle.

Here, the IRS was not responsible for Reorganized Interstate's default on the bankruptcy plan payments, nor was the IRS responsible for plaintiffs' nonpayment of the payroll taxes when they were due. Plaintiffs cannot point to any IRS action that hindered Reorganized Interstate's ability to satisfy its obligations, let alone credibly demonstrate that the IRS usurped control of the company's assets. Indeed, it appears from the documents relied upon by plaintiffs in support of their motion for summary judgment that the IRS played a passive role in the bankruptcy proceedings. (See Exhibits B-F.) Since plaintiffs have failed to demonstrate that the IRS in any way prevented them or Reorganized Interstate from satisfying their obligations, the Court should decline to view the *McCarty* decision as precedent for this case – assuming it retains any validity.

In addition, the unique factual circumstances of *McCarty* are distinguishable from the facts of this case. As discussed, the IRS policy regarding the prioritization of collections as between employers and responsible persons has changed since *McCarty*.

IRS policy now permits recovery from responsible person without first attempting to collect from the employer. Here, the IRS's actions were consistent with its stated policy. Additionally, in *McCarty*, the Navy actually prevented the employer from paying over the withheld taxes, a fact not present here. Furthermore, in *McCarty*, the IRS acquiesced to the Navy's breach of the installment agreement. "The Service decided for itself to acquiesce in the Navy's wishes, and that Service decision automatically brought into operation the policy against collecting from the responsible person where the tax can be collected by the IRS from the corporation but is not." *McCarty*, 437 F.2d at 974 (Davis, J., concurring). Here, the IRS did not consent to a breach of the bankruptcy plan. To the contrary, the IRS notified the reorganized Interstate of its deficiency immediately after its default. (See Exhibits G, 6, 7, 8.) Plaintiffs have not pointed to any IRS action that foreclosed any available method for collecting the withheld tax.

Plaintiffs' attempts to analogize the facts of this case to those of *McCarty* are unpersuasive. For example, plaintiffs find it significant that there was an agreement between the IRS and the employer in both this case and in *McCarty*. As discussed in Point III, A, *supra*, the presence of an installment agreement or bankruptcy plan is legally irrelevant where the agreement does not expressly shield the responsible persons from liability. *See Muck*, 3 F.3d at 1382. That the IRS "assisted" in drafting the bankruptcy plan by providing sample default language to the parties is also irrelevant. *See Burack*, 461 F.2d at 1297-98 (refusing to shield the responsible persons from liability where the IRS took an active role in negotiating a settlement of the available assets). In addition,

plaintiffs claim that there are similarities because the IRS had the means to protect its interests, but failed to file a tax lien. However, in *McCarty* the IRS committed to a particular method of collection by first filing a tax lien, and then failing to foreclose on the tax lien. Here, the IRS did not commit itself to a particular mode of collection. Rather, the IRS was given the non-exclusive right in Section 3.3 of the Plan of Reorganization to file a federal tax lien in the event of default.

**C. The burden for asserting estoppel against the government is very high, and plaintiffs can not meet that burden in this case.**

Plaintiffs rely on *Mangieri v. United States*, 657 F. Supp. 726 (D. Md. 1986) for the proposition that a taxpayer cannot be held liable under § 6672 "when the IRS fails to take action to protect its interest when it has the means to do so." (Plaintiffs' Brief at 10.) By relying on the *Mangieri* decision, plaintiffs seek to equitably estop the government from assessing the trust fund recovery penalty against plaintiffs. *See Olsen v. United States*, 952 F.2d 236, 242 (8th Cir. 1991) (suggesting that *Mangieri*, in effect, addresses an assertion of equitable estoppel).

Traditionally, estoppel requires that the asserting party meet four elements:

> (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Richmond v. Office of Pers. Mgmt.*, 862 F.2d 294, 297 (Fed. Cir. 1988) *(rev'd on other grounds* 496 U.S. 414 (1990)). However, the government "may not be estopped on the

same terms as any other litigant." *Heckler v. Comty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 60 (1984). In addition to meeting the four traditional elements, the asserting party must, at minimum, demonstrate some form of affirmative misconduct. *See Zacharin v. United States*, 213 F.3d 1366, 1371 (Fed. Cir. 2000). Affirmative misconduct is an exacting standard which mirrors the courts' reluctance to apply equitable estoppel against the government. *See Melrose Assoc., L.P. v. United States*, 45 Fed. Cl. 56, 60 (1999) (describing affirmative misconduct as acting "in bad faith or recklessly, with an intent to injure the plaintiff, or with knowledge of the true facts."), *aff'd*, 4 Fed. Appx. 936 (Fed. Cir. 2001). *See also Conner Bros. Const. Co., Inc. v. United States*, 65 Fed. Cl. 657, 694 (2005) (noting that affirmative misconduct would include intentional deception)*; Hanson v. Office of Pers. Mgmt.*, 833 F.2d 1568, 1569 (Fed. Cir. 1987) (excluding good faith misrepresentations from affirmative misconduct). "Mere negligence, delay, inaction, or failure to follow agency guidelines does not constitute affirmative misconduct." *Board of County Commissioners of County of Adams v. Isaac*, 18 F.3d 1492, 1499 (10th Cir. 1994).

Plaintiffs have not met this burden. Plaintiffs have merely alleged that the IRS provided sample default language to the attorney preparing the bankruptcy Plan of Reorganization and then did not exercise its right to file a federal tax lien upon default by Reorganized Interstate. Plaintiffs fail to acknowledge that the IRS declined to accept the release of liability for responsible persons proposed by counsel for Sweepco. Plaintiffs also fail to explain that the filing of a federal tax lien is not, by itself, a means of

collection, and that the Plan of Reorganization does not limit the means of collection available to the IRS. Because the IRS's conduct was entirely appropriate, rather than affirmative misconduct, plaintiffs' attempt to estop the government should be rejected.

To the extent that plaintiffs cite *Mangieri* for a reason other than to assert estoppel, the decision is distinguishable from this case. In *Mangieri*, the taxpayer's company, delinquent in paying over withheld taxes, entered into an arrangement with the IRS, which agreed to accept assignment of an account receivable to satisfy the company's obligation. 657 F. Supp. at 727. The IRS failed to perfect the assignment and lost access to the asset after the company filed for bankruptcy. The IRS then assessed the taxpayer with the trust fund recovery penalty individually. *Id.*

Here, the IRS did not agree to collect the trust fund from a particular source and certainly did not mishandle that obligation. The IRS did not even limit itself to a single method of collection. Rather, the IRS accepted certain rights provided to it in Section 3.3 of the bankruptcy Plan of Reorganization, which included certain rights in the event of default. Instead of failing to collect by use of certain means to which it had agreed, the IRS simply made a determination that it would assess the trust fund recovery penalty against plaintiffs rather than attempting to collect the unpaid tax from Reorganized Interstate (a decision consistent with IRS policy). For these reasons this case completely differs from *Mangieri* and the Court should not be persuaded by the decision.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment should be denied.

Respectfully submitted,

s/Jennifer P. Wilson
JENNIFER P. WILSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6495
Fax (202) 514-9440

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
ROBERT J. HIGGINS
Reviewer

s/Robert J. Higgins
Of Counsel

July 13, 2006