IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-773 T and No. 06-169 T
(CONSOLIDATED)
(Chief Judge Damich)

DAVID SUNSHINE and KELLY T. HICKEL,

Plaintiffs

v.

THE UNITED STATES,

Defendant

**UNITED STATES' RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACTS**

Defendant, the United States, provides the following responses to plaintiffs' proposed findings of uncontroverted facts submitted in support of their motion for summary judgment in accordance with RCFC 56(h)(2):

1. Plaintiff David Sunshine resides at 5728 S. Galena Street, Greenwood Village, Colorado 80110.

**Defendant's Response**: The United States agrees with the finding as stated.

2. Plaintiff Kelly T. Hickel resides at 102 Creek Court, Longmont, Colorado 80503.

**Defendant's Response**: The United States agrees with the finding as stated.

3. The defendant is the United States of America.

**Defendant's Response**: The United States agrees with the finding as stated.

4. This case involves the assessment of penalties under Section 6672 of the Internal Revenue Code of 1986, as amended ("IRC"), for unpaid federal employment taxes ("Payroll Taxes") due from Interstate Sweeping, Ltd. (Interstate) for the second, third and fourth quarters of the 1999 calendar year.

**Defendant's Response**: The United States agrees with the finding as stated.

5. On or about November 14, 2003, the Defendant assessed against each of the Plaintiffs penalties under IRC Section 6672 for unpaid federal employment taxes due from Interstate for the following calendar quarters and amounts:

| Quarter Ended | Amount |
|---|---|
| June 30, 1999 | $3.94 |
| September 30, 1999 | $13,401.75 |
| December 31, 1999 | $155,616.32 |
| Total | $169,022.01 |

**Defendant's Response**: The United States agrees with the finding as stated.

6. On or about January 13, 2004, each plaintiff submitted payment in the amount of $100 for each calendar quarter referenced in paragraph 5, for a total of $300 for each plaintiff.

**Defendant's Response**: The United States agrees with the finding as stated.

7. Sometime in December 2003 or January 2004, each plaintiff filed a Form 843, Claim for Refund or Request for Abatement, with the Internal Revenue Service for each calendar quarter referenced in paragraph 5, claiming a refund of the penalties paid and requesting an abatement of the penalties assessed.

**Defendant's Response**: The United States agrees with the finding as stated.

8. By notice of disallowance dated March 23, 2004, the Internal Revenue Service notified the plaintiffs that it had disallowed the plaintiffs' claims for refunds and abatement of penalties pursuant to Section 6672.

**Defendant's Response**: The United States agrees with the finding as stated.

9. On July 21, 2005, plaintiffs filed the instant refund suit in the United States Court of Federal Claims.

**Defendant's Response**: The United States disagrees with the finding as stated because plaintiffs filed their complaint on July 22, 2005, rather than July 21, 2005.

10. On October 19, 2005, defendant filed its Answer and Counterclaim. The Counterclaim seeks recovery against the plaintiff David Sunshine in the amount of the 6672 penalty ($169,022.01) less plaintiff's $300 payment. The Counterclaim seeks recovery against the plaintiff Kelly Hickel in the amount of the 6672 penalty ($169,022.01) less plaintiff's $300 payment.

**Defendant's Response**: The United States disagrees with the finding as stated because our counterclaims seek a judgment against each plaintiff in the amount of the Section 6672 penalty ($169,022.01) in addition to any assessed interest, less plaintiffs' $300 payments and any credits that may have been applied by the IRS.

11. On or about April 15, 2001, the Internal Revenue Service applied $13,103.79 of plaintiff David Sunshine's overpayment from the year 2000 to satisfy a portion of the penalties assessed for the period ending September 30, 1999 and applied $16,530.94 of plaintiff David Sunshine's overpayment from the year 2000 to satisfy a portion of the penalties assessed for the period ending December 31, 1999.

**Defendant's Response**: The United States agrees with the finding as stated.

12. On or about July 21, 2005, plaintiff David Sunshine filed a claim for refund in the amount of $31,696.00 with the Internal Revenue Service at Austin, Texas.

**Defendant's Response**: The United States agrees with the finding as stated.

13. Because six months had not elapsed from the time plaintiff David Sunshine filed his claim for refund in the amount of $31,696 and filing the complaint on July 21, 2005 (Case No. 05-773 T), as required by Section 6532(a), plaintiff David Sunshine filed a separate complaint on March 13, 2006 in Case No. 06-169 T.

**Defendant's Response**: The United States disagrees with the finding as stated because plaintiff David Sunshine's complaint in Case No. 06-169 T was filed on March 6, 2006.

