IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Nos. 05-773 T and 06-0169 T (Consolidated)
(Chief Judge Damich)

DAVID SUNSHINE and
KELLY T. HICKEL,

Plaintiffs

v.

UNITED STATES OF AMERICA,

Defendant

# PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR CORRECTED MOTION FOR SUMMARY JUDGMENT

Theodore Z. Gelt
GELT & GRASSGREEN P.C.
303 East 17th Avenue, Suite 910
Denver, Colorado 80203
Telephone: (303) 830-1200
Facsimile: (303) 830-9400

ATTORNEY FOR PLAINTIFFS

TABLE OF CONTENTS

Page

Argument . . . . . . . . . . 2

I. Plaintiffs undertook all reasonable steps to ensure that the unpaid Payroll Taxes would be paid and therefore did not act willfully as required by section 6672 . . . . . . . . . . 2

II. The Issue of whether or not Plaintiffs' were Responsible Parties was not raised in Plaintiff's Corrected Motion for Summary Judgment . . . . . . . . . . 6

III. The IRS agreed to the Plan of Reorganization which set forth it's specific remedies in the case of default by the Reorganized Interstate . . . . . . . . . . 7

IV. Application of the *McCarty* case . . . . . . . . . . 9

V. Plaintiffs have not raised the issue of Equitable Estoppel . . . . . . . . . . 9

Conclusion. . . . . . . . . . . 11

SUPPLEMENTAL
EXHIBIT LIST
(Separately Bound)

I. Disclosure Statement to Interstate Sweeping, Ltd., IG Services Group, LLC and Sweepco, LLC Joint Plan of Reorganization, filed in the United States Bankruptcy Court for the District of Colorado in the matter of Interstate Sweeping, Ltd. Case No. 99-11500, dated June 23, 1999.

J. Interstate Sweeping, Ltd, IG Services Group, LLC and Sweepco, LLC Joint Plan of Reorganization, filed in the United States Bankruptcy Court for the District of Colorado in the matter of Interstate Sweeping, Ltd. Case No. 99-11500, dated June 7, 1999.

K. Transcript excerpts from deposition of David Sunshine taken on May 3, 2006, in this case.

L. Transcript excerpts from deposition of Glen Keller taken on June 15, 2006, in this case.

# SUPPLEMENTAL
# TABLE OF AUTHORITIES

Page

*United States v. Energy Resources, Co., Inc.*,
495 U.S. 545, (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Nos. 05-773 T and 06-0169 T (Consolidated)
(Chief Judge Damich)

DAVID SUNSHINE and
KELLY T. HICKEL,

Plaintiffs

v.

UNITED STATES OF AMERICA,

Defendant

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' CORRECTED MOTION FOR SUMMARY JUDGMENT

In opposing Plaintiffs' Corrected Motion for Summary Judgment, Defendant "may not rest upon the mere allegation or denials ... but ... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Rules of the United States Court of Federal Claims 56(e).

Summary judgment is appropriate where the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c). In determining whether a genuine issue of material fact exists, the court must view all facts and reasonable inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., v. Zenith Radio, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed 2nd 538, (1986.)

Defendant has failed to offer any facts that create a genuine issue for trial on the issue of willfulness. The Plaintiffs are therefore entitled to judgment as a matter of law.

## ARGUMENT

The unpaid federal employment taxes ("Payroll Taxes") for which the Plaintiffs were assessed in this case, occurred after Interstate Sweeping, Ltd. ("Interstate"), the debtor company, filed for bankruptcy protection in February of 1999. The Payroll Taxes are attributable to the second, third and fourth quarters of 1999. The decision to file for bankruptcy was made because of the deteriorating financial situation of Interstate, which was unable to meet its daily operating expenses or service its debt obligations.

Under these circumstances, the Plaintiffs undertook all reasonable steps to ensure that the unpaid Payroll Taxes would be paid. Further, the Internal Revenue Service ("IRS") in this case failed to take any action to protect its interests and collect the amounts due, even where funds were available to satisfy the outstanding tax liability, and agreed to the exclusive remedies under the Plan of Reorganization.

### I. Plaintiffs undertook all reasonable steps to ensure that the unpaid Payroll Taxes would be paid and therefore did not act willfully as required by section 6672.

