IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Nos. 05-773 T and 06-0169 T (Consolidated)
(Chief Judge Damich)

DAVID SUNSHINE and
KELLY T. HICKEL,

Plaintiffs

v.

UNITED STATES OF AMERICA,

Defendant

PLAINTIFFS' REPLY TO DEFANDANT'S RESPONSE TO
PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACTS

The Plaintiffs submit the following replies to Defendant's responses to Plaintiffs' proposed findings of uncontroverted facts:

1. Plaintiff David Sunshine resides at 5728 S. Galena Street, Greenwood Village, Colorado 80110.

**Defendant's Response:** The United States agrees with the finding as stated.

**Plaintiffs' Reply:** None required.

2. Plaintiff Kelly T. Hickel resides at 1002 Creek Court, Longmont, Colorado 80503.

**Defendant's Response:** The United States agrees with the finding as stated.

**Plaintiffs' Reply:** None required.

3. The defendant is the United States of America.

**Defendant's Response:** The United States agrees with the finding as stated.

**Plaintiffs' Reply:** None required.

4. This case involves the assessment of penalties under Section 6672 of the Internal Revenue Code of 1986, as amended ("IRC"), for unpaid federal employment taxes ("Payroll Taxes") due from Interstate Sweeping, Ltd. (Interstate) for the second, third and fourth quarters of the 1999 calendar year.

**Defendant's Response:** The United States agrees with the finding as stated.

**Plaintiffs' Reply:** None required.

5. On or about November 14, 2003, the Defendant assessed against each of the Plaintiffs penalties under IRC Section 6672 for unpaid federal employment taxes due from Interstate for the following calendar quarters and amounts:

| Quarter Ended | Amount |
|---|---|
| June 30, 1999 | $3.94 |
| September 30, 1999 | $13,401.75 |
| December 31, 1999 | $155,616.32 |
| Total | $169,022.01 |

**Defendant's Response:** The United States agrees with the finding as stated.

**Plaintiffs' Reply:** None required.

6. On or about January 13, 2004, each plaintiff submitted payment in the amount of $100 for each calendar quarter referenced in paragraph 5, for a total of $300 for each plaintiff.

**Defendant's Response:** The United States agrees with the finding as stated.

**Plaintiffs' Reply:** None required.

7. Sometime in December 2003 or January 2004, each plaintiff filed a Form 843, Claim for Refund and Request for Abatement, with the Internal Revenue Service for each calendar quarter referenced in paragraph 5, claiming a refund of the penalties paid and requesting an abatement of the penalties assessed.

**Defendant's Response:** The United States agrees with the finding as stated.

**Plaintiffs' Reply:** None required.

8. By notice of disallowance dated March 23, 2004, the Internal Revenue Service notified the plaintiffs that it had disallowed the plaintiffs' claims for refunds and abatement of penalties assessed pursuant to Section 6672.

**Defendant's Response:** The United States agrees with the finding as stated.

**Plaintiffs' Reply:** None required.

9. On July 21, 2005, plaintiffs filed the instant refund suit in the United States Court of Federal Claims.

**Defendant's Response:** The United States disagrees with the finding as stated because plaintiffs filed their complaint on July 22, 2005, rather than July 21 2005.

**Plaintiffs' Reply:** Plaintiffs agree their refund suit was filed on July 22, 2005.

**Plaintiffs' Revised Finding:** On July 22, 2005, plaintiffs filed the instant refund suit in the United States Court of Federal Claims.

10. On October 19, 2005, defendant filed its Answer and Counterclaim. The Counterclaim seeks recovery against the plaintiff David Sunshine in the amount of the 6672 penalty ($169,022.01) less plaintiff's $300 payment. The Counterclaim seeks recovery against the plaintiff Kelly Hickel in the amount of the 6672 penalty ($169,022.01) less plaintiff's $300 payment.