14. An Order consolidating Case No. 05-773 T and Case No. 06-169 T was issued by this Court on March 14, 2006.

**Defendant's Response**: The United States agrees with the finding as stated.

15. On February 11, 1999, Interstate filed a bankruptcy petition in the United States Bankruptcy Court, District of Colorado, under Chapter 11 of the Bankruptcy Code.

**Defendant's Response**: The United States agrees with the finding as stated.

16. During the bankruptcy proceeding, Interstate is identified as the debtor-in-possession.

**Defendant's Response**: The United States agrees with the finding as stated.

17. The unpaid federal employment taxes for which the plaintiffs have been assessed penalties under Section 6672 were incurred during the second, third and fourth quarters of 1999, during which time Interstate was under the jurisdiction of the Bankruptcy Court.

**Defendant's Response**: The United States agrees with the finding as stated, but objects on the ground that the jurisdiction of the Bankruptcy Court has no bearing on Interstate's failure to make post-petition payroll tax deposits.

18. On December 29, 1999, the Fifth Amended Joint Plan of Reorganization of Interstate Sweeping, Ltd., IG Services Group, LLC and Sweepco, LLC ("Sweepco") was filed with the Bankruptcy Court, of which Sweepco was a co-proponent.

**Defendant's Response**: The United States agrees with the finding as stated.

19. The Fifth Amended Joint Plan of Reorganization, as re-submitted on March 2, 2000, was confirmed by the Bankruptcy Court, effective March 2, 2000, a copy of which is attached hereto as Exhibit A (the "Plan of Reorganization").

**Defendant's Response**: The United States agrees with the finding as stated.

20. By a letter dated February 17, 2000, a copy of which is attached hereto as Exhibit B, Sweepco stated to the Internal Revenue Service that the reorganized Interstate (the "Reorganized Interstate") would "pay the trust fund portion of the taxes due post-petition."

**Defendant's Response**: The United States agrees with the finding as stated.

21. In a letter delivered to the Internal Revenue Service on February 22, 2000, a copy of which is attached hereto as Exhibit C, Sweepco set forth its proposal in full settlement of the Payroll Taxes.

**Defendant's Response**: The United States disagrees with the finding as stated because it does not adequately describe the February 22, 2000 correspondence.

**Defendant's Proposed Revised Finding**: In a letter dated February 22, 2000, Sweepco, the co-proponent of the bankruptcy plan that would assume control of the reorganized company after confirmation, set forth a proposal "in full settlement of all outstanding claims by the Internal Revenue Service" for certain pre-petition and post-petition payroll taxes owed by Interstate. Among the terms proposed, Sweepco proposed that the "settlement is a complete settlement of all claims for payroll taxes payable to the Internal Revenue Service for such periods including, but not limited to, a release of all liability for the 100% penalty assessable against any responsible officer or person of the taxpayer." (Exhibit C, ¶ 5.)

22. As evidenced by the facsimile dated February 23, 2000, a copy of which is attached hereto as Exhibit D, the Internal Revenue Service provided language to be included in the Plan of Reorganization.

**Defendant's Response**: The United States disagrees with the finding as stated because it mischaracterizes the February 23, 2000, fax from the Internal Revenue Service.

**Defendant's Proposed Revised Finding**: In a fax dated February 23, 2000, the Internal Revenue Service provided sample default language to Glen Keller, counsel for Interstate.

23. By letter dated February 23, 2000, a copy of which is attached hereto as Exhibit E, the Internal Revenue Service stated that it did not object to the provision for its priority claim in the Plan of Reorganization.

**Defendant's Response**: The United States agrees with the finding as stated.

24. By letter dated February 24, 2000, a copy of which is attached hereto as Exhibit F, Sweepco stated that the "Reorganized Interstate has the obligation to file returns and pay taxes and its default triggers the default provisions" of the Plan of Reorganization. This letter was signed by Mara Eckhardt of the Internal Revenue Service, indicating the Internal Revenue Service did not object to the modifications of the Plan of Reorganization.

**Defendant's Response**: The United States disagrees with the finding as stated because it incorrectly states that the February 24, 2000 letter was authored by Sweepco. In fact, the letter was authored by Glen Keller, counsel for Interstate.

25. Section 3.3 of the Plan of Reorganization set forth the remedies available to the Internal Revenue Service in the case of default, which included filing federal tax liens.

**Defendant's Response**: The United States disagrees with the finding as stated because it mischaracterizes Section 3.3 of the Plan of Reorganization.