In its Brief in Opposition to Plaintiffs' Motion for Summary Judgment, Defendant argues that Plaintiffs' attempts to ensure the unpaid Payroll Taxes would be paid by the Reorganized Interstate do not negate willfulness on behalf of the Plaintiffs. Defendant is clearly in error.

In its Corrected Motion for Summary Judgment, Plaintiffs rely on this Court's decision in *Cook v. United States*, 52 Fed. Cl. 62 (2002) which quoted language from an earlier decision in *Feist v. United States*, 221 Ct. Cl. 531, 607 F.2d 954 (Ct. Cl. 1970) that willfulness can be negated by an affirmative showing that the responsible person did not disregard his duties, and

where the responsible party "undertook all reasonable efforts to see that such taxes would in fact be paid, in circumstances where the employer had the means of payment and could reasonably be expected to make the payment." In the instant case, Plaintiffs undertook all reasonable efforts to ensure that the taxes would in fact be paid by specifically providing for payment of those taxes in the Fifth Amended Joint Plan of Reorganization (Exhibit A.) and in arranging to have Sweepco, the co-proponent of the Plan of Reorganization and debtor-in-possession lender, agree to be responsible for those payments. (Exhibit B.) Since *Cook* is a decision of this Court and *Feist* is a decision of this Court's predecessor, the United States Court of Claims, it is clear this Court has already recognized the validity of this argument.

Defendant cites *Anderson v. United States*, 855 F. Supp. 236 (N.D. Ill. 1994) and *United States v. Sage*, 412 F. Supp., 2d 406 (S.D.N.Y. 2006) for the proposition that a responsible person's attempt to procure payment of payroll taxes from a third party will not negate willfulness in failing to deposit the payroll taxes when they are due. (Defendant's Response Brief at 9, 10.) However, both *Anderson* and *Sage* are distinguishable from the instant case. The unpaid Payroll Taxes for which the Plaintiffs have been assessed are attributable to the second, third and fourth quarters of 1999, during which time Interstate was under the jurisdiction of the bankruptcy court.

In the case of bankrupt Interstate, Sweepco, LLC ("Sweepco") was identified as a potential lender and became a co-proponent of the Plan of Reorganization. *See* Exhibit I at 7. Thus as early as June of 1999, Sweepco, committed to pay the administrative claims, including the unpaid Payroll Taxes, upon confirmation of the Plan of Reorganization. Unfortunately, the confirmation of the final Plan of Reorganization took several months. However, the initial Joint Plan of Reorganization was filed with the Bankruptcy Court on June 7, 1999 and included a

provision whereby the payroll taxes would be paid. Through no fault of the Plaintiffs, the Plan was subsequently amended five times. (Exhibit J.) The Fifth Amended Joint Plan of Reorganization was ultimately confirmed by the Bankruptcy Court on March 2, 2000. (Exhibit A.)

Thus, at the beginning of the bankruptcy process, the Plan of Reorganization contained a mechanism to pay the administrative claims of the debtor corporation, including any unpaid Payroll Taxes, and this arrangement, once funded, would have provided for the payment for the unpaid Payroll Taxes. It is important to note that the IRS did not have to agree to an installment payment under the plan, because there were sufficient assets to allow the IRS to collect in full.

The mere fact that the bankruptcy process drew out until March of 2000 should not be held against the Plaintiffs. Plaintiffs began arranging for payment even before the second quarter 1999 taxes were due. Defendant wrongfully tries to assert that Plaintiffs only retroactively and belatedly attempted to have the taxes paid, apparently acknowledging that if Plaintiffs had attempted to have the taxes paid, Plaintiffs would not be liable in this case. Further, inferred from Defendant's own argument is that if Plaintiffs did attempt to have the taxes paid timely, the Plaintiffs would not, as a matter of law, be willful. Such is the case. Therefore, Plaintiffs should, as a matter of law, be held by this Court not to be willful.