**Defendant's Response:** The United States disagrees with the finding as stated because our counterclaims seeks a judgment against each plaintiff in the amount of the Section 6672 penalty ($169,022.01) in addition to any assessed interest, less plaintiffs' $2000 payments and credits that may have been applied by the IRS.

**Plaintiffs' Reply:** Plaintiffs agree that the Defendant's counterclaims sought interest and included a reduction for any credits applied.

**Plaintiffs' Revised Finding:** On October 19, 2005, defendant filed its Answer and Counterclaim. The Counterclaim seeks recovery against the plaintiff David Sunshine in the amount of the 6672 penalty ($169,022.01) in addition to any assessed interest, less plaintiff's $300 payment and any credits that my have been applied by the IRS. The Counterclaim seeks recovery against the plaintiff Kelly Hickel in the amount of the 6672 penalty ($169,022.01) in addition to any assessed interest, less plaintiff's $300 payment and any credits that my have been applied by the IRS.

11. On or about April 15, 2001, the Internal Revenue Service applied $13,103.79 of plaintiff David Sunshine's overpayment from the year 2000 to satisfy a portion of the penalties assessed for the period ending September 30, 1999 and applied $16,530.94 of plaintiff David Sunshine's overpayment from the year 2000 to satisfy a portion of the penalties assessed for the period ending December 31, 1999.

**Defendant's Response:** The United States agrees with the finding as stated.

**Plaintiffs' Reply:** None required.

12. On or about July 21, 2005, plaintiff David Sunshine filed a claim for refund in the amount of $31,696.00 with the Internal Revenue Service at Austin, Texas. On or about April 15, 2001, the Internal Revenue Service applied $13,103.79 of plaintiff David Sunshine's overpayment from the year 2000 to satisfy a portion of the penalties assessed for the period ending September 30, 1999 and applied $16,530.94 of plaintiff David Sunshine's overpayment from the year 2000 to satisfy a portion of the penalties assessed for the period ending December 31, 1999.

**Defendant's Response:** The United States agrees with the finding as stated.

**Plaintiffs' Reply:** None required.

13. Because six months had not elapsed from the time plaintiff David Sunshine filed his claim for refund in the amount of $31,696 and filing the complaint on July 21, 2005 (Case No. 05-773 T), as required by Section 6532(a), plaintiff David Sunshine filed a separate complaint on March 13, 2006 in Case No. 06-169 T .

**Defendant's Response:** The United States disagrees with the finding as stated because plaintiff David Sunshine's complaint in Case No. 06-16- T was filed on March 6, 2006.

**Plaintiffs' Reply:** Plaintiffs agree that plaintiff David Sunshine's complaint in Case No. 06-16- T was filed on March 6, 2006.

**Plaintiff's Revised Finding:** Because six months had not elapsed from the time plaintiff David Sunshine filed his claim for refund in the amount of $31,696 and filing the complaint on July 22, 2005 (Case No. 05-773 T), as required by Section 6532(a), plaintiff David Sunshine filed a separate complaint on March 6, 2006 in Case No. 06-169 T .

14. An Order consolidating Case No. 05-773 T and Case No. 06-169 T was issued by this Court on March 14, 2006.

**Defendant's Response:** The United States agrees with the finding as stated.

**Plaintiffs' Reply:** None required.

15. On February 11, 1999, Interstate filed a bankruptcy petition in the United States Bankruptcy Court, District of Colorado, under Chapter 11 of the Bankruptcy Code.

**Defendant's Response:** The United States agrees with the finding as stated.

**Plaintiffs' Reply:** None required.

16. During the bankruptcy proceeding, Interstate is identified as the debtor-in-possession.

**Defendant's Response:** The United States agrees with the finding as stated.

**Plaintiffs' Reply:** None required.

17. The unpaid federal employment taxes for which the plaintiffs have been assessed penalties under Section 6672 were incurred during the second, third and fourth quarters of 1999, during which time Interstate was under the jurisdiction of the Bankruptcy Court.