**Defendant's Proposed Revised Finding**: Section 3.3 of the Plan of Reorganization sets forth the priority tax claim of the Internal Revenue Service for Interstate's pre-petition and post-petition payroll taxes. Section 3.3 also identifies the events that shall constitute a default under the Plan, and provides the following explanation of the Internal Revenue Service's rights in the event of default:

> Upon the occurrence of an event of default and provided notice has been given and the procedures followed as provided below, the IRS shall have the following rights: (a) The IRS shall have the right to declare due and payable and assess any interest or penalties which would have accrued on the pre-petition federal tax liabilities of the Debtors but for the filing of the bankruptcy petition; (b) the IRS shall have the right to proceed against the Reorganized Debtor or its assets to collect any of the pre-petition or pre-confirmation tax liabilities and related interest and penalties, including interest and penalties through use of the administrative or judicial collection procedures available to the IRS under the Internal Revenue Code as if no bankruptcy petition had been filed. Such procedures shall include but are not limited to the following: (i) the filing of notices of federal tax liens. (c) In its sole discretion, the IRS shall also have the right to seek an order, after notice and a hearing, providing for the immediate conversion of the case to one under Chapter 7 subject to the procedures described above in this Plan. (d) The IRS's failure to act on any default shall not constitute a waive [sic] by the IRS of the right to act on such default.

(Exhibit A.) Section 3.3 of the Plan of Reorganization does not include a release of liability under Section 6672 of the Internal Revenue Code, as requested by counsel for Sweepco in the February 22, 2000 letter. (*See* Exhibit C, ¶ 5.)

26. The Internal Revenue Service failed to file a notice of federal tax lien.

**Defendant's Response**: The United States disagrees with the finding as stated because it implies that the Internal Revenue Service had an obligation to file a notice of federal tax lien, which it did not.

**Defendant's Proposed Revised Finding**: Upon default by the Reorganized Debtor, the Internal Revenue Service had the right, but not the obligation, to file a notice of federal tax lien, but did not do so.

27. Pursuant to Section 8.1 of the Plan of Reorganization, Sweepco obtained all of the outstanding stock of Interstate upon confirmation of the Plan of Reorganization.

**Defendant's Response**: The United States disagrees with the finding as stated because it mischaracterizes the language of Section 8.1. In addition, the United States objects on the ground that the finding is irrelevant to the issues raised by plaintiffs' motion.

28. According to the notice of default dated May 26, 2000, a copy of which is attached hereto as Exhibit G, the Reorganized Interstate, then under the control of Sweepco, defaulted on the payments of the Payroll Taxes required by Section 3.3 of the Plan of Reorganization.

**Defendant's Response**: The United States disagrees with the finding as stated because the May 26, 2000 notice of default is addressed to the Chief Financial Officer of Interstate Sweeping, and makes no reference to Sweepco. Moreover, the United States objects to the finding as stated because it fails to reference the subsequent notices of default issued to Interstate Sweeping on February 27, 2001, September 21, 2001, and October 29, 2001.

**Defendant's Proposed Revised Finding**: The reorganized Interstate Sweeping received notices of default from the Internal Revenue Service regarding the monthly installment payments required by the Plan of Reorganization on May 26, 2000, February

27, 2001, September 21, 2001, and October 29, 2001. A copy of the May 26, 2000 notice is attached to plaintiffs' proposed findings as Exhibit G, and copies of the February 27, 2001, September 21, 2001, and October 29, 2001 notices are included in the Appendix attached to the United States' Brief in Opposition to Plaintiffs' Motion for Summary Judgment as Exhibits 6, 7, and 8.

29. The Chapter 11 Final Report filed by the Reorganized Interstate on May 9, 2001, a copy of which is attached hereto as Exhibit H, indicated that the Reorganized Interstate had cash in the amount of $171,993.29 which was in excess of the amount assessed against each of the plaintiffs.

**Defendant's Response**: The United States disagrees with the finding as stated because it erroneously states that the Chapter 11 Final Report indicated that the Reorganized Interstate had cash in the amount of $171,993.29. In fact, the Post-confirmation Quarterly Report for the quarter ending March 31, 2001, which was attached to the Final Report, indicated that the Reorganized Interstate had a cash balance of $171,993.29 as of the end of the quarter. (*See* Exhibit H.) In addition, the United States objects to the portion of the finding that states that the cash balance of Reorganized Interstate was "in excess of the amount assessed against each of the plaintiffs" because the statement is irrelevant to the core issue of plaintiffs' liability under Section 6672 and also irrelevant to the issues raised by plaintiffs' motion.

Respectfully submitted,

s/Jennifer P. Wilson

JENNIFER P. WILSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6495
Fax (202) 514-9440

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
ROBERT J. HIGGINS
Reviewer

s/Robert J. Higgins

Of Counsel

July 13, 2006