Defendant argues that Plaintiffs' role in procuring IRS approval of the Plan of Reorganization is a disputed fact. (Defendant's Response Brief at 15.) Defendant is in error. The evidence in this case, including the depositions of Mr. Sunshine, Mr. Hickel and Mr. Keller, reveal that the Plaintiffs worked directly with Mr. Keller, who was the bankruptcy attorney and who was directly involved with the negotiations with the IRS. In fact, it was Mr. Sunshine that hired Mr. Keller to represent Interstate Sweeping, Ltd. and IG Services Group, LCC in the

bankruptcy proceeding. *See* Exhibit K at 25:10-15. Thus, to the extent Mr. Keller was involved in negotiations with the IRS, so were the Plaintiffs. Further, Mr. Sunshine stated that he worked with Mr. Keller almost every day regarding the bankruptcy proceedings and that Mr. Keller kept Mr. Sunshine informed as to the negotiations that occurred with the IRS. *Id.* at 80:12-14; 86:3-6.

Mr. Keller was present at the February 22, 2000 meeting with Patricia Taylor of the IRS, which is referenced in the letter dated February 22, 2000, which was signed by Neil Goff, Esq. (Exhibit C.) As Mr. Keller indicated in his deposition, Mr. Goff's letter served to memorialize the discussions that took place during that meeting, which included a discussion regarding release of liability for the 100 percent penalty assessable against any responsible officer or person of the taxpayers. *See* Exhibit L at 53:14-19; 55:6-17. Mr. Keller further stated that it was his obligation to prepare the actual language of the Plan of Reorganization to reflect the agreement the parties had reached at the meeting on February 22. *Id.* at 59:5-11.

Also, Defendant refers to the Reorganized Interstate as a "third party." (Defendant's Response Brief at 9.) This characterization of Reorganized Interstate as merely a third party is misleading. The Reorganized Interstate was the entity which emerged from the bankruptcy proceeding and should be considered more than a third party. Sweepco stated to the Internal Revenue Service the letter dated February 17, 2000 that the Reorganized Interstate would be responsible for the unpaid Payroll Taxes. (Exhibit B.) Further, it was more than reasonable on the part of the Plaintiffs to rely on the promise that the unpaid Payroll Taxes would in fact be paid by the Reorganized Interstate, which had the requisite funds to do so.

Defendant also states that even though Reorganized Interstate may have had sufficient cash assets to pay the entire liability as of May 9, 2001, this fact is irrelevant since the Reorganized Interstate was not obligated to pay the entire tax liability as of May 9, 2001.

(Defendant's Response Brief at Footnote No. 3, page 11). But the fact that the Reorganized Interstate had sufficient cash assets to the pay the entire liability as of May 9, 2001 is exactly the point. When the Reorganized Interstate defaulted on its payments to the IRS, the unpaid balance was immediately accelerated and the IRS had the immediate right to collect the full balance, not just the installment amount then due. It was at this time that the IRS could have filed a lien and used that mechanism to collect the entire balance of the amount due ($169,022.01), since the Reorganized Interstate had sufficient cash assets to satisfy the liability on that date. The IRS, however, failed to take action to protect its interest by not attempting to collect the amounts due.

**II. The Issue of whether or not Plaintiffs' were Responsible Parties was not raised in Plaintiff's Corrected Motion for Summary Judgment.**

Defendant states that the appearance of Mr. Sunshine's signature on Interstate's payroll and operating account checks is a contested factual issue. (Defendant's Response Brief at 14, 15.) The issue of the checking signing authority speaks to the issue of whether the Plaintiffs were responsible persons. The issue of whether the Plaintiffs were responsible persons, however, was not an issue raised in Plaintiffs' Corrected Motion for Summary Judgment. In fact, Plaintiffs concede for purposes of their Correction Motion for Summary Judgment, that they are responsible persons. Defendant's discussion regarding Mr. Sunshine's signature on Interstate's payroll and operating accounts is therefore irrelevant to the Court's ruling on Plaintiffs' Correction Motion for Summary Judgment as to the issue of willfulness.

**III. The IRS agreed to the Plan of Reorganization which set forth it's specific remedies in the case of default by the Reorganized Interstate**

Defendant also states that "the presence of an installment agreement or bankruptcy plan is legally irrelevant where the agreement does not expressly shield the responsible persons from liability." (Defendant's Response Brief at 17). Release from liability for the responsible person

was exactly the result of the negotiations with the IRS. Mr. Keller, the attorney who represented Interstate Sweeping, Ltd. and IG Services Group, LCC during the bankruptcy proceeding, testified that when he left the meeting with the IRS on February 22, 2000, he had the understanding that Ms. Taylor of the IRS agreed with what was settled upon, that is, there would be a release of liability of individual responsible officers. *See* Exhibit L at 56:19-25; 57:1-5.