**Defendant's Response:** The United States agrees with the finding as stated, but objects on the ground that the jurisdiction of Bankruptcy Court has no bearing on Interstate's failure to make post-petition payroll tax deposits.

**Plaintiffs' Reply:** The finding is a statement of fact. The unpaid Payroll Taxes occurred after Interstate filed for bankruptcy in February 1999, when Interstate was under the jurisdiction of the bankruptcy court. This is a key factor in this case. Early in the bankruptcy process, the Plaintiffs began arranging for payment of the taxes as part of Plan of Reorganization filed with the bankruptcy court. Plaintiffs' efforts in the regard serve to negate the element of willfulness in this case.

18. On December 29, 1999, the Fifth Amended Joint Plan of Reorganization of Interstate Sweeping, Ltd., IG Services Group, LLC and Sweepco, LLC ("Sweepco") was filed with the Bankruptcy Court, of which Sweepco was a co-proponent.

**Defendant's Response:** The United States agrees with the finding as stated.

**Plaintiffs' Reply:** None required.

19. The Fifth Amended Joint Plan of Reorganization, as re-submitted on March 2, 2000, was confirmed by the Bankruptcy Court, effective March 2, 2000 a copy of which is attached hereto as Exhibit A (the "Plan of Reorganization").

**Defendant's Response:** The United States agrees with the finding as stated.

**Plaintiffs' Reply:** None required.

20. By a letter dated February 17, 2000, a copy of which is attached hereto as Exhibit B, Sweepco stated to the Internal Revenue Service that the reorganized Interstate (the "Reorganized Interstate") would "pay the trust fund portion of the taxes due post-petition."

**Defendant's Response:** The United States agrees with the finding as stated.

**Plaintiffs' Reply:** None required.

21. In a letter delivered to the Internal Revenue Service on February 22, 2000, a copy of which is attached hereto as Exhibit C, Sweepco set forth its proposal in full settlement of the Payroll Taxes.

**Defendant's Response:** The United States disagrees with the finding as stated because it does not adequately describe the February 22, 2000 correspondence.

**Defendant's Proposed Revised Finding:** In a letter dated February 22, 2000, Sweepco, the co-proponent of the bankruptcy plan that would assume control of the reorganized company after confirmation, set forth a proposal "in full settlement of all outstanding claims by the Internal Revenue Service" for certain pre-petition and post-petition payroll taxes owed by Interstate. Among the terms proposed, Sweepco proposed that the settlement is a complete settlement of all claims for payroll taxes payable to the Internal Revenue Service for such periods including, but not limited to, a release of all liability for the 100% penalty assessable against any responsible officer or person of the taxpayer." (Exhibit C, ¶ 5.)

**Plaintiffs' Reply:** Plaintiffs do not object to Defendant's proposed revised finding.

22. As evidenced by the facsimile dated February 23, 2000, a copy of which is attached hereto as Exhibit D, the Internal Revenue Service provided language to be included in the Plan of Reorganization.

**Defendant's Response:** The United States disagrees with the finding as stated because it mischaracterizes the February 23, 2000, fax from the Internal Revenue Service.

**Defendant's Proposed Revised Finding:** In a fax dated February 23, 2000, the Internal Revenue Service provided sample default language to Glen Keller, counsel for Interstate.

**Plaintiffs' Reply:** Plaintiffs object to Defendant's proposed revised finding because it omits the fact that the language provided by Patricia Taylor of the IRS was for the purpose of including such language in the Plan of Reorganization.

**Plaintiffs' Revised Finding:** As evidenced by the facsimile dated February 23, 2000, a copy of which is attached hereto as Exhibit D, the Internal Revenue Service provided to Glen Keller, counsel for Interstate, default language to be included in the Plan of Reorganization

23. By letter dated February 23, 2000, a copy of which is attached hereto as Exhibit E, the Internal Revenue Service stated that it did not object to the provision for its priority claim in the Plan of Reorganization.