When asked whether there was an agreement between the attorneys and the IRS that there would be a release of liability, Mr. Keller further stated in his deposition that he thought such an agreement did exist. Mr. Keller stated that "the way this is phrased and termed as to what the IRS's rights are at the end of the plan in the event of a default, does not include the right to seek a hundred percent penalty against anybody. And I was satisfied that that incorporated the spirit of what we'd agreed." Exhibit L at 62:11-19. Mr. Keller further states that "[m]y understanding is that the IRS's rights are limited by the terms that are set forth in the confirmed plan." *Id.* at 63:1-3.

There is no evidence in this case that the IRS representatives, Patricia Taylor or Mara Eckhardt, refuted the belief held by Mr. Keller, Mr. Sunshine and Mr. Kelly that an agreement had been reached in this regard. For example, there is no correspondence from the IRS specifically refuting the statement in the letter dated February 22, 2002 from Neil Goff, Esq. Given the importance of such an issue, the duty undoubtedly rested on the shoulders of the IRS representatives to clarify the IRS' position regarding issue of the hundred percent penalty.

Mr. Keller, who is a former bankruptcy judge, also stated that "the plan as it's written constituted an order of the Court when it is confirmed, and it binds all of the parties, creditors and debtors alike, to its terms. And people don't have other rights that arise separately than under the terms of the plan. I think there's considerable case law that says this changes the rights

of the parties to the plan." *See* Exhibit L at 63:22-25; 64:1-5. In fact, the Supreme Court has acknowledged the broad authority of the bankruptcy courts to modify creditor-debtor relationships. *See United States v. Energy Resources, Co., Inc.*, 495 U.S. 545, 110 S. Ct. 2139, 109 L.Ed. 2d 580 (1990).

Defendant states that the presence of an installment agreement bankruptcy plan does not abrogate liability unless that agreement specifically shields the responsible person from liability. (Defendant's Brief at 17.) Defendant further states that the plain language of language of Section 3.3 does not release any responsible persons from liability. (Defendant's Brief at 18.) But such statements are misleading since, as described by Mr. Keller in his deposition, this is exactly what the Plan of Reorganization purported to do in this case. *See* Exhibit L at 56:19-25; 57:1-5.

Defendant states that Plaintiffs interpret the language of section 3.3 of the Plan of Reorganization as "foreclosing all means of collection ordinarily available to the IRS, except for the filing of tax liens." (Defendant's Brief at 17.) To the contrary, Plaintiffs specifically acknowledged that the Plan of Reorganization provided for several remedies available to the IRS, including the right to file tax liens, in the event the Reorganized Interstate defaulted on the payments under the Plan. *See* Plaintiffs' Brief in Support of Corrected Motion for Summary Judgment at page 12. The issue, however, is that the IRS failed to take any action to collect the amounts due from the Reorganized Interstate, including failing to file a tax lien or utilizing any other means of protecting its interests or any other means of collection. This is a critical factor given the fact that the Reorganized Interstate had the funds to satisfy the tax liability.

Defendant also states that "the IRS played a passive role in the bankruptcy proceedings." (Defendant's Response Brief at 23.) To the contrary, the IRS was actively involved in

negotiations with the respective parties involved in the bankruptcy proceedings regarding the unpaid Payroll Taxes and even proposed language that was to be used in the Plan of Reorganization. (Exhibits B, C, D, E and F.)

**IV. Application of the *McCarty* case**

Defendant argues that the decision of the United States Claims Court in *McCarty v. United States*, 194 Ct. Cl. 42, 437 F.2d 961 (1971) may no longer be valid. The *McCarty* case has not been overruled and is therefore reliable authority. The facts in this case as they related to the issue at hand are substantially similar to the facts in *McCarty* in that Interstate entered into an agreement with the IRS regarding its obligations to pay unpaid Payroll Tax. If the Reorganized Interstate failed to make any of the payments under the agreement, thus defaulting under the agreement, the IRS was afforded several remedies in the Plan of Reorganization, including the right to file a tax lien against the Reorganized Interstate.