**Defendant's Response:** The United States agrees with the finding as stated.

**Plaintiffs' Reply:** None required.

24. By letter dated February 24, 2000, a copy of which is attached hereto as Exhibit F, Sweepco stated that the "Reorganized Interstate has the obligation to file returns and pay taxes and its default triggers the default provisions" of the Plan of Reorganization. This letter was signed by Mara Eckhardt of the Internal Revenue Service, indicating the Internal Revenue Service did not object to the modifications of the Plan of Reorganization.

**Defendant's Response:** The United States disagrees with the finding as stated because it incorrectly states that the February 24, 2000 letter was authorized by Sweepco. In fact, the letter was authorized by Glen Keller, counsel for Interstate.

**Plaintiffs' Reply:** Plaintiffs agree that the letter of February 24, 2000 was written by Glen Keller.

**Plaintiffs' Revised Finding:** By letter dated February 24, 2000, a copy of which is attached hereto as Exhibit F, Mr. Keller clarified that the "Reorganized Interstate has the obligation to file returns and pay taxes and its default triggers the default provisions" of the Plan of Reorganization. This letter was signed by Mara Eckhardt of the Internal Revenue Service, indicating the Internal Revenue Service did not object to the modifications of the Plan of Reorganization.

25. Section 3.3 of the Plan of Reorganization set forth the remedies available to the Internal Revenue Service in the case of default, which included filing federal tax liens.

**Defendant's Response:** The United States disagrees with the finding as stated because it mischaracterizes Section 3.3 of the Plan of Reorganization.

**Defendant's Proposed Revised Finding:**

Section 3.3 of the Plan of Reorganization sets forth the priority tax claim of the Internal Revenue Service for Interstate's pre-petition and post-petition payroll taxes. Section 3.3 also identifies the events that shall constitute a default under the Plan, and provides the following explanation of the Internal Revenue Service's rights in the event of default:

> Upon the occurrence of an event of default and provided notice has been given and the procedures followed as provided below, the IRS shall have the following rights: (a) The IRS shall have the right to declare due and payable and assess any interest or penalties which would have accrued on the pre-petition federal tax liabilities of the Debtors but for the filing of the bankruptcy petition; (b) the IRS shall have the right to proceed against the Reorganized Debtor or its assets to collect any of the pre-petition or pre-confirmation tax liabilities and related interest and penalties, including interest and penalties through use of the administrative or judicial collection procedures available to the IRS under the Internal Revenue Code as if no bankruptcy petition had been filed. Such procedures shall include but are not limited to the following: (i) the filing of notices of federal tax liens. (c) In its sole discretion, the IRS shall also have the right to seek an order, after notice and a hearing, providing for the immediate conversion of the case to one under Chapter 7 subject to the procedures described above in this Plan. (d) The IRS' failure to act on any default shall not constitute a waiver [sic] by the IRS of the right to act on such default.

(Exhibit A.) Section 3.3 of the Plan of Reorganization does not include a release of liability under Section 6672 of the Internal Revenue Code, as requested by counsel for Sweepco in the February 22, 2000 letter.

**Plaintiffs' Reply:** Plaintiffs finding is a correct statement of section 3.3 of the Plan of Reorganization. Section 3.3 does set forth the remedies available to the IRS in the case of default and one of those remedies was the filing of federal tax liens.

26. The Internal Revenue Service failed to file a notice of federal tax lien.

**Defendant's Response:** The United States disagrees with the finding as stated because it implies that the Internal Revenue Service had an obligation to file a notice of federal tax lien, which it did not.

**Plaintiffs' Reply:** Plaintiff disagrees that the finding as stated implies an obligation to file a tax lien.

27. Pursuant to Section 8.1 of the Plan of Reorganization, Sweepco obtained all of the outstanding stock of Interstate upon confirmation of the Plan of Reorganization.