The Reorganized Interstate did ultimately default on its installment obligation but the IRS failed to foreclose on its tax lien or to take any steps to collect the amounts due, which is similar to the IRS' failure to foreclose its tax lien against the defaulting company in the *McCarty* case. A key factor in *McCarty* was that the delinquent taxes could have been collected from the defaulting company, since there was property of sufficient value against which the IRS could have foreclosed upon but the IRS failed to do so. The same is true here.

**V. Plaintiffs have not raised the issue of Equitable Estoppel**

Plaintiffs did not raise the issue of collateral estoppel in their Corrected Motion for Summary Judgment; therefore, the Defendant's arguments regarding this issue are misplaced. (Defendant's Response Brief at 25, 26.) This case is different from the classic estoppel case. In the classic case of estoppel, a party sues the government for damages it suffered resulting from

advice given by the government, upon which the other party detrimentally relied. In this case, it is the government itself that is attempting to collect from Plaintiffs, based on the government's breach of its own agreement to release the Plaintiffs. If the taxpayer can't rely on the government in this case, when can it?

Defendant also argues that this case completely differs from *Mangieri v. United States*, 657 F. Supp 726 (D. Md. 1986). (Defendant's Response Brief at 27.) Defendant is in error. In *Mangieri*, the taxpayer reached an agreement with the IRS whereby the taxpayer assigned its rights to collect on a contract with the United States Army to satisfy the outstanding withholding tax obligation. The IRS failed to secure the assignment and the payments due under the contract were paid to creditors other than the IRS.

Similar to *Mangieri*, the IRS in this case had the ability to collect the amounts owed by the Reorganized Interstate. Once the Reorganized Interstate defaulted on its obligation to pay the withholding taxes under the Plan of Reorganization, the IRS had the immediate right to file a tax lien against the Reorganized Interstate to protect its interests. The government failed to do just that or to take any steps toward collecting the outstanding tax liability. The government indicated in its Response that "...the IRS notified the reorganized Interstate of its deficiency immediately after its default." But the Defendant has not offered any evidence that the government took action to file a tax lien, or to take any other steps, to protect its interests. In fact, Defendant acknowledges that the IRS did not file a notice of federal tax lien as set forth in the Plan of Reorganization. *See* Item No. 25 of Defendant's Response to Plaintiffs' Proposed Findings of Uncontroverted Facts.

The reason why the IRS did not pursue its rights under the Plan of Reorganization remains a mystery. Given the unstable financial status of the corporate debtors in this case, the IRS should have moved quickly to protect its interests but it did not.

## CONCLUSION

The evidence in this case demonstrates that Plaintiffs were not willful and therefore they cannot be held liable under 6672 because they took all reasonable steps to ensure that the unpaid Payroll Taxes would be paid. The unique facts in this case are that the unpaid Payroll Taxes were incurred while the debtor was under the jurisdiction of the bankruptcy court. Further, as a matter of law, Plaintiffs were released from liability where the IRS had the means to collect the unpaid Payroll Taxes but failed to take even minimal action to protect its interests and had agreed to exclusive remedies in the Plan of Reorganization.

For the reasons set forth above, Plaintiffs respectfully request that this Court enter summary judgment in their favor.

Date: July 31, 2006

Respectfully submitted,

/s/ Theodore Z. Gelt
Theodore Z. Gelt

GELT & GRASSGREEN P.C.
303 East 17th Avenue, Suite 910
Denver, Colorado 80203
Telephone: (303) 830-1200
Facsimile: (303) 830-9400

ATTORNEY FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of Plaintiffs' Reply Brief in Support of Their Corrected Motion for Summary Judgment, Plaintiffs' Reply to Defendant's Response to Plaintiffs' Proposed Findings of Uncontroverted Facts, and Plaintiffs' Response to Defendant's Proposed Findings of Uncontroverted Facts was mailed to the following on this 31st day of July, 2006:

Jennifer Wilson, Esq.
U.S. Department of Justice, Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044

Sandy Nelson

GELT & GRASSGREEN P.C.
303 East 17th Avenue, Suite 910
Denver, Colorado 80203
Telephone: (303) 830-1200
Facsimile: (303) 830-9400