**Defendant's Response:** The United States disagrees with the finding as stated because it mischaracterizes the language of section 8.1. In addition, the United States objects on the ground that the finding is irrelevant to the issues raised by plaintiffs' motion.

**Plaintiffs' Reply:** Plaintiffs agree that the finding should be more accurately stated but disagrees that the statement is irrelevant. The finding is relevant to show the relationship between Sweepco, who committed that the Reorganized Interstate would pay the trust fund taxes, and the Reorganized Interstate. *See* Plaintiffs' proposed finding no. 20 above.

**Plaintiffs' Revised Finding:** Pursuant to Section 8.1 of the Plan of Reorganization, Sweepco obtained all of the outstanding stock of the Reorganized Interstate upon confirmation of the Plan of Reorganization.

28. According to the notice of default dated May 26, 2000, a copy of which is attached hereto as Exhibit G, the Reorganized Interstate, then under the control of Sweepco, defaulted on the payments of the Payroll Taxes required by Section 3.3 of the Plan of Reorganization.

**Defendant's Response:** The United States disagrees with the finding as stated because the May 26, 2000 notice of default is addressed to the Chief Financial Officer of Interstate Sweeping, and makes no reference to Sweepco. Moreover, the United States object to the finding as stated because it fails to reference the subsequent notices of default issued to Interstate Sweeping on February 27, 2001, September 21, 2001, and October 29, 2001.

**Defendant's Proposed Revised Finding:** The reorganized Interstate Sweeping received notices of default from the Internal Revenue Service regarding the monthly installment payments required by the Plan of Reorganization on May 26, 2000, February 27, 2001, September 21, 2001, and October 29, 2001. A copy of the May 26, 2000 notice is attached to plaintiffs' proposed findings as Exhibit G, and copies of the February 27, 2001, September 21, 2001, and October 29, 2001 notices are included in the Appendix attached to the United States' Brief in Opposition to Plaintiffs' Motion for Summary Judgment as Exhibits 6, 7, and 8.

**Plaintiffs' Reply:** The significance of the notice of May 26, 2000 is that is reflects the fact that the Reorganized Interstate defaulted on the payments required by the Plan of Reorganization. According to the Plan of Reorganization, upon default, the IRS had the immediate right to accelerate the entire amount due and to collect immediately. Thus, any subsequent notice of default is irrelevant.

29. The Chapter 11 Final Report filed by the Reorganized Interstate on May 9, 2001, a copy of which is attached hereto as Exhibit H, indicated that the Reorganized Interstate had cash in the amount of $171,993.29 which was in excess of the amount assessed against each of the plaintiffs ($169,022.01).

**Defendant's Response:** The United States disagrees with the finding as stated because it erroneously states that the Chapter 11 Final Report indicated that the Reorganized Interstate had cash in the amount of $171,993.29. In fact, the Post-confirmation Quarterly Report for the quarter ending March 31, 2001, which was attached to the Final Report, indicated that the Reorganized Interstate had cash in the amount of $171,993.29 at the end of the quarter. (See Exhibit H.) In addition, the United States objects to the portion of the finding that states the cash balance of Reorganized Interstate was "in excess of the amount assessed against each of the plaintiffs" because the statement is irrelevant to the core issue of plaintiffs' liability under Section 6672 and also irrelevant to the issues raised by plaintiffs' motion.

**Plaintiffs' Reply:** Because the Post-confirmation Quarterly Report was attached to the Final Report, it is not inaccurate to refer to the Final Report in

this regard. The distinction drawn by the Defendant is immaterial to the overall issue. The relevant issue is that there were sufficient cash assets the IRS could have collected to satisfy the tax liability.

Date: July 31, 2006

Respectfully submitted,

s/ Theodore Z. Gelt
Theodore Z. Gelt

GELT & GRASSGREEN P.C.
303 East 17th Avenue, Suite 910
Denver, Colorado 80203
Telephone: (303) 830-1200
Facsimile: (303) 830-9400

ATTORNEY FOR PLAINTIFFS